UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A Woman's Concern, Inc. d/b/a Your Options Medical Centers,<br><br>     Plaintiff,<br><br>vs.<br><br>Maura Healey, Governor of Massachusetts, sued in her individual and official capacities; Robert Goldstein, Commissioner of the Massachusetts Department of Public Health, sued in his individual and official capacities; Reproductive Equity Now Foundation, Inc.; Rebecca Hart Holder, Executive Director of Reproductive Equity Now Foundation,<br><br>     Defendants. | C.A. No. 1:24-cv-12131-LTS<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS REPRODUCTIVE EQUITY NOW FOUNDATION, INC. AND REBECCA HART HOLDER

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 1

    A.    REN's and Holder's Viewpoint on and Speech Concerning AACs ............................ 2

    B.    REN's Complaint to the Massachusetts Department of Public Health........................ 3

    C.    REN and Holder Provide Support to a Massachusetts Public Education
           Campaign .................................................................................................. 4

    D.    YOM's Complaint Against REN and Holder .................................................. 5

ARGUMENT ....................................................................................................... 5

    A.    Legal Standard for Motion to Dismiss............................................................ 5

    B.    The Complaint Fails to State a Plausible Claim Against REN and Holder ................ 6

        1.    YOM Lacks Standing To Maintain Its Claims Against REN and Holder ............. 7

        2.    The DPH Complaint Was a Protected Exercise of REN's and Holder's
              First Amendment Rights to Petition Under the *Noerr-Pennington* Doctrine ........ 9

        3.    Neither REN nor Holder Acted Under Color of State Law ................................. 12

            a.    REN's and Holder's Filing of the DPH Complaint Was Not State
                 Action ....................................................................................... 13

            b.    REN's and Holder's Involvement in the Public Education
                 Campaign and Advocacy Are Not State Action ..................................... 15

                 i.    REN's Receipt of Funding and Other Assistance from the
                      State Does Not Make REN's and Holder's Activities State
                      Action .............................................................................. 15

                 ii.    REN's and Holder's Participation in the Public Education
                      Campaign and Related Activities Are Not State Action............... 16

                 iii.    REN's and Holder's Speech and Advocacy Do Not Render
                      Them State Actors ............................................................. 17

        4.    The Complaint Does Not State a Plausible Claim that REN and Holder
               Caused a Deprivation of YOM's Constitutional Rights. ...................... 18

CONCLUSION.................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**

*Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*,
    480 F. Supp. 2d 462 (D. Mass. 2007) ................................................................. 12

*Andresen v. Diorio*,
    349 F.3d 8 (1st Cir. 2003) ................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 5, 6

*Barrios-Velazquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*,
    84 F.3d 487 (1st Cir. 1996) ................................................................................ 17

*Bayou Fleet, Inc. v. Alexander*,
    234 F.3d 852 (5th Cir. 2000) ................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 5

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) .................................................................................... 13, 15

*Bonollo Rubbish Removal, Inc. v. Town of Franklin*,
    886 F. Supp. 955 (D. Mass. 1995) ...................................................................... 10

*Cabi v. Boston Children's Hosp.*,
    161 F. Supp. 3d 136 (D. Mass. 2016) ............................................................ 16, 17

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972) .......................................................................................... 10

*Castro v. New Hampshire Secretary of State*,
    701 F. Supp. 3d 176 (D.N.H. 2023) ...................................................................... 7

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) ............................................................................. 18

*Collier v. Town of Harvard*,
    No. 95-11652-DPW, 1997 WL 33781338 (D. Mass. Mar. 28, 1997) ...................... 10

*Curley v. Village of Suffern*,
    268 F.3d 65 (2d Cir. 2001) ............................................................................. 9, 19

*Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020) ............................................................................... 7, 8

*Davric Maine Corp. v. Rancourt*,
    216 F.3d 143 (1st Cir. 2000) .............................................................................. 12

*Eaton v. Newport Bd. of Educ.*,
    975 F.2d 292 (6th Cir. 1992) ................................................................................ 9

*Estades-Negroni v. CPC Hosp. San Juan Capestrano,*
    412 F.3d 1 (1st Cir. 2005) ............................................................................ 13, 14, 15, 19

*Fox v. Saginaw Cnty.,*
    67 F.4th 284 (6th Cir. 2023) ........................................................................................ 7

*Giragosian v. Ryan,*
    547 F.3d 59 (1st Cir. 2008) .......................................................................................... 4

*Gorman Towers, Inc. v. Bogoslavsky,*
    626 F.2d 607 (8th Cir. 1980) ................................................................................... 9, 10

*Gustavsen v. Alcon Labs., Inc.,*
    903 F.3d 1 (1st Cir. 2018) ......................................................................................... 6, 7

*In re Jeep Eagle 17, Inc.,*
    No. 09-23708, 2010 WL 4864171 (Bankr. D.N.J. Nov. 23, 2010) ............................ 11

*Kearney v. Foley & Lardner, LLP,*
    590 F.3d 638 (9th Cir. 2009) ....................................................................................... 9

*Kerin v. Titeflex Corp.,*
    770 F.3d 978 (1st Cir. 2014) ........................................................................................ 7

*Klunder v. Brown Univ.,*
    778 F.3d 24 (1st Cir. 2015) ......................................................................................... 12

*Laird v. Tatum,*
    408 U.S. 1 (1972) ......................................................................................................... 9

*Lender's Serv., Inc. v. Dayton Bar Ass'n,*
    758 F. Supp. 429 (S.D. Ohio 1991) ........................................................................... 10

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) .............................................................................................. 12, 18

*McGuire v. Reilly,*
    386 F.3d 45 (1st Cir. 2004) ......................................................................................... 6

*McNaught v. Nolen,*
    76 F.4th 764 (8th Cir. 2023) ....................................................................................... 8

*Mead v. Independence Ass'n,*
    684 F. 3d 226 (1st Cir. 2012) ..................................................................................... 13

*Meuse v. Stults,*
    421 F. Supp. 2d 358 (D. Mass. 2006) ........................................................................ 15

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills,*
    701 F. Supp. 2d 568 (S.D.N.Y. 2010) ....................................................................... 10

*National Rifle Ass'n of Am. v. Vullo,*
    602 U.S. 175 (2004) ................................................................................................... 19

*New W., L.P. v. City of Joliet,*
    491 F.3d 717 (7th Cir. 2007) ....................................................................................... 9

*Pagan v. Calderon*,
    448 F.3d 16 (1st Cir. 2006).....................................................................................7

*Perkins v. Londonderry Basketball Club*,
    196 F.3d 13 (1st Cir. 1999)..........................................................................13, 14

*Perrot v. Kelly*,
    No. 18-CV-10147-DPW, 2023 WL 2939277 (D. Mass. Feb. 15, 2023).................4

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011)...................................................................................7

*Ponce v. Basketball Fed'n of Com. of Puerto Rico*,
    760 F.2d 375 (1st Cir. 1985).................................................................................12

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)................................................................................................11

*Rae v. Woburn Public Schools*,
    113 F.4th 86 (1st Cir. 2024)...................................................................................5

*Rendell–Baker v. Kohn*,
    457 U.S. 830 (1982).................................................................................14, 16, 17

*Rockwell v. Cape Cod Hosp.*,
    26 F.3d 254 (1st Cir. 1994)...........................................................................16, 17

*Rodriguez-Cirilo v. Garcia*,
    115 F.3d 50 (1st Cir. 1997)...................................................................................18

*Sadallah v. City of Utica*,
    383 F.3d 34 (2d Cir. 2004).....................................................................................8

*Sanderson v. Brugman*,
    No. IP00–459–C–H, 2001 WL 699876 (S.D. Ind. May 29, 2001).......................10

*Santiago v. Puerto Rico*,
    655 F.3d 61 (1st Cir. 2011)...........................................................................13, 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................7

*Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*,
    8 F.4th 56 (1st Cir. 2021).......................................................................................7

*Torres-Negron v. J&N Records, LLC*,
    504 F.3d 151 (1st Cir. 2007)...............................................................................6, 7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................................8

*VDARE Found. v. City of Colorado Springs*,
    11 F.4th 1151 (10th Cir. 2021).............................................................................16

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023)...............................................................................7, 8

*Williams v. Town of Greenburgh*,
    535 F.3d 71 (2d Cir. 2008) ................................................................................ 9, 19

*Yeo v. Town of Lexington*,
    131 F.3d 241 (1st Cir. 1997) ................................................................................ 18

**Statutes**

42 U.S.C. § 1983 ................................................................................................ 1

G.L. c. 13, §10 ................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) ............................................................................... *passim*

## INTRODUCTION

Contrary to the allegations in the Complaint, this case is not about any wrongful deprivation of the First Amendment or other constitutional rights of Plaintiff A Women's Concern, Inc., d/b/a Your Options Medical Centers ("YOM"). Instead, it is a blatant attempt by YOM to enlist this Court's assistance in its effort to silence Reproductive Equity Now Foundation, Inc. ("REN") and its President,[1] Rebecca Hart Holder ("Holder"), by enjoining them from exercising *their* constitutional rights and thereby advancing REN's charitable mission of making equitable access to the full spectrum of reproductive health care a reality for all people. As YOM has failed to satisfy its burden of demonstrating that it has sustained any legally cognizable injury under 42 U.S.C. § 1983 ("Section 1983") that is fairly traceable to the alleged unlawful conduct of REN and Holder, all of the claims alleged against them in the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. All of the claims alleged against REN and Holder should also be dismissed under Fed. R. Civ. P. 12(b)(6) because liability under Section 1983 cannot, as a matter of law, be predicated on the exercise by private parties of their First Amendment rights of petition, and YOM has utterly failed to allege facts that plausibly demonstrate this is one of those rare instances in which the conduct of private parties constitutes state action.

## BACKGROUND

REN is a nonprofit organization dedicated to furthering access for all people to the full spectrum of reproductive health care. Advancing reproductive justice and eliminating barriers to safe, legal abortion care are central to that mission. Compl. ¶ 8. Holder leads the organization and participates in that mission. *Id.* ¶ 9. Although YOM claims that REN and Holder "acted under the

---

[1]     YOM alleges that Holder served as REN's Executive Director and/or President at all times relevant to the Complaint. Compl. ¶ 9. Holder's current title is President.

color of [State] law" (*see id.* ¶¶ 103, 139, 163) in the events giving rise to the instant Complaint, it does not suggest (nor could it) that REN and Holder are state actors.

A.      **REN's and Holder's Viewpoint on and Speech Concerning AACs**

REN and Holder have publicly advocated that anti-abortion centers ("AACs"),[2] many of which are not licensed health care facilities, "pose a serious threat to pregnant people seeking unbiased reproductive healthcare in Massachusetts." *Id.* ¶ 96. REN and Holder have also publicly contended that AACs often withhold information about abortion care and use deceptive tactics to attract people and then dissuade them from accessing abortion care. *Id.* ¶ 87.

To further REN's mission, REN and Holder have developed and published materials expressing their views regarding AACs generally, and about those operating in New England, one of which is YOM. *See, e.g.*, *id.* ¶ 82, Ex. P; *id.* ¶¶ 83-90; Ex. Q. REN's website includes a page expressing its position that AACs "are facilities that present themselves as resources for people facing unplanned pregnancies, but in reality, exist to dissuade people from accessing abortion care." *Id.*, Ex. P. REN's website also includes a link to a guidebook reflecting its research and views about AACs. *Id.* ¶ 86, Ex. Q. Among other things, REN's website expresses the concern that AACs can delay care. *See id.*, Exs. P-Q. REN's website and its guidebook provide individuals with information about how to access legal representation or file a complaint if they believe they have been "harmed by deceptive practices, harassment, or medical malpractice" at an AAC. *Id.*, Ex. P; *see also id.*, Ex. Q. One option outlined by REN and Holder is a "free and confidential Abortion Legal Hotline," ("Hotline") (*id.* ¶ 90) a service managed and staffed by REN, and which received financial support from Massachusetts in its 2023 budget. *Id.* ¶ 81.

---

[2]      The Complaint refers to AACs as "pro-life pregnancy centers" (*id.* ¶¶ 37, 44, 66, 75, 82, 85) and "pro-life centers" (*id.* ¶¶ 77-78, 86-91, 94).

**B.**     **REN's Complaint to the Massachusetts Department of Public Health**

In August 2023, the *Provincetown Independent* reported that YOM was planning to operate a mobile clinic on Cape Cod, which YOM was promoting as offering free pregnancy testing and ultrasounds with "immediate" results. *Id*. ¶ 43, Ex. F. The same article quoted YOM's Executive Director, Teresa Larkin, as saying, "when we say immediate results, we usually mean preliminary findings." *Id*., Ex. F. Larkin added that YOM did not plan for a "registered" obstetrician or radiologist to be present in the mobile clinic and that ultrasound images taken in the mobile unit would be sent digitally to a physician, with results to be reviewed within 24-48 hours. *Id*. REN and Holder were concerned about the inconsistency between YOM's advertisement that the results would be "immediate" and Larkin's statements that the results would in fact be "preliminary findings" that needed to be reviewed and confirmed by an offsite physician in 24-48 hours.

As a consequence, on October 17, 2023, REN and Holder submitted a complaint to the Massachusetts Department of Public Health ("DPH") and copied several other government and licensing entities (the "DPH Complaint"). The DPH Complaint states in relevant part:

> The advertisement on the mobile unit and Ms. Larkin's statements raise two important issues. First, Ms. Larkin's statements suggest that [YOM's] mobile unit may be falsely advertising "immediate results." Second, if [YOM's] mobile unit is offering "immediate results" following an ultrasound, we have serious concerns that clinicians may be operating beyond their scope of practice…
>
> Without a physician available to immediately interpret an ultrasound and provide "immediate results," we are concerned that registered nurses could be operating outside of their scope of practice by diagnosing ultrasounds immediately…
>
> [W]e are alarmed by reporting indicating their plan to make only registered nurses and volunteers available at appointments, while simultaneously advertising "immediate results," which could set up a scenario for out-of-scope practice and patient endangerment.

*Id*. REN and Holder urged DPH to investigate whether YOM "*may be engaging* in deceptive practices and *potentially endorsing* out-of-scope diagnoses by registered nurses in order to provide the advertised immediate results." *Id*. (emphasis added). YOM admits that after it received the DPH Complaint, DPH required YOM to amend its "Policies and Procedures Manual concerning

the criteria for ultrasound exams[,] eliminating any language that allowed for sonographer discretion," which YOM did. Compl. ¶ 47. YOM also alleges that DPH subsequently found YOM in compliance with its state licensing requirements as of February 29, 2024. *Id*. ¶¶ 46-47.

Separately, the Massachusetts Board of Registration in Medicine ("BORIM"),[3] which was copied on the DPH Complaint, began an investigation of YOM's medical director in response to the DPH Complaint, serving two subpoenas on YOM on December 21, 2023 and June 5, 2024. *Id*. ¶ 54. On July 9, 2024, YOM filed an action in Middlesex Superior Court seeking to enjoin BORIM's investigation and claiming (as it does in this case, *see id*. ¶ 56) that the DPH Complaint lacked merit and was initiated "to conduct a vast fishing expedition and to pry into the business of" YOM. *See* M. Korsunsky Decl., Ex. 1.[4] The Superior Court denied YOM's request for a preliminary injunction, holding that BORIM has authority to conduct the investigation. *Id*., Ex. II.

## C.      REN and Holder Provide Support to a Massachusetts Public Education Campaign

More recently, the Healey-Driscoll Administration developed and launched with DPH a public education campaign on the dangers of AACs' practices – a project in which REN and Holder also participated ("The Public Education Campaign"). *Id*. ¶ 97. The Public Education Campaign launched on June 10, 2024 (*id*. ¶ 66) and was funded through a $1 million appropriation by the Massachusetts legislature in its 2023 budget. *Id*. ¶ 70. The Public Education Campaign, which does not mention YOM by name, includes billboards and advertisements on social media, transit, and radio platforms (*id*. ¶¶ 70, 73-74, 77, Exs. M-O) which feature messages such as "Avoid Anti-

---

[3]      BORIM, an independent board whose members are appointed by the governor, regulates and oversees individual physicians. *See generally* Compl., Ex. L; G.L. c. 13, §10.

[4]      *See Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (a court may consider matters of public record such as "documents from prior state court adjudications" in resolving a Rule 12(b)(6) motion to dismiss) (citation omitted); *Perrot v. Kelly*, No. 18-CV-10147-DPW, 2023 WL 2939277, at *7 (D. Mass. Feb. 15, 2023) (courts may "take judicial notice of […] prior decisions of Massachusetts courts," where they are "part of the public record and have relevance to the matters at hand") (citation omitted).

Abortion Centers," with a link and QR code telling readers they can "find out why" by clicking on the links. *Id.*, Ex. M. DPH's website provides more information and includes a link to a website maintained exclusively by REN. *Id.* ¶ 80. YOM does not allege that it is specifically named on DPH's website or in any of the advertisements that are part of the Public Education Campaign.

### D.     YOM's Complaint Against REN and Holder

On August 19, 2024, YOM filed the instant Complaint against Governor Healey and DPH Commissioner Goldstein, each in their official and individual capacities, along with REN and Holder, in her capacity as Executive Director of REN. All three of YOM's causes of action are based upon claims that its Constitutional rights under the First Amendment (Counts I and II) and Fourteenth Amendment (Count III) have been violated. YOM claims that REN and Holder acted under "color of state law" with respect to each count, such that YOM's constitutional claims can be brought against them as private actors pursuant to Section 1983. *Id.* ¶¶ 103, 139, 163. REN and Holder now move to dismiss all claims against them.

## ARGUMENT

### A.     Legal Standard for Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[N]aked assertions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive dismissal. *Id.*; *Rae v. Woburn Public Schools*, 113 F.4th 86, 98 (1st Cir. 2024) (only "well-pleaded" facts must be accepted as true; unsupported conclusions or legal interpretations need not be accepted as true). Moreover, "where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 679. A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) that is based on a facial challenge to standing is evaluated under the same plausibility standard applied to motions to dismiss under Rule 12(b)(6). *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 7 (1st Cir. 2018); *Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007).

**B.      The Complaint Fails to State a Plausible Claim Against REN and Holder**

The claims YOM has asserted against REN and Holder are predicated entirely on the DPH Complaint they filed on October 17, 2023, their work on the state's Public Education Campaign, and information REN maintains on its website. These bases for YOM's claims are woefully deficient, and the Complaint against REN and Holder must be dismissed for at least three reasons. First, YOM has failed to plausibly establish it has sustained any injury protected under Section 1983 that is fairly traceable to the conduct of REN and Holder and, hence, YOM lacks standing to maintain its claims against them. Second, the filing of the DPH Complaint constitutes protected petitioning activity for which REN and Holder cannot, as a matter of law, be held liable under Section 1983. Third, none of the activities in which REN and Holder are alleged to have engaged constitute actions taken under color of state law and, in any event, YOM has failed to plausibly allege that REN and Holder caused YOM a deprivation of its constitutional rights. Stripped of its improper conclusions and unsupported speculation, the Complaint improperly seeks to silence the speech of REN and Holder, two private actors with which YOM disagrees. Section 1983 and the First Amendment cannot be twisted to achieve such a perverse result. *See McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir. 2004) (recognizing that "much of what plaintiffs complain about here is purely private action jousting with the ideas plaintiffs espouse. The First Amendment is concerned with government interference, not private jousting in the speech marketplace.").

1.      **YOM Lacks Standing To Maintain Its Claims Against REN and Holder**

Article III of the Constitution limits this Court's subject matter jurisdiction to actual cases and controversies involving plaintiffs who have standing to sue. *Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020); *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). As the plaintiff, YOM has the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet its burden, YOM must allege facts plausibly demonstrating that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [REN and Holder], and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 338. To establish injury in fact, YOM must show that it has suffered an invasion of an interest legally protected by Section 1983, which must be both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citations omitted). YOM must satisfy this three-part test as to *each* of the claims for which it seeks relief, *see Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372 (1st Cir. 2023), and as to *each* defendant. *See Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023) (citing Second, Fourth, Fifth and Eighth Circuit cases); *Castro v. New Hampshire Secretary of State*, 701 F. Supp. 3d 176, 182 (D.N.H. 2023); *see also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 n.6 (1st Cir. 2011).

In a facial challenge to standing such as this, YOM's allegations at the pleading stage must satisfy the same plausibility standard used to evaluate a motion under Rule 12(b)(6). *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021); *Gustavsen*, 903 F.3d at 7; *Torres-Negron*, 504 F.3d at 162. While standing may be predicated on either tangible or intangible injuries, *see Webb*, 72 F.4th at 372, those injuries must be concrete, particularized *and* fairly traceable to the challenged conduct of REN and Holder in order for YOM to have standing to maintain its Section 1983 claims against them. *See Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir.

7

2006) ("To meet this requirement, the plaintiff must adequately allege that the asserted injury is causally connected to the challenged conduct."). To do so, YOM must allege a sufficiently direct causal connection between the challenged action of REN and Holder and the alleged harm. *Dantzler*, 958 F.3d at 47 (recognizing that causation cannot be "overly attenuated" and "is absent if the injury stems from the independent action of a third party"). A risk of future harm is only sufficient to create standing if "the risk of harm is sufficiently imminent and substantial." *Webb*, 72 F.4th at 375 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)).

Here, YOM's standing is predicated on its conclusory allegations that it has suffered tangible harm because one of its doctors quit providing services "[a]s a direct, immediate, and foreseeable result of Defendants' threats," which caused it to turn patients away and which "may" force it to shut down.[5] Compl. ¶¶ 122-24. YOM also alleges that these threats have "chilled" YOM's speech and exercise of religion, and that it has sustained tangible injury due to increased costs for security and safety due to these same "threats."[6] *Id.* ¶¶ 130, 132. Nowhere in the Complaint, however, does YOM allege that REN or Holder made any "threats." Accordingly, YOM has not satisfied its burden to plausibly demonstrate that these alleged injuries are "fairly traceable" to the allegedly wrongful conduct of REN and Holder. *Dantzler*, 958 F.3d at 47-48.

Apart from these alleged injuries, YOM also summarily alleges it has suffered "reputational harm." Compl. ¶ 132. However, a naked allegation of "reputational harm," without more, is insufficient to satisfy YOM's burden as to standing. *See McNaught v. Nolen*, 76 F.4th 764, 771-72 (8th Cir. 2023); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)

---

[5]     The Complaint does not allege that the doctor who departed was the medical director who is being investigated by BORIM.

[6]     While YOM alleges elsewhere in the Complaint that it has experienced acts of vandalism, it does not plausibly assert that these acts were caused by any conduct of REN or Holder.

("Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."). Similarly, while YOM alleges in a conclusory fashion that its speech and free exercise of religion has been "unconstitutionally chilled" (*see* Compl. ¶¶ 130, 150), YOM never alleges that it has, in fact, refrained from exercising its First Amendment rights, much less that it has done so due to the conduct of REN and Holder. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (affirming dismissal of § 1983 claim premised on an alleged violation of plaintiff's First Amendment rights where his speech was never actually chilled and therefore "[plaintiff] has not alleged any cognizable injury"); *accord Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)) (dismissing claim that defendants attempted to chill plaintiff's First Amendment rights where plaintiff could not show any actual chilling and thus could not show either "specific present objective harm or a threat of specific future harm"). Accordingly, YOM's claims against REN and Holder should be dismissed for lack of standing.

## 2. The DPH Complaint Was a Protected Exercise of REN's and Holder's First Amendment Rights to Petition Under the *Noerr-Pennington* Doctrine

As it concerns the filing of the DPH Complaint, YOM pleads nothing more than a classic *Noerr-Pennington* activity that cannot, as a matter of law, subject REN or Holder to liability. Originally adopted in the context of antitrust claims, the *Noerr-Pennington* doctrine immunizes parties who exercise their right to petition the government from liability premised on that activity. The federal circuit courts have consistently recognized that this doctrine, which is grounded in the First Amendment guarantees, is applicable to Section 1983 claims. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644–45 (9th Cir. 2009); *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992); *Gorman Towers, Inc. v. Bogoslavsky*,

626 F.2d 607, 615 (8th Cir. 1980); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 593-97 (S.D.N.Y. 2010). This Court has also recognized that the *Noerr-Pennington* doctrine applies to Section 1983 claims. *See Bonollo Rubbish Removal, Inc. v. Town of Franklin*, 886 F. Supp. 955, 966 (D. Mass. 1995) (holding that First Amendment considerations that gave rise to *Noerr-Pennington* doctrine "have as much force in the context of an action under § 1983 as they do in the context of an antitrust suit."); *see also Collier v. Town of Harvard*, No. 95-11652-DPW, 1997 WL 33781338, at *8 (D. Mass. Mar. 28, 1997) (citing *Gorman Towers* for the proposition that *Noerr-Pennington* has been applied to Section 1983 claims).

The claims asserted against REN and Holder in this action, to the extent they are predicated on the DPH Complaint, fall squarely within the ambit of the *Noerr-Pennington* doctrine and must therefore be dismissed.  As YOM's allegations and exhibits appended to the Complaint make clear, the DPH Complaint raised a "concern about potentially deceptive practices [YOM's] anti-abortion mobile unit appears to engage in and the resulting impact on pregnant people seeking care." Compl. ¶¶ 42-56, Ex. F. The DPH Complaint is precisely the type of petitioning activity protected by the *Noerr-Pennington* doctrine. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (*Noerr-Pennington* doctrine immunizes petitions made to any branch of government); *Sanderson v. Brugman*, No. IP00–459–C–H/G, 2001 WL 699876, at *6 (S.D. Ind. May 29, 2001) ("Asking government officials to investigate a competitor for possible violations of the law – i.e., asking the executive branch to execute the laws – falls well within the scope of the *Noerr–Pennington* doctrine"); *Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F. Supp. 429, 439 (S.D. Ohio 1991) (filing a complaint with the Ohio Supreme Court's Board of Commissioners regarding unauthorized practice of law was protected petitioning activity).

YOM cannot avoid dismissal of its claims against REN and Holder by invoking a narrow "sham" exception to the *Noerr-Pennington* doctrine. In order for the sham exception to apply, YOM would need to establish that the DPH complaint was "objectively baseless" – here, an insurmountable burden. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *In re Jeep Eagle 17, Inc.*, No. 09-23708, 2010 WL 4864171, at *6 (Bankr. D.N.J. Nov. 23, 2010) (the "objectively baseless" standard represents a "high threshold"). YOM has simply not alleged any facts in the Complaint sufficient to make that showing. Nor could it. As the DPH Complaint makes clear, REN reported an inconsistency between YOM's advertisement of offering ultrasounds with "immediate" pregnancy results and the statement of YOM's Executive Director that the results were only "preliminary findings" that needed to be reviewed and confirmed by an offsite physician within 24-48 hours. *See* Compl., Ex. F. YOM does not dispute the fact or substance of its Executive Director's statement – which inevitably indicates either that the ultrasound results offered by YOM are not actually immediate or that the results are being conveyed to patients by nurses prior to their being reviewed by a physician.[7] Against this backdrop, it was reasonable for REN to ask DPH, as the appropriate licensing authority, to investigate whether YOM "*may* be engaging in deceptive practices and *potentially* endorsing out-of-scope diagnoses by registered nurses in order to provide the advertised immediate results." *Id*. (emphasis added). The sham exception to the *Noerr-Pennington* doctrine does not apply under these circumstances. *See Professional Real Estate Investors, Inc.*, 508 U.S. at 62 (the existence of probable cause to institute legal proceedings, which requires no more than a chance that a claim may be held valid upon adjudication, precludes a finding of sham

---

[7]     In fact, YOM acknowledges in its Complaint that the final results of the ultrasounds it performs "are confirmed by a physician, then provided to the patients no more than twenty-four to forty-eight hours later." *Id*. ¶ 45.

11

litigation); *Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 480 F. Supp. 2d 462, 469 (D. Mass. 2007) (if complainant "reasonably believed" that the other party transgressed or would imminently transgress, the petition to the International Trade Commission was not a sham –irrespective of the ultimate outcome).  YOM's Complaint *confirms* that DPH required YOM to amend its Policies and Procedures Manual to eliminate "any language that allowed for sonographer discretion," underscoring that REN's concerns about out-of-scope practices by YOM had merit. *See Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 148 (1st Cir. 2000) (holding that a successful effort to influence governmental action cannot be characterized as a sham). The investigation undertaken by BORIM of YOM's Medical Director in response to REN's complaint, which a Massachusetts state court held was within BORIM's authority to conduct and declined to enjoin, *see* M. Korsunsky Decl., Ex. II, further confirms the legitimacy of REN's concerns.

### 3.    Neither REN nor Holder Acted Under Color of State Law

To withstand dismissal, YOM must also plausibly allege that REN and Holder were each acting under color of state law and caused a deprivation of YOM's constitutional rights through those acts. As REN and Holder are indisputably private parties, YOM's allegations must establish that any action taken by them in violation of its secured rights are "'fairly attributable to the State.'" *See Klunder v. Brown Univ.*, 778 F.3d 24, 30-34 (1st Cir. 2015) (private university did not act "under color of state law" because its suspension of plaintiff was not fairly attributable to the state) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *Ponce v. Basketball Fed'n of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). When determining whether a private actor's conduct is "fairly attributable to the State," courts consider (1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; and/or (3) whether there is a sufficiently "symbiotic relationship" between the state and the private actor such that

they may be considered to be joint participants in the challenged activity. *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1999). None of the acts in which REN and Holder are alleged to have engaged meet the high standard courts require for each of these three tests. *See Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4-5 (1st Cir. 2005) ("It is '[o]nly in rare circumstances' that private parties can be viewed as state actors.") (citation omitted); *Mead v. Independence Ass'n*, 684 F. 3d 226, 231 (1st Cir. 2012) (same).

YOM does not allege that the state coerced or compelled REN and Holder to engage in any of the conduct of which YOM complains. *See Blum v. Yaretsky*, 457 U.S. 991, 1004-1005 (1982) (state approval of or acquiescence in a private party's initiatives is not enough). Nor has YOM alleged that REN and Holder exercised powers exclusively reserved to the state. *See Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011) (activities held to satisfy the public function test are "few and far between" and include election administration, operation of a town, eminent domain, peremptory challenges and operation of municipal parks); *Perkins*, 196 F.3d at 19 ("Government customarily involves itself in many types of activities, but few of those activities come within the State's exclusive preserve."). Finally, while YOM alleges that REN and Holder were engaged in "explicit partnership as a joint action" with the state (Compl. ¶¶ 103, 139, 163), the Complaint fails to allege facts that show REN, Holder and the State were mutually interdependent, such that REN and Holder can be considered to have acted under color of law for purposes of Section 1983.

### a.  REN's and Holder's Filing of the DPH Complaint Was Not State Action

In addition to constituting protected petitioning activity, REN's and Holder's filing of the DPH Complaint constitutes activity by private actors – the Complaint does not plausibly allege (nor could it) that either REN or Holder acted under color of state law in doing so. The claims asserted against REN and Holder insofar as they are based on the DPH Complaint must therefore

be dismissed. *See Estades-Negroni*, 412 F.3d at 4-9 (affirming dismissal where complaint failed to allege facts sufficient to support a finding that defendants acted under color of state law).

The Complaint does not allege any facts to plausibly show that the filing of the DPH Complaint by REN and Holder is "fairly attributable to the State" as required for Section 1983 liability to extend to a private party. There are no allegations whatsoever that REN and Holder were performing a public function in filing the DPH Complaint. Moreover, the Complaint fails to allege a symbiotic relationship between the state on the one side and REN or Holder on the other side to insinuate (much less plausibly assert) a mutual interdependence in the conduct of their day-to-day affairs. *See Perkins*, 196 F.3d at 21-23 (the most salient factor to which courts attach special weight "is the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs"). There are also no allegations that the state compelled REN and Holder to file the DPH Complaint.[8] *See id.* at 18-20 (under the joint action/nexus test, plaintiff must show the state's coercive power or significant encouragement to the challenged conduct). YOM cannot carry its burden by haphazardly stacking together the DPH Complaint and the fact that REN received state funding with a threadbare allusion to Holder's potential collusion with the government (Compl. ¶ 56), and then summarily alleging REN and Holder acted under "color of law" (*Id.* ¶¶ 103, 139). *See, e.g.*, *Rendell–Baker v. Kohn*, 457 U.S. 830, 840–43 (1982) (an organization's receipt of 90 percent of its funds from the state did not make it a state actor within the meaning of Section 1983); *Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir. 2003) ("it is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the

---

[8]     The alleged general solicitation of feedback and complaints from individuals by DPH (Compl. ¶¶ 59, 75), all of which post-dated the filing of the DPH Complaint, cannot serve as a lynchpin between REN and the State here. *See Perkins*, 196 F.3d at 19-20 ("the focal point is the connection between the State and the challenged conduct").

private parties into state actors"); *Meuse v. Stults*, 421 F. Supp. 2d 358, 362-64 (D. Mass. 2006) (defendant cannot be liable under Section 1983 for encouraging the police to initiate the investigation where plaintiff adduced no evidence of an interdependent relationship between defendant and police in the course of the investigation, police encouragement or conspiracy).

### b. REN's and Holder's Involvement in the Public Education Campaign and Advocacy Are Not State Action

Setting aside the DPH Complaint, YOM's claims must also be dismissed insofar as they are based on REN's and Holder's work on the Public Education Campaign and REN's private speech and advocacy efforts. YOM alleges that REN "receives direct financial support" from the state for the Hotline and partnered with the state on the Public Education Campaign, that DPH included on its website links to a list of anti-abortion centers prepared by REN, that REN included information about YOM and reporting options in its guidebook, and that Holder made public statements about REN's work with the state. Compl. ¶¶ 81-98.[9] However, none of these allegations supports a plausible claim that this case involves one of the "rare circumstances" in which private parties can be deemed to have acted under color of state law for Section 1983 purposes. *See Estades-Negroni*, 412 F.3d at 4-5.

### i. REN's Receipt of Funding and Other Assistance from the State Does Not Make REN's and Holder's Activities State Action

It is well-established that a private actor's receipt of funding and other assistance from the government does not transform that private actor into a state actor for purposes of Section 1983 liability. *See Blum*, 457 U.S. at 1011 ("That programs undertaken by the State result in substantial

---

[9]    While YOM alleges that its building was vandalized, nowhere in the Complaint does YOM plausibly attribute that vandalism to REN or Holder. *See* Compl. ¶¶ 27-30, 37-41. Accordingly, those allegations are not relevant to the analysis of whether YOM has met its burden of stating plausible claims against REN and Holder.

funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business."); *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) ("[G]overnment regulation, even extensive regulation, and the receipt of federal funds…are insufficient to establish that a[n]…entity acted under color of state law."); *Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 146 (D. Mass. 2016) (receipt of funding does not render a private entity a state actor); *see also VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151,1161 (10th Cir. 2021) (receipt of state funds or other assistance, state contracts with private entities, state regulation of private functions, private use of state procedures, and involvement of state officials in administration of private processes do not alone satisfy the nexus test).

For example, in *Rendell-Baker v. Kohn*, the Supreme Court affirmed dismissal of claims against a school for lack of state action, even though the school received 90 to 99 percent of its budget from state funding, performed services for students referred by the state, and was regulated by the state. 457 U.S. at 838, 843. Applying this standard, the mere fact that projects on which REN performed work (i.e., the Public Education Campaign and Hotline) received funding or other assistance from the state does not render REN and Holder state actors for purposes of that work.

### ii.    REN's and Holder's Participation in the Public Education Campaign and Related Activities Are Not State Action

Likewise, YOM's conclusory allegations concerning REN's and Holder's partnership with the state on the Public Education Campaign, and Holder's statements about that collaboration, do not provide sufficient basis to treat REN and Holder as state actors. REN and Holder are autonomous, private parties with an interest in the subject of the Public Education Campaign. Their engagement in a state-sponsored educational initiative does not render their conduct state action. *See Santiago*, 655 F.3d at 71 ("The requisite nexus is premised on a showing of mutual

16

interdependence."); *Barrios-Velazquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 493 (1st Cir. 1996) (the fact that state authorization makes a private party's actions possible is insufficient to make the action taken under that authority state action) (citing *Rockwell*, 26 F.3d at 258). This is true notwithstanding the fact that REN's and Holder's work involves matters of public interest or serves the public. *See Rendell-Baker*, 457 U.S. at 842 ("That a private entity performs a function which serves the public does not make its acts state action."); *Cabi*, 161 F. Supp. 3d at 147 (a hospital's work on promoting community health was "not the kind of traditional state power" that renders a private party a state actor).

YOM has not alleged any facts that plausibly suggest a relationship of mutual interdependence between REN and Holder, on the one hand, and the state defendants on the other. In the absence of well-pled facts that would reasonably support a conclusion that REN's and Holder's involvement with the state was anything other than arms-length, YOM has not articulated an actionable claim of Section 1983 liability as to REN or Holder.

### iii.    REN's and Holder's Speech and Advocacy Do Not Render Them State Actors

The remainder of the allegations YOM has made against REN and Holder in the Complaint are directed at REN's and Holder's own speech, research, and advocacy on expanding equitable access to reproductive healthcare. *See* Compl. ¶¶ 82-98. REN's independent maintenance of a website that references AACs, its publishing of a guidebook containing information about the public's reporting options, and its (and Holder's) statements about its work are private actions of the sort which cannot form the basis of Section 1983 liability. *See Barrios-Velazquez*, 84 F.3d at 492 ("A private entity's conduct is not actionable under section 1983 if the challenged action results from the exercise of private choice and not from state influence or coercion."). Significantly, REN and Holder have *their own constitutional right* to engage in free speech *See*

*Lugar*, 457 U.S. at 936 ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power."). REN and Holder do not lose the right to promote or share *their* views simply because a particular view aligns with one held by government actors. *See Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 756, 759 (9th Cir. 2024) ("Statements that government officials 'engaged' with social media companies to ensure that those companies 'understand the importance of misinformation and disinformation and how they can get rid of it quickly'" were consistent with parallel objectives and not evidence of a specific agreement for purposes of the joint-action analysis) (internal quotation marks omitted).

### 4. The Complaint Does Not State a Plausible Claim that REN and Holder Caused a Deprivation of YOM's Constitutional Rights.

As YOM has failed to allege sufficient facts to show that REN and Holder engaged in state action, the Court's inquiry into liability on the part of REN and Holder must end. *See Yeo v. Town of Lexington*, 131 F.3d 241, 248–49 (1st Cir. 1997) ("If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."). However, even if YOM had alleged sufficient facts to show that REN and Holder acted under color of state law, YOM's claims against REN and Holder must nonetheless be dismissed because YOM has failed to plausibly allege that it has suffered a deprivation of First Amendment and Fourteenth Amendment rights that was caused by REN and Holder. *See Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) ("To satisfy the second element [of a Section 1983 claim], plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation.").

As set forth more fully in Section B(1) above, YOM has not articulated how REN's and Holder's actions, specifically, have deprived YOM of its ability to exercise its constitutional rights

– an omission that is fatal to YOM's claims.[10] *See Williams*, 535 F.3d at 78 (dismissing a Section 1983 claim where plaintiff was unable to show his speech was chilled); *Curley*, 268 F.3d at 73 (same). As an initial matter, neither REN nor Holder has any regulatory or enforcement authority. Moreover, by YOM's own account, it continues to operate multiple locations and a mobile clinic, and maintains a website promoting its services and views on reproductive health issues. Compl. ¶¶ 20-23, 25.[11] To be clear, the public has not been prevented from seeking out and receiving YOM's services, and YOM has not been prevented from expressing its viewpoints or fulfilling its mission consistent with those viewpoints. Because YOM cannot establish a deprivation of any constitutional right that is fairly traceable to REN and Holder, the Complaint against them must be dismissed. *See Estades-Negroni*, 412 F.3d at 4 ("If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal.").

## CONCLUSION

For the foregoing reasons, Defendants Reproductive Equity Now Foundation, Inc. and Rebecca Hart Holder respectfully request that the Court GRANT the Motion to Dismiss and DISMISS all counts against them with prejudice.

---

[10]    The Supreme Court's decision in *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2004), is not to the contrary. In *Vullo*, the Court held that the NRA plausibly alleged that during Vullo's tenure as superintendent of the New York Department of Financial Services, which has regulatory and enforcement authority over all entities doing business in New York, Vullo violated the First Amendment by using the power of her office to coerce entities to end their business relationships with the NRA through threats of sanctions against them. 602 U.S. at 187-94. Tellingly, no such facts are alleged here because they cannot be – REN and Holder are private parties with no enforcement powers.

[11]    YOM makes cursory allegations that one of its doctors quit providing services and that it has incurred additional costs for security because of "threats" by "Defendants," but these naked assertions are insufficient to survive a motion to dismiss. Moreover, YOM does not identify any "threats" made directly by REN or Holder.

Respectfully submitted,

REPRODUCTIVE EQUITY NOW
FOUNDATION, INC. AND REBECCA HART
HOLDER,

By their attorneys,

/s/ *Martin M. Fantozzi*
Martin M. Fantozzi (BBO #554651)
Mariana Korsunsky (BBO #675626)
Carla A. Reeves (BBO #681849)
Sarah M. Eberspacher (BBO #707133)
Kiman Kaur (BBO #709943)
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
Tel: (617) 482-1776
mfantozzi@goulstonstorrs.com
mkorsunsky@goulstonstorrs.com
creeves@goulstonstorrs.com
seberspacher@goulstonstorrs.com
kkaur@goulstonstorrs.com

Dated October 28, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Carla A. Reeves hereby certify that on October 28, 2024, I caused the foregoing document to be filed electronically using the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants. Paper copies will be sent to those indicated as non-registered participants.

<div align="center" style="margin-left:40%">

/s/ *Carla A. Reeves*
Carla A. Reeves

</div>