# EXHIBIT I

4.1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                              SUPERIOR COURT
                                                            2481CV01789

A WOMAN'S CONCERN, INC.,
    Plaintiff

vs.                                                         RECEIVED

                                                            7/18/2024
COMMONWEALTH OF
MASSACHUSETTS BOARD OF
REGISTRATION IN MEDICINE,
    Defendant

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Plaintiff, A Woman's Concern, Inc. (AWC), submits this Memorandum in Support of its Motion for Preliminary Injunction. Regarding Exhibits, it refers the Court to its Verified Complaint, the Exhibits attached thereto, and Exhibit J, attached hereto.

## I. BACKGROUND

This case arises from a complaint brought by Reproductive Equity Now, an abortion advocacy group, to the Defendant Board of Registration in Medicine against the Plaintiff, A Woman's Concern, Inc., a life-affirming pregnancy center, concerning the use of AWC's mobile unit. The complaint, filed in October of 2023, alleged that AWC either falsely advertised its mobile unit services or that the mobile unit's personnel were acting beyond the scope of their practice. This prompted the Defendant board to conduct an investigation of Dr. John Doe, AWC's medical director. As part of its investigation, the board served two subpoenas duces tecum on the Plaintiff, AWC. AWC produced records

1

mr

to the Defendant in response to the first subpoena, but filed this action in response to the second subpoena. For the reasons stated below, it requests the Court to quash the Defendant's subpoena.

## II. STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

The requirements for a preliminary injunction under M.R.C.P. 65 (b) are well established. The Court must consider the following three factors: 1) the Plaintiff's likelihood of success on the merits; 2) the risk of irreparable harm to the Plaintiff if the injunction is not issued; and 3) the irreparable harm to be suffered by the Defendant if the injunction is issued. *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 617 (1980). In addition, in some cases, the public interest is a fourth factor that can be weighed by the Court. *Tri-Nel Management, Inc. v. Board of Health*, 433 Mass. 217 (2001).

> When making the determination whether to grant the preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue. *Id.* at 617.

## III. ARGUMENT

### A. The Complaint Filed with the Defendant Massachusetts Board of Registration in Medicine is of a Minor Deficiency.

The Complaint filed with the Defendant Massachusetts Board of Registration in Medicine against AWC's Plaintiff's medical director is of a minor deficiency and does not warrant the subpoenas duces tecum and the full blown investigation that the

2

Defendant seeks to put the Plaintiff through. The complaint of Reproductive Equity Now to the Defendant is based solely on statements allegedly made to a newspaper reporter by Teresa Larkin, the Plaintiff's executive director. The complaint (Ex. A) consists of a letter signed by Rebecca Hart Holder, the president of Reproductive Equity Now. It claims that the Plaintiff's mobile unit may have been using deceptive practices in that the Plaintiff advertised that it provided "immediate results" regarding its pregnancy testing. In fact, the results were immediate but had to be confirmed by a physician within twenty-four to forty-eight hours. Of significance, the Massachusetts Department of Public Health, which conducted regular inspections of the Plaintiff and of all medical clinics, never required any change in this advertising or practice.

Reproductive Equity Now also alleged in its complaint that the Plaintiff's nurses in its mobile unit may have been operating beyond the scope of their practice if they were diagnosing ultrasounds without a physician interpreting them. But that was never the Plaintiff's practice since the ultrasound results were always confirmed by a physician. And again, the Massachusetts Department of Public Health conducted regular inspections and never required any change in this practice.

The only change required by the Department was in the Plaintiff's Policies and Procedures Manual regarding the criteria for ultrasound exams. The original version said that if the patient's last menstrual period was unknown, then an ultrasound could be offered at the discretion of the sonographer. It also said that if the patient had light bleeding or spotting or pain, then an abdominal scan could be offered and provided at the sonographer's discretion. The Department required the Plaintiff to remove mention of the sonographer having any discretion in these areas. The Plaintiff made the required

3

changes. See Ex. B (before the change) and Ex. C (after the change). And the Department approved of these changes and, as of February 29. 2024, stated that all deficiencies had been corrected. (See Ex. D).

Based on this minor deficiency, the Defendant Board of Registration in Medicine somehow believes it is justified in conducting a full blown investigation of the Plaintiff's medical director, Dr. Doe, and requiring the Plaintiff to produce numerous records. It is an unreasonable stretch. The deficiency hardly undermines confidence in the integrity of the medical profession which is supposed to be the Defendant's concern. *See Sugarman v. Board of Registration in Medicine*, 422 Mass. 338, 342 (1996), *citing Kvitka v. Board of Registration in Medicine*, 407 Mass. 140, *cert. denied*, 498 U.S. 823 (1990).

**B. The Complaint filed with the Defendant is Not from a Patient, but from an Adversary of the Plaintiff.**

The typical complaint made to the Massachusetts Board of Registration in Medicine would be from a patient of a doctor alleging misconduct of some sort on the part of the physician. But here the complainant, Reproductive Equity Now, is not a patient or a neutral party, but is an abortion advocacy organization – an adversary of the Plaintiff. The president of Reproductive Equity Now, Rebecca Hart Holder, the signer of the complaint, considers the Plaintiff, which is a life-affirming pregnancy center, to be a "fake clinic," and "dangerous," and that it "deceive[s] pregnant people into believing that they provide abortion care." (Ex. I). These are all baseless claims.

A complaint filed by such a biased party should immediately have raised the suspicions of the Defendant that the complaint may have lacked merit. And, in fact, considering that the Massachusetts Department of Public Health actions, or lack thereof,

4

the complaint did lack merit. Yet this did not stop the Defendant from conducting an investigation of the Plaintiff's medical director and issuing two burdensome subpoenas to the Plaintiff.

### C. Reproductive Equity Now is Seeking to use the Defendant's Subpoena Power as a Discovery Tool to Pry into the Business of the Plaintiff.

With reference to the Defendant Board of Registration in Medicine, G.L. c. 112, Sec. 5 provides that, "… investigative records or information of the board shall not be kept confidential after the board has disposed of the matter under investigation ….. nor shall the requirement that investigative records or information be kept confidential at any time apply to requests from the ….. complainant…" Accordingly, once the complaint is disposed of by the Defendant board, Reproductive Equity Now, the complainant, will have complete access to all of the records produced by the Plaintiff, AWC, in response to the Defendant's subpoena. The Defendant Board of Registration in Medicine is thus improperly allowing itself to be used as a discovery tool by Reproductive Equity Now to conduct a vast fishing expedition and to pry into the business of the Plaintiff.

### D. The Defendant's Subpoena Seeks Documents that are not Relevant to the Complaint Filed by Reproductive Equity Now.

The complaint filed with the Defendant board by Reproductive Equity Now concerned the claim that AWC's mobile unit was falsely advertising and that the unit's medical personnel may have been operating beyond their scope of practice. (Ex. A). Somehow, these accusations, which have turned out to be false, caused the Defendant to launch a vast investigation of AWC's medical director and to include two burdensome subpoenas duces tecum to be served on AWC. Most of the documents being sought in the subpoenas have nothing at all to do with AWC's mobile unit. See Exhibits

E and H. And the contrast between the actions complained of and the documents being sought is so vast that it certainly appears that the Defendant has an ulterior motive.

**E. The Defendant's Investigation is the Action of a Government Administration that is Unreasonably and Openly Hostile to the Plaintiff.**

The explanation for the Defendant Board seeking documents far beyond what is relevant to the issues is that the Defendant is part of a government administration that is unreasonably and openly hostile to AWC and other life-affirming pregnancy centers. That administration issued a press release dated June 10, 2024, entitled, "*Healey-Driscoll Administration Launches First-in the Nation Public Education Campaign on the Dangers of Anti-Abortion Centers.*" (Ex. J). The press release quoted Governor Maura Healey as follows: "In Massachusetts, we are committed to protecting and expanding access to safe and legal abortion. That includes protecting patients from the deceptive and dangerous tactics that anti-abortion centers often use to stop people from accessing comprehensive reproductive services." No evidence was presented to back up the baseless accusation. In addition, Rebecca Hart Holder, the executive director of Reproductive Equity Now, was quoted and also disparaged the pregnancy resource centers with false accusations. This is the same person who is the signer of the complaint against AWC which is the basis of this case.

Further, when Governor Maura Healey was the Commonwealth's attorney general, in an apparent reaction to the U.S. Supreme Court's overturning of *Roe v. Wade* two weeks earlier, she issued a press release on July 6, 2022, warning patients about crisis pregnancy centers (otherwise known as pregnancy resource centers). (Ex. I). The warning included, without any factual basis, claims that the centers were deceptive and used

6

coercive tactics. And the press release also included a quotation from Rebecca Hart Holder disparaging the pregnancy resource centers with false accusations.

**F. It Would be Burdensome for the Plaintiff to Comply with the Subpoena.**

The Plaintiff has already produced numerous documents to the Defendant board in response to the first subpoena served on it. (Ex. G). It produced the records even though it was felt most of the records sought were not relevant to the complaint that was filed. But it produced the documents in order to avoid costly litigation. However, this second subpoena (Ex. H) seeks the production of 85 additional records. That is an unreasonable burden to place on the Plaintiff.

**G. The Plaintiff Can Show a Probability of Success on the Merits of this Action.**

Based on the above arguments, the Plaintiff is likely to succeed on the merits of this case. The requested documents are so far afield from the substance of the complaint, the Defendant's subpoena is so unreasonable in seeking irrelevant records, and the bias is so evident that the Plaintiff will likely succeed in this action.

**H. The Plaintiff Would Suffer Irreparable Harm if the Injunction is Not Granted.**

If the Court does not grant the injunction then, based on G.L. c. 112, Sec. 5, the documents produced by the Plaintiff in response to the subpoena will eventually end up in the possession of the complainant, Reproductive Equity Now. This would cause the Plaintiff irreparable harm because Reproductive Equity Now is a known adversary of the Plaintiff, a life-affirming pregnancy center. Reproductive Equity Now should have no right to possess the Plaintiff's records, learn of its internal procedures, and know who its employees and volunteers are.

7

### I. The Defendant Would Not Suffer Irreparable Harm if the Injunction is Granted.

The Defendant Massachusetts Board of Registration in Medicine would not suffer irreparable harm if the injunction is granted. Its investigation of Dr. Doe, the Plaintiff's medical director, is obviously baseless and politically motivated. And if the injunction is granted and the Defendant could somehow ultimately prevail at trial, it would be no worse off in not obtaining the records at an earlier date.

### J. The Public Would Not be Harmed if the Injunction is Granted.

There is no evidence that the public would be harmed if the injunction is granted. The Department of Public Health essentially gave the Plaintiff a clean bill of health as of February 29, 2024. The Plaintiff's opponents have made numerous baseless charges against the Plaintiff, but have not backed them up with a single piece of evidence. This is not a situation where there is a rogue physician where the Board must take immediate action to protect the public.

### IV. CONCLUSION

For the foregoing reasons, the Plaintiff, A Woman's Concern, Inc., requests this Court to grant Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,
A WOMAN'S CONCERN, INC.
By its attorney

_____
Thomas M. Harvey
22 Mill Street
Suite 408
Arlington, MA 02476
(617) 710-3616
Tharveyesq@aol.com
BBO: 225050

8

## CERTIFICATE OF SERVICE

I, Thomas M. Harvey, attorney for the Plaintiff, hereby certify that on the 18th day of July, 2024, a copy of the within document was served on the following via email:

Sheryl M. Bourbeau, Esq.
Board of Registration in Medicine
178 Albion Street, Suite 330
Wakefield, MA 01880
Sheryl.M.Bourbeau@mass.gov

Thomas M. Harvey

9