UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A Woman's Concern, Inc. d/b/a Your Options Medical Centers,<br><br>    Plaintiff,<br><br>vs.<br><br>Maura Healey, Governor of Massachusetts, sued in her individual and official capacities; Robert Goldstein, Commissioner of the Massachusetts Department of Public Health, sued in his individual and official capacities; Reproductive Equity Now Foundation, Inc.; Rebecca Hart Holder, Executive Director of Reproductive Equity Now Foundation,<br><br>    Defendants. | C.A. No. 1:24-cv-12131-LTS<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS REPRODUCTIVE EQUITY NOW FOUNDATION, INC. AND REBECCA HART HOLDER'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

# INTRODUCTION

YOM's[1] Opposition (the "Opposition" or "Opp.") to REN and Holder's Motion to Dismiss highlights the infirmities of its Complaint with respect to these private-actor defendants and underscores why REN and Holder's Motion should be granted. The Opposition confirms that YOM lacks standing—and further demonstrates that YOM's claims against REN and Holder are based on conclusory characterizations that are untethered to well-pleaded facts. YOM's Section 1983 claims against REN and Holder cannot withstand dismissal under these circumstances.

### A.     DPH'S REFERENCE TO REN AS A "TRUSTED PARTNER" DOES NOT TRANSFORM REN OR HOLDER INTO STATE ACTORS

In a futile effort to attempt to plausibly show that REN and Holder acted under color of state law, YOM *repeatedly* invokes a conclusory allegation that REN and Holder are "trusted partner[s]" of the State. *See* Opp. at 2, 4, 13, 15, 17, 20. YOM's reliance on this phrase is both disingenuous and utterly insufficient to sustain its claims against REN and Holder under Section 1983.

To start, YOM's use of the phrase in its Opposition is completely divorced from relevant context. The full, single DPH statement from which the phrase is pulled (which YOM conveniently omits from both its Complaint and its Opposition) reads: "This map is maintained by Reproductive Equity Now Foundation, a trusted partner of the Massachusetts Department of Public Health." *See* Exhibit A to Declaration of Carla A. Reeves, Esq. It is a simple statement of attribution of a source made available by REN in its capacity as an advocate on issues of reproductive rights.[2] Nothing

---

[1] Except where otherwise stated, capitalized terms are used here as defined in the Motion to Dismiss of Defendants Reproductive Equity Now Foundation, Inc. and Rebecca Hart Holder, and Memorandum of Law in support of same (ECF Nos. 33-34).

[2] Contrary to the representations made in the Opposition (p. 17), the statement was not threatening or harassing in any way.

about the statement supports transforming REN and Holder into state actors.

YOM also cannot survive REN's and Holder's Motion to Dismiss by relying on "labels and conclusions." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The mere characterization of the relationship between a state actor and a private party as a partnership is not sufficient to establish state action, particularly where it is untethered to and unsupported by factual allegations concerning the parties' mutual interdependence. *See, e.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1182 (N.D. Cal. 2022), *aff'd sub nom*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024) ("Generalized statements about working together do not demonstrate state action….In addition, the government can work with a private entity without converting the private entity's decisions into government decisions."); *Huber v. Biden*, No. 21-cv-06580-EMC, 2022 WL 827248, at *7 (N.D. Cal. Mar. 18, 2022) ("statements about working together with the government to prevent the spread of misinformation do not equate to working in concert to violate constitutional rights"); *Blythe v. Schlievert*, 245 F. Supp. 3d 959, 968-69 (N.D. Ohio 2017) (a conclusory characterization of a hospital as a "partner" of a state agency was insufficient to adequately plead state action); *Conrad v. Perales*, 818 F. Supp. 559, 564-65 (W.D.N.Y. 1993) (private trade associations' partnership with the State on a joint industry-state task force did not render them state actors). The Court must reject YOM's efforts to achieve an extraordinary—and perilous—expansion of the scope of Section 1983.

**B.   THE OPPOSITION CONFIRMS THAT YOM LACKS STANDING**

Contrary to the argument in the Opposition, YOM's First Amendment-based claims alleged against REN and Holder do not relieve YOM from "the need to meet core Article III standing principles" including concrete, particularized and actual or certainly impending injuries that are fairly traceable to the challenged conduct of REN and Holder. *Sullivan v. City of Augusta*, 511 F.3d 16, 25 (1st Cir. 2007), *cert. denied*, 555 U.S. 821 (2008); *see also Blum v. Holder*, 744

F.3d 790, 799-800 (1st Cir. 2014), *cert. denied*, 574 U.S. 991 (2014) (plaintiff did not have standing for pre-enforcement challenge on First Amendment grounds to state statute, "even under the potentially more lenient 'substantial risk' standard or even the 'objectively reasonable' standard"). Indeed, in *Lopez v. Candaele*, on which YOM relies for its proposition that First Amendment claims carry with them a "lowered threshold for establishing standing," *see* Opp. at 5 (quoting 630 F.3d 775, 781 (9th Cir. 2010)), the Ninth Circuit *reversed* the district court's finding that a student challenging a school policy had established standing, holding that "the student failed to make a clear showing that his intended speech on religious topics gave rise to a specific and credible threat of adverse action from college officials under the" relevant policy. 630 F.3d at 781. YOM has not carried its burden on standing with respect to REN and Holder.

The cases relied on by YOM in arguing for an adjusted-standing analysis are also inapposite here because these cases do so specifically when First Amendment rights are implicated by a "*threatened enforcement effort*." *See, e.g.*, *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (plaintiff had standing, where it was directly challenging California liquor-license regulation *with which officials had threatened enforcement* against businesses that chose to host plaintiff's erotic-art exhibitions) (emphasis added). YOM has affirmatively conceded that REN and Holder's "filing of the [DPH] complaint itself was not a state action" and that the claims it asserts against them are not based on the filing of the DPH Complaint. *See* Opp. at 17. Accordingly, YOM's alleged injuries are predicated solely on the "threats" of enforcement it contends were embedded in statements made by the "Defendants" in the course of the Public Education Campaign. Opp. at 3, 7-10, 12, 17-18. Yet, the Opposition does not (and cannot) square how the Public Education Campaign could possibly vest private actors like REN and Holder with any *enforcement* powers. This is fatal to YOM's ability to trace its alleged injuries to REN and Holder and establish standing.

*See Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020), *cert. denied*, *Dantzler, Inc. v. S2 Servs. Puerto Rico, LLC*, 141 S. Ct. 2624 (2021) (recognizing that causation "is absent if the injury stems from the independent action of a third party") (citation omitted).

Unable to imbue REN and Holder with the requisite enforcement powers, the Opposition, just like the Complaint, conflates and attributes the "threats" YOM alleges were made in the course of the Public Education Campaign to the omnibus "Defendants." Despite defining REN and Holder in its Opposition as "REN Defendants" or "Defendants," *see* Opp. at 1, YOM employs the term "Defendants" conjoined with the State Defendants throughout its brief. For example, YOM's background section claims "Defendants" are subjecting AACs "including Plaintiff…to revocation of licenses and/or prosecution," *see* Opp. at 2, but it cites to paragraphs 60 and 63 of the Complaint, which relate *exclusively* to statements made by DPH Commissioner Goldstein about regulatory actions his office could take. *See* ECF No. 1 ¶¶ 60, 63. Likewise, YOM claims that "'Defendants' "actions constitute a concerted effort to deprive PRCs like YOM of their freedom of speech by threatening government prosecution…." Opp. at 10, without identifying any threats of government prosecution or enforcement made specifically by REN or Holder. As REN and Holder obviously do not have any enforcement power, YOM's claims against them should be dismissed.

### C.    YOM *CONCEDES* THE DPH COMPLAINT 'WAS NOT STATE ACTION'

YOM concedes in the Opposition, as it must, that the filing of the DPH Complaint by REN and Holder did not constitute state action and that the claims it asserts against them are not *based* on the filing of the DPH Complaint. Opp. at 17-18. As a consequence of these concessions, and for all the reasons stated in the Motion to Dismiss, neither the filing of the DPH Complaint nor the investigation by DPH and BORIM that subsequently ensued can form the basis of the First Amendment claims asserted against REN and Holder.

4

Neither can YOM rely on the filing of the DPH Complaint as evidence of what it disingenuously characterizes as a "campaign of threats and harassment." Opp. at 17. The Opposition fails to cite to a single case where a private organization's liability under Section 1983 was established through evidence of conduct that was not "fairly attributable to the State." Indeed, any such construct would nullify the state action requirement under Section 1983. *See Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015), *cert. denied*, 578 U.S. 976 (2016) ("The state action inquiry is preliminary to, and independent of, the due process inquiry. If there is no state action, the plaintiff's claim fails.").

**D. YOM'S REQUEST TO AMEND ITS COMPLAINT AS TO REN AND HOLDER IN THE ALTERNATIVE SHOULD NOT BE GRANTED**

This Court may deny a plaintiff's request for leave to amend a complaint where, as here, amendment would be futile. *See HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 578 (1st Cir. 2014) ("a judge may deny leave if amending the pleading would be futile—that is, if the pined-for amendment does not plead enough to make out a plausible claim for relief"). Despite having had ample opportunity to do so, YOM has not identified any new facts which it could plead to cure its lack of standing and its failure to plausibly demonstrate that REN and Holder's work on the Public Education Campaign renders it a state actor. Consequently, the Court should exercise its discretion to deny YOM's request for leave to amend.

**CONCLUSION**

For the foregoing reasons, and the additional reasons set forth in their Motion to Dismiss and supporting Memorandum filed therewith, Defendants REN and Holder respectfully request that the Court GRANT the Motion to Dismiss and DISMISS all claims asserted against them in the Complaint, with prejudice.

Respectfully submitted,

REPRODUCTIVE EQUITY NOW
FOUNDATION, INC. AND REBECCA HART
HOLDER,

By their attorneys,

/s/ *Mariana Korsunsky*
Martin M. Fantozzi (BBO #554651)
Mariana Korsunsky (BBO #675626)
Carla A. Reeves (BBO #681849)
Sarah M. Eberspacher (BBO #707133)
Kiman Kaur (BBO #709943)
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
Tel: (617) 482-1776
mfantozzi@goulstonstorrs.com
mkorsunsky@goulstonstorrs.com
creeves@goulstonstorrs.com
seberspacher@goulstonstorrs.com
kkaur@goulstonstorrs.com

Dated November 19, 2024

## **CERTIFICATE OF SERVICE**

    I, Mariana Korsunsky, hereby certify that on November 19, 2024, I caused the foregoing document to be filed electronically using the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants. Paper copies will be sent to those indicated as non-registered participants.

                                                  /s/ *Mariana Korsunsky*
                                                  Mariana Korsunsky