UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A WOMAN'S CONCERN, INC. D/B/A YOUR OPTIONS MEDICAL CENTERS,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MAURA HEALEY, GOVERNOR OF MASSACHUSETTS, sued in her individual and official capacities; and ROBERT GOLDSTEIN, COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, sued in his individual and official capacities; and REPRODUCTIVE EQUITY NOW FOUNDATION,<br><br>　　　　　　　Defendants. | CIVIL ACTION<br>NO. 1:24-cv-12131<br><br><br>**Leave to file granted on December 13, 2024** |

**MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

Phoebe Fischer-Groban, BBO No. 687068
Deborah J. Frisch, BBO No. 693847
Meredith G. Fierro, BBO No. 696295
Assistant Attorneys General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2589
phoebe.fischer-groban@mass.gov

Dated:  December 13, 2024

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND.................................................................................................1

    A.    Your Options Medical Centers. ................................................... 1

    B.    The June 2023 Fiscal Year 2023 Supplemental Budget Providing for a Public Awareness Campaign About Anti-Abortion Centers.............. 2

    C.    REN's October 2023 Letter About Potential Deceptive Advertising and Out-of-Scope Practice at the Your Options Medical Mobile Unit. ................................................................................................ 3

    D.    The Department's Inspection of Your Options Medical Centers. .............. 4

    E.    The Board of Registration in Medicine's December 2023 Investigation into the Medical Director of Your Options Medical Center.............................................................................................. 5

    F.    The Department's January 2024 Guidance to Licensed Clinics and Health Care Providers Regarding Licensure Obligations and Standard of Care. ....................................................................... 6

    G.    The Department's April 2024 Public Education Campaign. ..................... 8

ARGUMENT .......................................................................................................8

    I.    Motion to Dismiss Legal Standard. ........................................................ 9

    II.    The Complaint Fails to State a Claim for a Violation of the Free Speech Clause of the First Amendment. ............................................... 9

    A.    Government Criticism of Anti-Abortion Centers Does Not Implicate the Free Speech Clause. ............................................... 9

    B.    The Complaint Fails to Plausibly Allege That the State Defendants Coerced a Third Party to Suppress Your Options Medical's Speech. ................................................................................ 11

    III.    The Complaint Fails to State a Claim for a Violation of the Free Exercise Clause of the First Amendment. ............................................. 15

    A.    The Public Education Campaign Does Not Burden Your Options Medical's Religiously Motivated Conduct. ............................................. 16

    B.    Your Options Medical Has Not Plausibly Alleged Selective Enforcement. ....................................................................... 17

IV.    The Complaint Fails to State a Claim for a Violation of the Equal
       Protection Clause. ............................................................................... 19

V.     Governor Healey and Commissioner Goldstein Enjoy Qualified Immunity
       Against Plaintiff's Individual-Capacity Claims. .................................................... 20

CONCLUSION ...........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)...........................................13, 14, 15

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) .............................................................. 16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).....................16, 17n

*Clorox Co. P. R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000)..................2

*Diaz-Bigio v. Santini*, 652 F.3d 45 (1st Cir. 2011) ........................................................ 20

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) .................................... 21

*Escalera-Salgado v. United States*, 911 F.3d 38 (1st Cir. 2018).................................. 20

*Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019) ........................................................ 20, 21

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) .......................................... 5n

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011)................................................... 20

*Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33 (2d Cir. 1983),
   *cert. denied,* 464 U.S. 892 (1983) ......................................................................... 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................. 20

*In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003)............................ 12n

*Levy v. Bd. of Registration and Discipline in Med.*, 392 N.E.2d 1036 (Mass. 1979)..................5n

*Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617 (2018) ........................ 17

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) ........................................*passim*

*O'Brien v. Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31 (1st Cir. 2020) ........................... 9

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023),
   *cert. denied*, 144 S. Ct. 2715 (2024) ..................................................................... 15

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008).............................................................. 16

*Penate v. Hanchett*, 944 F.3d 358 (1st Cir. 2019) .................................................. 20, 21

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991),
   *cert. denied*, 503 U.S. 950 (1992)........................................................................... 10

*Perrier-Bilbo v. United States*, 954 F.3d 413 (1st Cir. 2020) ........................................................ 19

*Pleasant Grove City, UT v. Summum*, 555 U.S. 460 (2009) ........................................................ 9, 15

*R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906 (9th Cir. 2005) ................................. 10, 11n

*Raiche v. Pietroski*, 623 F.3d 30 (1st Cir. 2010) .......................................................................... 20

*Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1 (1st Cir. 2013) ......................................... 20

*Shurtleff v. City of Boston*, 596 U.S. 243 (2022) ........................................................................ 15

*VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151 (10th Cir. 2021) .......................... 12n

*Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir. 2005) ........................................................ 16, 17, 19

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ........................................................................................ 21

**Statutes**

2023 Mass. Acts. ch. 2, § 2 ........................................................................................................... 3n

Mass. Gen. Laws ch. 13 §§ 9-11 .................................................................................................. 5n

Mass. Gen. Laws ch. 111, § 51 ..................................................................................................... 17

Mass. Gen. Laws ch. 112, § 5 ................................................................................................. 5n, 18

**Other Authorities**

Massachusetts Office on Disability, *Memo: Reasonable accommodations at Town Meetings*, https://tinyurl.com/4e2jfx7j ............................................................................................... 13n

Office of the Attorney General, *AG Campbell Issues Advisory Providing Guidance On How State Consumer Protection And Other Laws Apply To Artificial Intelligence*, https://tinyurl.com/7hwcxwr6 .............................................................................................. 13n

Office of the Attorney General, *E-cigarette and tobacco consumer protection regulations*, https://tinyurl.com/7vsed4fw ............................................................................. 12n

Office of the Attorney General, *File a workplace complaint*, https://tinyurl.com/2ctftacf ........ 12n

Office of the Attorney General, *Getting Your Car Repaired*, https://tinyurl.com/59zmjxtt ....... 12n

Office of the Attorney General, *Guidance on Schools' Legal Obligations Regarding Hate and Bias Incidents*, https://tinyurl.com/mrym78ed ...................................................... 13n

Office of the Attorney General, *Mortgage Lending and Foreclosures*, https://tinyurl.com/4ck7yddr .................................................................................................. 12n

Office of the Attorney General, *Prevailing Wage Enforcement*,
    https://tinyurl.com/2c4mm8fn ................................................................................ 12n

Office of the Attorney General, *Your Car, Your Rights*, https://tinyurl.com/mr28ycvp ............ 12n

**<u>Regulations</u>**

105 Code Mass. Regs §§ 140.110 – 140.113 .............................................................................. 17

243 Code Mass. Regs. § 2.07(4) ......................................................................................... 5n, 18

243 Code Mass. Regs. § 2.07(11) ....................................................................................... 5n, 18

Plaintiff, A Woman's Concern, which operates several licensed health care facilities in Massachusetts called Your Options Medical,[1] seeks to enjoin Governor Maura Healey, and the Commissioner of the Department of Public Health, Dr. Robert Goldstein (collectively, the "state Defendants"), from protecting the health, reproductive freedom, and civil rights of people in the Commonwealth by providing education and accurate information about anti-abortion centers. Your Options Medical seeks to prohibit the state Defendants from accurately warning the public that anti-abortion centers do not provide comprehensive reproductive health care, and prevent the Department of Public Health from ensuring that licensed health care clinics and providers comply with Massachusetts law. The Complaint fails to state a claim upon which relief can be granted because this government speech is permitted by the First Amendment; it does not burden Your Options Medical's free exercise of its religious beliefs; and it does not violate the Equal Protection Clause. Furthermore, qualified immunity bars Your Options Medical's claims against Governor Healey and Commissioner Goldstein. For these reasons, the Court should dismiss the Complaint. *See* Fed. R. Civ. P. 12(b)(6).

## **FACTUAL BACKGROUND**

### A.    **Your Options Medical Centers.**

Your Options Medical, a self-described "religious-based nonprofit organization," Compl. ¶ 5,  operates multiple health care facilities across Massachusetts, as well as a mobile clinic. *Id.* ¶¶ 20-21. As health care facilities, all Your Options Medical locations are licensed by the Department of Public Health (the "Department"). *Id.* ¶¶ 20-22. Your Options Medical alleges that it is "a Christian organization" that wishes to "aid[] women and couples facing unexpected

---

[1] For simplicity, Defendants will refer to A Woman's Concern and Your Options Medical collectively as "Your Options Medical."

pregnancies." *Id.* ¶ 16. Your Options Medical clinics do not provide prenatal or postpartum health care for pregnant patients, but they do provide pregnancy testing and limited ultrasounds, as well as some non-medical services. *Id.* ¶¶ 19, 25.

Your Options Medical clinics do not perform abortions or refer for abortions, and the Complaint's allegations suggest that they discourage it. *Id.* ¶¶ 16-17 (stating that Plaintiff attempts to "meet[] . . . needs that may otherwise cause [persons facing unexpected pregnancies] to consider abortion"). However, although the Complaint also alleges that Your Options Medical clinics do not advertise that they perform abortions, *id.* ¶ 17, a printed screenshot of their website attached to the Complaint contradicts this allegation. Doc. 1-3 at 2-6; *see Clorox Co. P. R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (citation omitted)). It states that Your Options Medical Centers offer "holistic services and support during and after an unexpected pregnancy or abortion," and in the largest text on the page states, "The Pregnancy and Abortion Answers you Need" and "Considering Abortion?" *Id.* at 2, 4. The website offers patients the option to click on "I Want to Talk About My Abortion." *Id.* at 3. The portion of the website that reads, "our center does not perform nor refer for abortion services" is barely legible on the copy of the website attached to the Complaint. *Id.* at 6. A visitor to this website would reasonably be confused as to whether Your Options Medical Center provides abortion care.

**B.    The June 2023 Fiscal Year 2023 Supplemental Budget Providing for a Public Awareness Campaign About Anti-Abortion Centers.**

On March 22, 2023, the Massachusetts Legislature enacted its FY2023 supplemental budget, signed by Governor Healey on March 29, 2023, which provided that "not less than $1,000,000 shall be expended for a public awareness campaign to educate providers and the public

about crisis pregnancy centers and pregnancy resource centers and the centers' lack of medical services; provided further, that the campaign shall include information on the availability of providers across the commonwealth that provide legitimate medical and family planning services." Compl. ¶ 81.[2]

### C.    REN's October 2023 Letter About Potential Deceptive Advertising and Out-of-Scope Practice at the Your Options Medical Mobile Unit.

On October 17, 2023, Reproductive Equity Now ("REN") submitted a letter to the Executive Office of Health and Human Services ("EOHHS") and the Department of Public Health, a Department within EOHHS, expressing concern about potentially deceptive practices at Your Options Medical's mobile unit, which Your Options Medical planned to operate on Cape Cod in September 2023. Compl. ¶¶ 42-43; Doc. 1-3 at 16-18. According to the letter, which linked to reporting in the *Provincetown Independent*, Your Options Medical's mobile unit advertised ultrasounds with "immediate results," but Your Options Medical's Executive Director had told the reporter that "when we say immediate results, we usually mean preliminary findings," explaining that there would not be a physician at the mobile unit, and that ultrasounds would be reviewed by a physician within 24 to 48 hours. Doc. 1-3 at 16-17.[3]

In its letter, REN notified EOHHS that this discrepancy between the mobile unit's advertising and the Executive Director's statements suggested either that the mobile unit was

---

[2] *See also* An Act making appropriations for the Fiscal Year 2023 to provide for supplementing certain existing appropriations and for certain other activities and projects, 2023 Mass. Acts. ch. 2, § 2, at 4513-1006.

[3] The Complaint alleges that "YOM performs pregnancy tests and ultrasounds with immediate results, but the *final* results are confirmed by a physician, then provided to the patients no more than twenty-four to forty-eight hours later." Compl. ¶ 45. Thus, it appears that the mobile unit indeed either misleads patients into believing they will receive immediate ultrasound results; or that the nurses conducting the ultrasounds do diagnose ultrasounds on site before the ultrasound images are reviewed by a physician.

engaging in misleading advertising by promising "immediate results"; or, that the nurses who would conduct the ultrasounds at the mobile unit would provide ultrasound diagnoses, which is outside nurses' designated scope of practice. REN reported to EOHHS that if nurses provide ultrasound results or diagnoses that have not been reviewed by a physician, it "may result in a misdiagnosis," leading to "delayed care and life-threatening complications, as is the case in a lawsuit filed against a licensed [anti-abortion center] in Worcester, in which a woman alleges that a registered nurse at the center . . . misdiagnosed her ectopic pregnancy" resulting in "invasive emergency surgery to stop her hemorrhaging and the removal of a fallopian tube," citing June 2023 reporting in the *Boston Globe*. Doc. 1-3 at 18.

### D.    The Department's Inspection of Your Options Medical Centers.

As a health care facility licensed by the Department, Your Options Medical clinics must renew their licenses with the Department every two years. Compl. ¶ 23. The Complaint alleges that because of REN's complaint, the Department reviewed Your Options Medical's advertising but did not request or require that the mobile unit make any changes to its advertising. *Id.* ¶ 46. The Department did require that the Your Options Medical clinics remove language in their Policies and Procedures Manual that impermissibly gave staff conducting ultrasounds discretion on when to perform an ultrasound. *Id.* ¶ 47. In a letter dated February 29, 2024, the Department's Division of Health Care Facility Licensure and Certification informed the administrator of the Your Options Medical clinic in Revere, Massachusetts, that the Department had verified that the clinic "had achieved and maintained compliance," and that "all deficiencies ha[d] been corrected." *Id.* ¶ 48; Doc. 1-4 at 1.

**E.**    **The Board of Registration in Medicine's December 2023 Investigation into the Medical Director of Your Options Medical Center.**

Separately, the Board of Registration in Medicine ("Board")[4] initiated an investigation into the allegations in REN's complaint that implicated the physician serving as medical director of the Your Options Medical clinics. Compl. ¶ 50.[5] Pursuant to its subpoena authority under Mass. Gen. Laws c. 112, § 5,[6] on December 21, 2023, the Board issued an investigative subpoena to Your Options Medical. Compl. ¶ 52. The documents sought by the subpoena were not limited to the mobile unit or the period of time that the mobile unit was in service. *Id.* ¶¶ 51.

After the Board filed an application for an order compelling compliance with its subpoena in Suffolk Superior Court on February 21, 2024,[7] Your Options Medical complied with the

---

[4] The Board of Registration in Medicine is a professional licensure board consisting of five physicians and two non-physicians appointed by the Governor. Mass. Gen. Laws ch. 13 §§ 9-11. The Board has "primary responsibility in the regulation of the practice of medicine in the Commonwealth in order to promote the public health, welfare, and safety." *Levy v. Bd. of Registration and Discipline in Med.*, 392 N.E.2d 1036, 1039 (Mass. 1979) (citation omitted). By statute, the Board "shall investigate all complaints relating to the proper practice of medicine by any" licensed physician, Mass. Gen. Laws ch. 112, § 5. *See also id.* (requiring the creation of a disciplinary unit within the Board, charged with "investigating complaints and prosecuting disciplinary actions against licensees").

[5] *See also* 243 Code Mass. Regs. § 2.07(4) (prohibiting physicians from delegating medical services to individuals unlicensed to perform those services); § 2.07(11) (prohibiting misleading advertisements by physicians).

[6] "Upon request of the board's complaint counsel for the production of evidence at any stage of an investigation, pursuant to this chapter and regulations of the board promulgated thereunder, witnesses may be summoned and document production may be compelled by subpoenas or subpoenas duces tecum issued at the direction of the chairman of the board or his designee." Mass. Gen. Laws ch. 112, § 5.

[7] *See Commonwealth of Mass. v. A Woman's Concern, Inc.*, Suffolk Superior Court No. 2484CV00502. In deciding a motion to dismiss, the Court may consider "official public records," such as state court dockets. *See Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).

subpoena. Compl. ¶ 51. The Board issued a second investigatory subpoena to Your Options

Medical on June 5, 2024. *Id.*[8]

### F. The Department's January 2024 Guidance to Licensed Clinics and Health Care Providers Regarding Licensure Obligations and Standard of Care.

On January 3, 2024, the Department issued a press release, titled "Maintaining Integrity,

Accessibility, and Transparency in Reproductive Care." Compl. ¶ 57. "In the wake of recent

complaints regarding several anti-abortion centers," the release stated, "DPH has initiated a review

of its statutory and regulatory obligations. The purpose of this review is to make sure DPH

professional licensees and facility licensees – including these centers – are adhering to their

designated scope of practice and operating transparently and free from deceptive practices."

Doc. 1-4, at 10.

As the Complaint alleges, the Department explained that anti-abortion centers "provide

information and counseling to individuals who are, or may be pregnant. Some provide testing for

sexually transmitted infections, pregnancy tests, and ultrasounds to determine how far along a

pregnancy may be." *Id.* "Many of these centers advertise themselves as full-service reproductive

health care clinics," the Department noted, "yet they do not provide abortion care or abortion

referrals, contraception, or other important reproductive health care services. Many centers are

affiliated with national advocacy or religious organizations that provide funding and support to

advance an anti-abortion agenda." *Id.*

---

[8] Your Options Medical filed a complaint and motion for preliminary injunction in Middlesex Superior Court to enjoin the Board from enforcing this second subpoena. *See A Woman's Concern, Inc. v. Commonwealth of Mass. Bd. of Registration in Med.*, Middlesex Superior Court No. 2481CV01789. The Superior Court ordered Your Options Medical to comply with the Board's subpoena, concluding that the documents the Board sought were relevant to their investigation into the medical director, were not overbroad or overly burdensome, and did not exceed the scope of the Board's authority. *See id.*, Dkt. No. 11.

For those clinics licensed by the Department, "DPH maintains a responsibility to oversee the safe provision of medical services and health care in the state," the statement added. *Id.* at 10-11. "DPH may be involved in investigating complaints regarding allegations about provision of inappropriate medical services or staff members performing services without the required credentials. This work may be done in collaboration with the Attorney General's Office's Reproductive Justice Unit." *Id.* at 11. The press release also stated that the Department "actively seeks feedback and complaints from individuals who have had concerning experiences with anti-abortion centers as well as from other stakeholders who have information about questionable practices." *Id.* The press release noted that the Department "is also focused on educating the public about the differences between facilities that provide comprehensive reproductive care and those that practice deceptive tactics to limit people's choices and prevent abortions. DPH will increase its efforts to educate the public through a multi-faceted awareness campaign in 2024." *Id.*

Along with this press release, Commissioner Goldstein issued a guidance memorandum to Massachusetts licensed physicians, physician assistants, nurses, pharmacists, pharmacies, hospitals, and clinics titled "Reminder to Licensees Regarding Licensure Obligations and Providing Standard of Care." Compl. ¶ 61; Doc. 1-4, at 13. The memorandum states that the Department was issuing the memorandum "to outline and remind licensees of their obligations under state law and as a condition of licensure" and details the statutory and regulatory requirements for licensees. Doc. 1-4, at 13-18. The memorandum reminds all licensed entities and individuals of the disciplinary consequences for failure to comply with state laws, regulations, and policies governing their license. Compl. ¶ 63; Doc. 1-4 at 14.[9]

---

[9] The memorandum also notes in the section for Advanced Practice Registered Nurses (APRNs) that APRNs who provide abortion services must comply with Advisory Ruling 21-02

(footnote continued)

###### G.    The Department's April 2024 Public Education Campaign.

On June 10, 2024, the Department launched its public education campaign pursuant to the legislative mandate. Created in collaboration with Defendant REN, the public education campaign appears on social media, billboards, the radio, and public transit. Compl. ¶¶ 66, 70, 72; Doc. 1-4, at 19-28. A press release announcing the campaign noted that the campaign would "highlight[] the dangers and potential harm of anti-abortion centers" which "often look like medical facilities and purport to offer the full spectrum of reproductive health care while, in reality, they often mislead people about their options if they are pregnant and dissuade them from accessing abortions." Compl. ¶ 67; Doc. 1-3, at 23. The campaign would "amplify how anti-abortion centers provide misinformation about abortion services to prevent people from making an informed choice about their care," and "is designed to help people understand their full range of options, directing them to . . . information about how to recognize anti-abortion centers and where to access unbiased, full-spectrum reproductive health care in Massachusetts." Doc. 1-3, at 24.

#### ARGUMENT

Your Options Medical now asks this Court to put an end to the state's public education and awareness campaign aimed at protecting the health and rights of people in the Commonwealth and to award it damages and fees.  The Court should instead dismiss this case. The Complaint does not plausibly state a First Amendment or Equal Protection Clause violation, and in any event, Governor Healey and Commissioner Goldstein are entitled to qualified immunity.

---

Certified Midwives and Certified Nurse Practitioners as Providers of Abortion for Pregnancies of Less than 24 Weeks. Doc. 1-4 at 17.

I.      **Motion to Dismiss Legal Standard.**

On a motion to dismiss under Rule 12(b)(6), the Court accepts "as true all well-pleaded facts set forth in the complaint" and "draw[s] all reasonable inferences therefrom in the pleader's favor." *O'Brien v. Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31, 35 (1st Cir. 2020) (citation omitted). The Court also may review "any documents attached to the complaint or incorporated by reference therein." *Id.* (citation omitted). The Court must "disregard all conclusory allegations that merely parrot the relevant legal standard, and then inquire whether the remaining factual allegations state a plausible, rather than merely a possible, assertion of defendants' liability." *Id.* (citation omitted).

II.     **The Complaint Fails to State a Claim for a Violation of the Free Speech Clause of the First Amendment.**

Contrary to the legal theories presented in the Complaint, the state Defendants have not violated Your Options Medical's right to freedom of speech by issuing official communications that warn the public against deceptive tactics that have been employed by anti-abortion centers, solicit complaints from people concerned about their experience with anti-abortion centers, and encourage people to seek abortion care from trusted providers. Compl. ¶¶ 57-64, 67-71. The Complaint fails to state a viable free speech claim for two reasons. First, government criticism of a private entity is permissible government speech that does not implicate the First Amendment. Second, the Complaint does not plausibly allege that the state Defendants have coerced third parties to suppress Your Options Medical's speech.

A.      **Government Criticism of Anti-Abortion Centers Does Not Implicate the Free Speech Clause.**

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, UT v. Summum*, 555 U.S. 460, 467 (2009). When government officials are "engaging in their own expressive conduct . . . the Free Speech Clause has no application." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024) (internal

quotations and citations omitted). The government has the right to "say what it wishes" and "select the views it wants to express" without First Amendment scrutiny. *Id.* (internal quotations and citations omitted).

Here, the state Defendants' efforts to educate the public that anti-abortion centers do not offer comprehensive reproductive healthcare and, in fact, seek to prevent people from accessing abortion care, falls squarely within the government speech doctrine. While Plaintiff complains about Defendants' criticism of some anti-abortion centers' deceptive advertising, "corporations and other institutions [have been] criticized by government officials for all sorts of conduct that might well be perfectly legal, including speech protected by the First Amendment." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 950 (1992). Indeed, other circuits have, for example, rejected First Amendment challenges to government speech that decried pornographic magazines, *see Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 950 (1992), "exhort[ed]" department stores not to distribute a satirical board game, *see Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33, 39 (2d Cir. 1983), *cert. denied,* 464 U.S. 892 (1983), and cautioned consumers against tobacco companies' products in an advertising campaign, *see R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 914 (9th Cir. 2005).

The advertising campaign at issue in *R.J. Reynolds Tobacco Co.* is particularly instructive. There, the Ninth Circuit held that the California Department of Health Services' sponsorship of advertisements portraying the tobacco industry as "deceptive and an enemy of the public health" did not violate the First Amendment. *Id.* The state-sponsored advertisements "portray[ed] tobacco executives discussing how to replace a customer base that is dying at the rate of 1,100 users a day," accused the tobacco industry of intentionally advertising to children with the tagline: "the tobacco industry: how low will they go to make a profit," and included images of mock warning labels that

claimed the industry "will say anything to sell cigarettes." *Id.* at 912. Despite the sensational nature of the government's advertisements, even the plaintiffs in that case conceded that there was no First Amendment issue with the content of the anti-tobacco campaign.[10] Accordingly, the public education campaign sponsored by the state Defendants here, which is significantly more measured, likewise does not implicate the First Amendment. While Your Options Medical objects to the Department's warnings about anti-abortion centers, it is free to—and has—countered the statements with its own speech.[11]

> **B.     The Complaint Fails to Plausibly Allege That the State Defendants Coerced a Third Party to Suppress Your Options Medical's Speech.**

Your Options Medical also does not plausibly allege that the state Defendants have coerced third parties to suppress Your Options Medical's speech. "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey [1] a threat of adverse government action [2] in order to punish or suppress the plaintiff's speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) (numbering added). This is an "objective inquiry of whether a reasonable person would perceive the official's communication as coercive." *Id.*

Here, the Department's public education campaign is addressed to people seeking comprehensive reproductive care. And this Complaint contains no allegation that people seeking

---

[10] *See R.J. Reynolds Tobacco Co.*, 423 F.3d at 913 ("As their brief to this court puts it, 'if the broadcasts were funded by general taxes rather than by a tax imposed exclusively on the tobacco industry, the anti-industry ads would raise no First Amendment issue.'"). The funding argument that was ultimately rejected in *R.J. Reynolds Tobacco Co.*, which had to do with the source of the funding, is not applicable here; as explained above, the funding here comes from general tax revenue.

[11] *See, e.g.*, Joe Bukuras, Besieged Massachusetts pro-life pregnancy centers rally at state capital, *Catholic News Agency* (June 27, 2024), https://tinyurl.com/ykb2kba5.

comprehensive reproductive care have been threatened with adverse government action for seeking care from Your Options Medical.

Nor does the Complaint plausibly allege that the Department has threatened the licensed healthcare providers who volunteer with Your Options Medical with adverse government action to suppress Your Options Medical's speech. The Complaint points to statements in which the Department and the Attorney General solicit feedback and complaints from people concerned about their experiences at anti-abortion centers. Compl. ¶¶ 126, 128. But the solicitation of complaints is commonplace in government. The Attorney General's website, for example, solicits complaints from the public about car dealerships, auto repair businesses, public works projects, mortgage lenders, employers, and e-cigarette and tobacco companies, among others.[12] It therefore cannot reasonably be interpreted as a threat of adverse government action against Your Options Medical. The Department's memorandum is addressed to all licensed physicians, physician assistants, nurses, pharmacists, pharmacies, hospitals, and clinics, and simply reminds them of their obligations, and the limitations on the scope of their practice, under their respective licenses. Compl. ¶¶ 61-63. Moreover, the content of the memorandum is neutral; it consists of statements of Massachusetts law that have general applicability.[13] Although the six-page memorandum contains a single sentence regarding potential referral of any Department-licensed entity or

---

[12] *See, e.g.*, Office of the Attorney General, *Your Car, Your Rights*, https://tinyurl.com/mr28ycvp; *Getting Your Car Repaired*, https://tinyurl.com/59zmjxtt; *Prevailing Wage Enforcement*, https://tinyurl.com/2c4mm8fn; *Mortgage Lending and Foreclosures*, https://tinyurl.com/4ck7yddr; *File a workplace complaint*, https://tinyurl.com/2ctftacf; *E-cigarette and tobacco consumer protection regulations*, https://tinyurl.com/7vsed4fw. *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions.").

[13] *See VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1165 (10th Cir. 2021) (statement of Colorado law "contains no plausible threat—let alone a threat of prosecution" and is not "analogous to the direct warnings and threats contained in the notices in *Bantam Books*.").

professional to the Attorney General for certain violations of Massachusetts law, this isolated reference does not amount to a threat against Your Options Medical's providers designed to suppress Your Options Medical's speech. *Compare Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (identifying specific books as obscene and warning that Attorney General would prosecute purveyors of obscenity); *Vullo*, 602 U.S. at 186-187 (advising entities to "take prompt action" to manage risks arising from business with NRA after DFS superintendent told entities under investigation that she would be "less interested" in pursuing their infractions if they cut ties with NRA).

Furthermore, much like the solicitation of complaints, there is nothing remarkable about the government issuing a memorandum regarding the legal obligations of certain entities or professionals, particularly after public reports of regulatory violations causing harm to the public. For instance, the Attorney General issued an advisory to developers, suppliers, and users of artificial intelligence regarding their legal obligations under the Massachusetts Consumer Protection Act; the Attorney General and the Executive Office of Education and Department of Elementary and Secondary Education  issued an advisory to public schools on their legal obligations to prevent and address hate and bias; and the Massachusetts Office on Disability  issued a memorandum to towns about their legal obligations under the Americans with Disabilities Act.[14] Without more, a memorandum setting forth regulated entities' legal obligations and reminding them of the potential legal consequences for noncompliance does not constitute a threat designed to suppress a particular entity's viewpoint.

---

[14] Office of the Attorney General, *AG Campbell Issues Advisory Providing Guidance On How State Consumer Protection And Other Laws Apply To Artificial Intelligence*, https://tinyurl.com/7hwcxwr6; *Guidance on Schools' Legal Obligations Regarding Hate and Bias Incidents*, https://tinyurl.com/mrym78ed; Massachusetts Office on Disability, *Memo: Reasonable accommodations at Town Meetings*, https://tinyurl.com/4e2jfx7j.

Cases like *Vullo* and *Bantam Books* stand in sharp contrast and are easily distinguishable. In *Vullo*, the Supreme Court concluded that the NRA had plausibly alleged a First Amendment claim based on third-party coercion where the superintendent of the New York Department of Financial Services ("DFS") informed insurance companies that DFS would be "less interested" in pursuing their regulatory violations if they ceased providing insurance to the NRA and issued guidance letters urging the insurance companies to take "prompt action" to manage risks that "may arise from their dealings with the NRA." 602 U.S. at 184. The Court held that although the DFS superintendent was "free to criticize the NRA and pursue the conceded violations of New York insurance law . . . [s]he could not wield her power . . . to threaten enforcement actions against DFS-regulated entities in order to punish or suppress the NRA's gun-promotion advocacy." *Id.* at 187. But, as explained above, the allegations here are nothing like those in *Vullo*.

Similarly, in *Bantam Books,* the Supreme Court held that a state commission on youth morality violated the First Amendment rights of book publishers by coercing distributors to stop distributing books published by the book publishers that the state commission deemed objectionable. 372 U.S. at 58. There, the Commission sent "notices" to specific book distributors which were followed up by police visits, that urged the distributors to cease distributing identified books; stated that the "Chiefs of Police" had been given book names; emphasized that it was the Commission's duty to recommend the prosecution of purveyors of obscenity to the Attorney General; represented the Attorney General would "act" for the Commission in the case of "non-compliance," and thanked the distributors for their "cooperation." *Id.* at 61-64. The Court concluded that the notices and subsequent police visits to book distributors amounted to coercion because "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around." *Id.* at 68.

14

Importantly, in both *Vullo* and *Bantam Books*, the government speech found to violate the First Amendment was addressed to entities that engaged in business with the plaintiffs. As a result, the government was able to use the threat of adverse government action to coerce these entities into terminating their business relationship with the plaintiffs, thereby suppressing their speech. But, again, no such coercive scenario is alleged here.

At bottom, government speech—no matter how critical—does not violate the First Amendment so long as individuals are "free to disagree" and "make [their] own independent judgment." *O'Handley v. Weber*, 62 F.4th 1145, 1158 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024). While Your Options Medical objects to the government's generalized statements about anti-abortion centers, its remedy is not through litigation but at the ballot box. *See Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022) ("The Constitution . . . relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks."); *Summum*, 555 U.S. at 468-69 ("If the citizenry objects, newly elected officials later could espouse some different or contrary position.") (internal quotation and citation omitted).

## III. The Complaint Fails to State a Claim for a Violation of the Free Exercise Clause of the First Amendment.

The Complaint likewise fails to state a claim for a violation of the Free Exercise Clause of the First Amendment, for two reasons. First, it has not alleged that the public education campaign—government speech directed at women in the Commonwealth warning them about many anti-abortion centers' misleading and dangerous practices, *see* Section II, above—burdens or restricts Your Options Medical's religiously motivated conduct. Second, Your Options Medical has not plausibly alleged any selective enforcement of the regulations governing licensed health care facilities.

A.    **The Public Education Campaign Does Not Burden Your Options Medical's Religiously Motivated Conduct.**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" and has been applied to the States through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). The Free Exercise Clause protects against laws that "'impose[ ] special disabilities on the basis of . . . religious status.'" *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 877 (1990)). "The Free Exercise Clause, importantly, is not a general protection of religion or religious belief. It has a more limited reach of protecting the *free exercise* of religion." *Parker v. Hurley*, 514 F.3d 87, 103 (1st Cir. 2008). The key threshold "question is whether the plaintiff's free exercise is interfered with at all." *Id.* at 99 (citation omitted).

But here, Your Options Medical makes "no colorable argument" that any action by the State Defendants "prohibits any religious act or conduct." *See Wirzburger v. Galvin*, 412 F.3d 271, 281 (1st Cir. 2005). There are no allegations, for example, that Your Options Medical has been precluded from performing practices required by their religion as in *Church of the Lukumi Babalu Aye,* where the City of Hialeah, Florida, enacted an ordinance outlawing animal sacrifice that was central to the Santería religion. 508 U.S. at 527-28, 524-25. Here, Your Options Medical's free exercise claim fails because Your Options Medical has not alleged any law, regulation, or policy that burdens its religiously motivated conduct, that requires or coerces Your Options Medical to violate its religious beliefs, or that punishes Your Options Medical because of its religious beliefs. *See Parker*, 514 F.3d at 99, 105-106 (rejecting free exercise claim where plaintiffs failed to allege constitutionally significant burden on rights because no allegations of direct interference in beliefs, punishment for beliefs, denial of benefits, or conditioning of benefits on violating religious

16

beliefs); *Wirzburger*, 412 F.3d at 282 (rejecting free exercise claim where plaintiffs failed to show any restriction on their religious practices). There are also no factual allegations in the Complaint that the public education campaign involves any expressions of hostility toward religion. *See Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 639 (2018) (concluding civil rights commission adjudicator's statements disparaging and expressing hostility to plaintiff's religion during plaintiff's formal public hearing were inconsistent with Free Exercise Clause). Nor would such animus be "itself sufficient to invalidate a government action, without the animus being tied to some resulting infringement on freedom of belief or on religious status, acts or conduct." *Wirzburger*, 412 F.3d at 282.

### B.    Your Options Medical Has Not Plausibly Alleged Selective Enforcement.

Second, Your Options Medical has not plausibly alleged any selective enforcement of the regulations governing licensed health care facilities.[15] There are no allegations in the complaint that the Department's licensing review of the Your Options Medical facilities, or the Board's investigation into Your Options Medical's medical director based on REN's complaint, "targeted" Your Options Medical because of its religious views. The conduct alleged in Defendant REN's complaint strictly concerned Your Options Medical's mobile unit's advertising to prospective patients, and the practice of medicine in the unit. Doc. 1-3 at 16-18. As health care clinics licensed by the Department pursuant to Mass. Gen. Laws ch. 111, § 51, Your Options Medical is subject to licensing visits and inspections to determine their compliance with the regulations governing their clinic, and clinics must correct any regulatory deficiencies. *See* 105 Code Mass. Regs §§ 140.110

---

[15] Your Options Medical does not challenge the regulations themselves, which, in any event, are neutral and generally applicable and thus subject to rational-basis review even when applied to licensed clinics like Your Options Medical that are operated by religious organizations. *See Church of the Lukumi Babalu Aye*, 508 U.S. at 531.

– 140.113. There are no allegations in the Complaint that the Department's Division of Healthcare Licensure's investigation into Your Options Medical was motivated by Your Options Medical's religious views rather than REN's complaint identifying potential violations of the Department's regulations. *See* Compl. ¶ 46. The Department's letter attached to the Complaint demonstrates that the Department identified regulatory violations unrelated to any religious belief and then, after Your Options Medical corrected those regulatory violations, found Your Options Medical to be in compliance with the Department's regulations. *Id.* ¶¶ 47-48. According to its Complaint, Your Options Medical continues to operate its licensed facilities and mobile unit today. Compl. ¶¶ 20-23.

There are also no allegations that the investigation by the Board—which is neither a defendant in this case nor controlled by the state Defendants, *see* note 4, above—into Your Options Medical's medical director was based on Your Options Medical's religious faith. By statute, the Board "*shall* investigate all complaints relating to the proper practice of medicine by any" licensed physician. Mass. Gen. Laws ch. 112, § 5 (emphasis added). Here, REN's letter cited reporting about the Your Options Medical mobile unit that, if true, would constitute a violation of the Board's regulations. *See* Mass. Gen. Laws ch. 112, § 5 (physician may not knowingly permit, aid, or abet an unlicensed person to perform activities requiring a license for fraud, deception, or personal gain); 243 Code Mass. Regs. § 2.07(4) (physician may not delegate medical services to individual not licensed to perform those services); *id.* § 2.07(11) (physician may not advertise for patients by means that are false, misleading, or deceptive). Particularly in the wake of reporting in the *Boston Globe* about significant injuries caused to a pregnant patient because of immediate ultrasound results provided by a nurse operating outside the scope of her practice at another licensed clinic, the Board's investigation into allegations of similar regulatory violations at the Your Options Medical clinics does not plausibly support any claim of animus toward religion.

18

**IV.    The Complaint Fails to State a Claim for a Violation of the Equal Protection Clause.**

Your Options Medical's claim under the Equal Protection Clause likewise fails because the Complaint does not plausibly allege that the Department has selectively enforced its regulations against Your Options Medical, much less that any of the Department's conduct as a licensor occurred because of Your Options Medical's religious viewpoint, as opposed to the healthcare it provides to patients. "To establish an equal protection claim, a plaintiff must show that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as his religion." *Perrier-Bilbo v. United States*, 954 F.3d 413, 432 (1st Cir. 2020) (citation omitted). Like Your Options Medical's free exercise claim, Your Options Medical's equal protection claim appears to be principally based upon a theory that the Department has selectively "enforced" its regulations against Your Options Medical. Compl. ¶¶ 167-68, 174, 176. But, as explained in detail in Section III, above, the Complaint does not plausibly allege selective enforcement. Nor does the Complaint plausibly allege that any similarly situated clinics have been treated differently by the Department or by the Board. *See Compl.* ¶¶ 170-171. Or, that the Department's licensing activities, or the Board's investigation, were based on Your Options Medical's religious viewpoint rather than allegations of misleading advertising or out-of-scope medical practice in violation of state regulations.

Finally, to the extent Your Options Medical's equal protection claim is based upon the public education campaign, rational-basis review applies. *See Wirzburger*, 412 F.3d at 282-83. The materials attached to the Complaint detailing the state's interest in protecting those seeking comprehensive reproductive health care from deceptive practices, and state concerns about the quality of care at licensed and non-licensed anti-abortion centers, easily supply a rational basis supporting the public education campaign. *See* Doc. 1-3, at 8-9, 16-31; Doc. 1-4, at 2-5, 10-11, 21-34.

V.    **Governor Healey and Commissioner Goldstein Enjoy Qualified Immunity Against Plaintiff's Individual-Capacity Claims.**

Plaintiff's claims against Governor Healey and Commissioner Goldstein in their individual capacities must be dismissed because they are entitled to qualified immunity. Qualified immunity shields state officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011) (internal quotation marks and citation omitted). Courts follow a two-step inquiry in assessing a claim of qualified immunity, considering: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 8 (1st Cir. 2013) (citation omitted). A plaintiff must satisfy "both prongs" of this test "to overcome a qualified immunity defense," *Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010), and courts need not address both prongs if plaintiff fails to satisfy one, *see Eves v. LePage*, 927 F.3d 575, 583-584 (1st Cir. 2019) (en banc). "Qualified immunity provides defendant public officials 'an immunity from suit rather than a mere defense to liability.'" *Penate v. Hanchett*, 944 F.3d 358, 365 (1st Cir. 2019) (citation omitted). As a result, qualified immunity should be resolved at the earliest possible stage in litigation. *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011). "When a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable." *Escalera-Salgado v. United States*, 911 F.3d 38, 41 (1st Cir. 2018).

Here, Governor Healey and Commissioner Goldstein are entitled to qualified immunity because Plaintiff has failed to plausibly allege that they violated a constitutional right under the

first prong of the qualified immunity defense, *see* Sections II – IV, above. Governor Healey and Commissioner Goldstein are also shielded by qualified immunity because the law did not "clearly establish" that their conduct was unconstitutional under the second prong of the qualified immunity analysis. "The 'clearly established' inquiry itself has two elements. . . . The first focuses on the clarity of the law at the time of the violation. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Penate*, 944 F.3d at 366 (citations omitted). The first element of this prong requires case law identifying the protected right with more than "a high level of generality." *Eves*, 927 F.3d at 583 (citations omitted). Otherwise, courts would subject officials to liability that was too "broad[]," thus "disrupt[ing] the balance . . . between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Ziglar v. Abbasi*, 582 U.S. 120, 151-152 (2017) (citation omitted).

The allegations in the Complaint against Governor Healey and Commissioner Goldstein and the actions that they themselves took are sparse. Your Options Medical alleges that at the time she was Attorney General, Governor Healey issued an advisory about anti-abortion centers, Compl. ¶¶ 34, 35, 105; Commissioner Goldstein issued a guidance memorandum to licensees regarding licensure obligations and providing the standard of care, Compl. ¶¶ 61-63; Doc. 1-4, at 13-18; and that Governor Healey and Commissioner Goldstein made public statements related to the public education campaign, Compl. ¶¶ 68, 71, 105. There is no clearly established law that such actions—informing and protecting women seeking comprehensive reproductive healthcare in Massachusetts—are a violation of any constitutional right.

Public education is particularly essential in times of confusion, such as where and how women can seek abortion care after *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Removing the Governor's and Commissioner's ability to advise on timely, and time-sensitive,

reproductive health issues, or to criticize public health harms in the Commonwealth, would impede the functioning of state government. Because it was not clearly established that statements related to a public education campaign and advisories regarding women's reproductive health would violate Your Option's Medical's First or Fourteenth Amendment rights, the individual defendants are entitled to qualified immunity, and thus the individual-capacity claims against them must be dismissed.

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Complaint for failure to state a claim.

Respectfully submitted,

MAURA HEALEY, Governor of Massachusetts, and ROBERT GOLDSTSTEIN, Commissioner of the Massachusetts Department of Public Health,

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Phoebe Fischer-Groban*
Phoebe Fischer-Groban, BBO No. 687068
Deborah J. Frisch, BBO No. 693847
Meredith G. Fierro, BBO No. 696295
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2589
Phoebe.Fischer-Groban@mass.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document, filed through the Court's ECF, system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) on December 13, 2024.

*/s/ Phoebe Fischer-Groban*
Phoebe Fischer-Groban
Assistant Attorney General
