# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A WOMAN'S CONCERN, INC. D/B/A YOUR OPTIONS MEDICAL CENTERS, <br><br> Plaintiff, <br><br> v. <br><br> MAURA HEALEY, GOVERNOR OF MASSACHUSETTS, sued in her individual and personal capacities; ROBERT GOLDSTEN, COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, sued in his individual and official capacities; REPRODUCTIVE EQUITY NOW FOUNDATION, INC.; REBECCA HART HOLDER, EXECUTIVE DIRECTOR OF THE REPRODUCTIVE EQUITY NOW FOUNDATION, INC., <br><br> Defendants. | Civil Action No. 1:24-12131-LTS <br><br> **LEAVE TO FILE GRANTED ON JANUARY 24, 2025** |

## BRIEF OF *AMICUS CURIAE*
## AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS

### INTRODUCTION AND INTERESTS OF AMICUS CURIAE

The American Civil Liberties Union of Massachusetts ("ACLUM") is a membership

organization dedicated to the principles of liberty and equality embodied in the constititions and

laws of the Commonwealth and the United States. This includes the right to reproductive

freedom and the right to free speech, which sometimes—though not always—raise competing

concerns. ACLUM and the American Civil Liberties Union Foundation of Massachusetts have a

long history of vigorously defending both of these rights through amicus and direct

representation before this court. *See, e.g.*, *Massachusetts v. Dep't of Health and Human Servs.*,

1:17-cv-11930, ECF No. 43 (Dec. 12, 2017) (amicus brief); *ACLUM v. Leavitt*, 1:09-cv-10038

(direct representation); *Molloy v. City of Holyoke*, 3:18-cv-30182 (direct representation); *Thayer v. City of Worcester*, 4:13-cv-40057 (direct representation). ACLUM is therefore adept at analyzing and balancing these important constitutional rights.

In this case, Plaintiff Your Options Medical ("YOM") suggests that these two rights are in conflict. To do so, YOM largely focuses its free speech claim on the Commonwealth's July 2022 public consumer advisory and June 2024 public education campaign regarding anti-abortion centers[1] (collectively, "the Public Education Campaign"). *See* Compl., ECF No. 1 (Aug. 19, 2024) ("Compl."), at ¶¶ 32-35, 66-80, 118. Given the weight of YOM's argument and the nature of ACLUM's unique perspective, ACLUM submits this short memorandum to emphasize that the Public Education Campaign does not violate YOM's First Amendment right to free speech.

In fact, the Supreme Court and other courts have expressly *encouraged* government actors to adopt public education campaigns when they have blocked alternative attempts to otherwise regulate anti-abortion centers under the First Amendment. *See, e.g.*, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 775 (2018) ("*NIFLA I*"); *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688, 704 (N.D. Ill. 2023) ("*NIFLA II*"). Defendants should not now be penalized for following these courts' explicit instructions.

## SUMMARY OF RELEVANT FACTS

YOM devotes nearly two dozen paragraphs in its complaint to the Public Education Campaign. *See* Compl. at ¶¶ 32-35, 66-80, 118.

---

[1] These centers are also sometimes referred to as "crisis pregnancy centers"; this memo uses these terms interchangeably.

The first element of this campaign was then-Attorney General Healey's July 2022 public consumer advisory regarding anti-abortion centers. *See id.* at ¶¶ 32-35; *see also* ECF No. 1-3 (Aug. 19, 2024) ("Ex. C"). According to the accompanying press release, this public advisory was designed to "inform[] people that crisis pregnancy centers do not offer abortion or comprehensive reproductive care" and to "urge[] patients to do their research before making an appointment to access abortion or reproductive healthcare, especially if they are seeking information about abortion care." Ex. C. The advisory, which did not name any specific anti-abortion centers, listed general information that people "should know" about such centers, including that: "most" are not licensed medical facilities; "some . . . offer ultrasounds performed by unlicensed personnel, which may lead to inaccurate or misleading results about a pregnancy"; "many . . . are located near clinics that provide abortions and use similar sounding names"; and they "often provide inaccurate or misleading information about abortion," "mislead people about how far they are into their pregnancy," and "try to delay scheduling appointment to push people beyond the point at which they can obtain an abortion." Ex C. The advisory also offered steps people could take to further inform themselves when they are searching for reproductive health services, including reading online reviews, asking whether a center is licensed, and being alert to specific warning signs. *See* Ex C.

In June 2024, now-Governor Healey launched a public education campaign "highlighting the dangers and potential harm of anti-abortion centers." Press Release, Healey-Driscoll Administration Launches First-in-the-Nation Public Education Campaign on the Dangers of Anti-Abortion Centers, Executive Office of Health and Human Services (June 10, 2024), https://www.mass.gov/news/healey-driscoll-administration-launches-first-in-the-nation-public-education-campaign-on-the-dangers-of-anti-abortion-centers, ("June 2024 Press Release"), cited

in Compl. at ¶ 67-70. The campaign was "designed to help people understand their full range of options, directing them to mass.gov/GetTrustedCare with information about how to recognize anti-abortion centers and where to access unbiased, full-spectrum reproductive health care in Massachusetts." *Id.* Much like the July 2022 advisory, the campaign itself did not describe the operations of any specific anti-abortion center, and instead educated people about certain general characteristics that "some" or "many" anti-abortion centers may have. *See* ECF No. 1-4 (Aug. 19, 2024) (Ex. O). According to the press release, the campaign was "an important way to provide accurate information so residents can make informed decisions about reproductive care that are right for them." June 2024 Press Release.

## ARGUMENT

Throughout its Complaint, YOM bolds certain phrases within quotes that it pulls from the July 2022 public consumer advisory and June 2024 public education campaign described above.[2] The emphasis appears to signal YOM's belief that these phrases render the Public Education Campaign unconstitutional. They do not. Access to reproductive healthcare generally, and the operation of anti-abortion centers specifically, has triggered myriad government actions and corresponding litigation challenging such actions. These cases have delineated some clear lines about what a government can and cannot do within this space. Placed along this spectrum, the Public Education Campaign does not violate the First Amendment.

---

[2] *See, e.g.,* Compl. at ¶ 35 (bolding "despite what they may advertise"); *id.* at ¶ 67 (bolding "the dangers and potential harm of anti-abortion centers" and "they often mislead people about their options if they are pregnant and dissuade them from accessing abortions"); *id.* at ¶ 68 (bolding "the deceptive and dangerous tactics that anti-abortion centers often use to stop people from accessing comprehensive reproductive services"); *id.* at ¶ 71 (bolding "a public health threat"); *id.* at ¶ 79 (bolding "these centers are not a safe or trusted place to go for reproductive health care").

For example, in 2018, California passed the Reproductive Freedom, Accountability, Comprehensive Care and Transparency Act (FACT Act), which required licensed clinics to disseminate a government-drafted notice on-site that stated "California has public programs that provide immediate free or low-cost access to comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care and abortion for eligible women" and provided a phone number to call for information. *NIFLA I*, 585 U.S. at 763. Several plaintiffs, including a licensed anti-abortion center, challenged the FACT Act under the First Amendment. *See id.* at 765. The Court held that the notice requirement was unconstitutional compelled speech, explaining that by "requiring petitioners to inform women how they can obtain state-subsidized abortions—at the same time petitioners try to dissuade women from choosing that option—the licensed notice plainly alters the content of petitioner's speech," *id.* at 765, and that California failed to justify this burden under even intermediate scrutiny, *id.* at 773.[3]

Critically, the Court's reasoning turned not on the provision of the information itself, but on the fact that the law forced the anti-abortion clinics to provide this "unwanted speech." *Id.* at 775. The Court made clear that the government could remove this constitutional infirmity if California instead educated its own residents about the existence of free abortion care, favorably suggesting that California "could inform the women itself with a public information campaign,"

---

[3] The Court determined that a lower standard was not appropriate because the notice was neither a purely factual, uncontroversial dislosure of information under which services would be available, nor a regulation of professional conduct that incidentally burdened speech. *See id.* at 768-71. The Court also refused to treat professional speech as a unique category on the record of the case. *See id.* at 773. It explained that "neither California nor the Ninth Circuit has identified a persuasive reason for treating professional speech as a unique category that is exempt from ordinary First Amendment principles," but did "not foreclose the possibility that some such reason exists"; the Court simply did not reach the question based on its determination that "the licensed notice cannot survive even intermediate scrutiny." *Id.* at 773.

and "could even post the information on public property near crisis pregnancy centers." *Id.* at 775.

The Northern District of Illinois similarly emphasized the constitutionality of public education campaigns when it rejected Illinois' alternative attempt to regulate anti-abortion centers. *See NIFLA II*, 685 F. Supp. 3d at 688. In 2023, SB 1909 amended the Illinois Consumer Fraud Act to explicitly prevent anti-abortion centers from making allegedly untruthful statements or omitting any material facts while simultaneously exempting abortion providers from these same restrictions. *See id.* at 696-97. As described by the Court, "SB 1909 immunizes abortion providers from asserting something as untruthful as [] 'abortion cures male pattern baldness.' But, in contrast, if [anti-abortion centers'] brochures highlighted only the negative side effects of abortion, they may be subject to liability for omitting 'material facts.'" *Id.* at 704.

The Court held that the State's interest in preventing what it deemed to be deception on the part of the anti-abortion clinics could not justify this facially content-based disparity. *See id.* 704-05. In its place, however, it suggested "one well known" and lawful "way to combat this type of alleged deception is through a public awareness campaign." *Id.* at 704. Much like *NIFLA I*, there was no constitutional hurdle in providing the public with the information itself— i.e., the State's position that anti-abortion clinics were engaged in deceptive behavior—it was simply that "[m]ore speech is the solution; not restricting unpopular speech." *Id.* at 705.[4]

---

[4] Courts have similarly emphasized the lawfulness of public education campaigns when rejecting alternative government attempts to regulate abortion providers as well. *See All-Options, Inc. v. Att'y Gen. of Indiana*, 546 F. Supp. 754 (S.D. Ind. 2021). In *All-Options*, abortion providers challenged an Indiana law which would have required them to recite specific state-scripted language regarding abortion pill reversal, specifically, that "some evidence suggests that the effcts of Mifepristone may be avoided, ceased, or reversed if the second pill, Misoprostol, has not been taken." *See id.* at 757. Holding that this disclosure was unconstitutional compelled speech, the Court emphasized "[t]his is not to say that the State has no way to provide information about abortion pill reversal to pregnant women. The State could give information

At bottom, *NIFLA I* and *NIFLA II* make clear that while outside of a handful of specifically defined exceptions, the government cannot force anti-abortion clinics to say specific things, so too the anti-abortion clinics cannot force the government to adopt their preferred messaging. *Cf. Walker v. Texas Dev., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 219 (2015) ("[J]ust as Texas cannot require [the Sons of Confederate Veterans] to convey the State's ideological message, [the Sons of Confederate Veterans] cannot force Texas to include a Confederate battle flag on its specialty license plates.") (cleaned up). Thus, the government can use its own speech to convey the same information to the public that it could not force an anti-abortion clinic to say. This makes sense. "When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others, and thus does not need to maintain viewpoint-neutrality when its officers and employees speak about that venture." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024) (cleaned up).

Placed within this context, the Public Education Campaign does not violate YOM's right to free speech under the First Amendment. The Public Education Campaign does not force YOM to post any government-scripted notice, neither does it establish new legislation targeted only against anti-abortion clinics and not against abortion providers. Instead, it does exactly what *NIFLA I* and *NIFLA II* suggested as an acceptable alternative: it uses the power of the government's own speech to "say what it wishes and select the views that it wants to express" to the public. *Vullo*, 602 U.S. at 187 (cleaned up). In response, YOM can publicly express its disagreement with the messages in the Public Education Campaign. It can attempt to mobilize its supporters to elect a new administration next year. *Cf. Walker*, 576 U.S. at 207-08 ("[I]t is the

---

about abortion pill reversal on the Indiana Department of Health's website" and "inform women about the 24/7 hotline" for information about abortion pill reversal. *Id.* at 769-70.

democratic electoral process that first and foremost provides a check on government speech."). But it cannot successfully enjoin the Public Education Campaign as a violation of the First Amendment.

*Vullo* does not suggest otherwise. There, the Court reiterated its holding in *Bantum Books* that the government cannot threaten enforcement actions against a third-party for the purpose of suppressing the speech of another actor. *See e.g., Vullo*, 602 U.S. at 180, 187. Here, the Public Education Campaign threatened no enforcement action against the public if they failed to act on the Commonwealth's messages about the potential harms of anti-abortion centers, nor could it. Instead, the Public Education Campaign provided information to the public, who were then free to adopt it or ignore it. This is entirely consistent with *Vullo*, where the Court reiterated that the government "was free to criticize the NRA and pursue the conceded violations of New York insurance law." 602 U.S. at 187.

## CONCLUSION

For the reasons articulated above, the Public Education Campaign does not violate YOM's First Amendment right to free speech.

[*signature block on next page*]

Date: January 24, 2025                    Respectfully submitted,

                                          */s/ Jessie J. Rossman*
                                          Jessie J. Rossman (No. 670685)
                                          Rachel E. Davidson (No. 707084)
                                          Isabel Burlingame (No. 710027)
                                          AMERICAN CIVIL LIBERTIES UNION
                                            FOUNDATION OF MASSACHUSETTS, INC.
                                          One Center Plaza, Suite 850
                                          Boston, MA 02108
                                          617-482-3170
                                          jrossman@aclum.org

                                          *Counsel for amicus curiae*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 24, 2025 a true copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

January 24, 2025                          */s/Jessie J. Rossman*
                                               Jessie J. Rossman