UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A WOMAN'S CONCERN, INC. D/B/A YOUR OPTIONS MEDICAL CENTERS,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>MAURA HEALEY, GOVERNOR OF MASSACHUSETTS, sued in her individual and official capacities; and ROBERT GOLDSTEIN, COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, sued in his individual and official capacities; and REPRODUCTIVE EQUITY NOW FOUNDATION,<br><br>　　　　　　　　Defendants. | CIVIL ACTION<br>NO. 1:24-cv-12131<br><br><br>**Leave to file granted on July 25, 2025** |

**MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

Phoebe Fischer-Groban, BBO No. 687068
Deborah J. Frisch, BBO No. 693847
Meredith G. Fierro, BBO No. 696295
Assistant Attorneys General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2589
phoebe.fischer-groban@mass.gov

Dated: July 25, 2025

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ........................................................................................... 1

        A.    Your Options Medical Centers .................................................. 1

        B.    The June 2023 Fiscal Year 2023 Supplemental Budget Providing for a Public Awareness Campaign About Anti-Abortion Centers............. 2

        C.    REN's October 2023 Letter About Potential Deceptive Advertising and Out-of-Scope Practice at the Your Options Medical Mobile Unit ......................................................................................... 3

        D.    The Department's Inspection of Your Options Medical Centers .............. 4

        E.    The Board of Registration in Medicine's December 2023 Investigation into the Medical Director of Your Options Medical Center ...................................................................................... 4

        F.    REN's December 2023 Letter About Potential Deceptive Advertising and Out-of-Scope Practice at Anti-Abortion Center Clearway Clinic .................................................................... 6

        G.    The Department's January 2024 Guidance to Licensed Clinics and Health Care Providers Regarding Licensure Obligations and Standard of Care .............................................................. 6

        H.    The Department's April 2024 Public Education Campaign ...................... 8

ARGUMENT ................................................................................................................. 9

    I.    The Amended Complaint Fails to State a Claim for a Violation of the Free Speech Clause of the First Amendment.................................................. 9

        A.    The Public Education Campaign is Government Speech. ......................... 9

        B.    The Amended Complaint Does Not Plausibly Allege that the State Defendants Have Threatened or Coerced Your Options Medical or its Providers. ........................................................................ 12

        C.    Your Options Medical Has Not Stated a Claim for Retaliation............... 19

    II.    The Complaint Fails to State a Claim for a Violation of the Free Exercise Clause of the First Amendment. .......................................................... 20

    III.    The Complaint Fails to State a Claim for a Violation of the Equal Protection Clause. ................................................................................. 22

i

IV.    Governor Healey and Commissioner Goldstein Enjoy Qualified Immunity Against Plaintiff's Individual-Capacity Claims....................................................23

CONCLUSION.........................................................................................................25

## **Cases**

*A Woman's Concern, Inc. v. Commonwealth of Mass. Bd. of Registration in Med.*, Middlesex Superior Court No. 2481CV01789 ..........................................5n

*Am. Ass'n of Univ. Professors v. Rubio*, No. 25-10685-WGY, 2025 WL 1235084 (D. Mass. Apr. 29, 2025) .......................................14

*Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco*, 277 F.3d 1114 (9th Cir. 2002) ............21

*Aversa v. United States*, 99 F.3d 1200 (1st Cir. 1996)....................................................11

*Backpage.com LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)..........................................14

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).....................................13, 14, 16, 17, 18, 25

*Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33 (1st Cir. 2024)..............................19

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) .......................................................20

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).......................20, 21

*Clorox Co. P. R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000)...............2n

*Commonwealth of Mass. v. A Woman's Concern, Inc.*, Suffolk Superior Court No. 2484CV00502 ...............................................5n

*Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998)........................................................10

*Diaz-Bigio v. Santini*, 652 F.3d 45 (1st Cir. 2011) .......................................................23

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ....................................25

*Escalera-Salgado v. United States*, 911 F.3d 38 (1st Cir. 2018) .................................24

*Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019) ........................................................23, 24

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) ..........................................5n

*Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041 (9th Cir. 1994)..........................11

*Goldstein v. Galvin*, 719 F.3d 16 (1st Cir. 2013)........................................................19

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011) .................................................................. 23

*Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) ................................... 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................................. 23

*Hartman v. Moore*, 547 U.S. 250 (2006) ..................................................................................... 19

*In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003) ........................................... 16n

*Kennedy v. Warren*, 66 F.4th 1199 (9th Cir. 2023) ..................................................................... 15

*Levy v. Bd. of Registration and Discipline in Med.*, 392 N.E.2d 1036 (Mass. 1979) .................. 4n

*Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617 (2018) ....................... 21

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) .................................................... 10

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) ......................................................... *passim*

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ............................................................. 12, 16

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008) ...................................................................... 20, 21

*Paul v. Davis*, 424 U.S. 693 (1976) ............................................................................................ 11

*Penate v. Hanchett*, 944 F.3d 358 (1st Cir. 2019) ................................................................. 23, 24

*Pendleton v. City of Haverhill*, 156 F.3d 57 (1st Cir. 1998) ....................................................... 11

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) ................................................. 10

*Perrier-Bilbo v. United States*, 954 F.3d 413 (1st Cir. 2020) ..................................................... 22

*Pleasant Grove City, UT v. Summum*, 555 U.S. 460 (2009) ............................................... 9, 10, 12

*R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906 (9th Cir. 2005) ......................................... 11

*Raiche v. Pietroski*, 623 F.3d 30 (1st Cir. 2010) ........................................................................ 23

*Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1 (1st Cir. 2013) ........................................ 23

*Shurtleff v. City of Boston*, 596 U.S. 243 (2022) ........................................................................ 12

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) .................................................. 19

*VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151 (10th Cir. 2021) ............................ 16

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ........................................................................ 24

**<u>Statutes</u>**
2023 Mass. Acts. ch. 2, § 2 .......................................................................................... 3n

Mass. Gen. Laws ch. 13 §§ 9-11 ................................................................................. 4n

Mass. Gen. Laws c. 111, § 51 ...................................................................................... 17

Mass. Gen. Laws c. 112, § 5 .............................................................................. 5, 17, 18

**<u>Other Authorities</u>**
*E-cigarette and tobacco consumer protection regulations*, https://tinyurl.com/7vsed4fw ........ 16n

*File a workplace complaint*, https://tinyurl.com/2ctftacf ........................................... 16n

*Getting Your Car Repaired*, https://tinyurl.com/59zmjxtt ......................................... 16n

*Guidance on Schools' Legal Obligations Regarding Hate and Bias Incidents*,
   https://tinyurl.com/mrym78ed ............................................................................ 15n

Joe Bukuras, *Besieged Massachusetts pro-life pregnancy centers rally at state capital*,
   Catholic News Agency (June 27, 2024), https://tinyurl.com/ykb2kba5 .............................. 12n

*Memo: Reasonable accommodations at Town Meetings*, https://tinyurl.com/4e2jfx7j .............. 15n

*Mortgage Lending and Foreclosures*, https://tinyurl.com/4ck7yddr ......................................... 16n

Office of the Attorney General, *Attorney General Advisory on the Application of the
   Commonwealth's Consumer Protection, Civil Rights, and Data Privacy Laws to
   Artificial Intelligence*, https://www.mass.gov/doc/ago-ai-advisory-41624/download ........... 15n

Office of the Attorney General, *Your Car, Your Rights*, https://tinyurl.com/mr28ycvp ........... 16n

*Prevailing Wage Enforcement*, https://tinyurl.com/2c4mm8fn ................................................. 16n

**<u>Rules</u>**
Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

**<u>Regulations</u>**
105 Code Mass. Regs §§ 140.110 – 140.113 .............................................................. 17

243 Code Mass. Regs. § 2.07(4) ........................................................................ 5n, 18

243 Code Mass. Regs. § 2.07(11) ...................................................................... 5n, 18

Plaintiff A Woman's Concern, which operates several licensed health care facilities in Massachusetts called Your Options Medical,[1] seeks to enjoin Governor Maura Healey and the Commissioner of the Department of Public Health, Dr. Robert Goldstein (collectively, the "State Defendants"), from accurately warning and educating the public that anti-abortion centers do not provide comprehensive reproductive health care, and from protecting pregnant people in the Commonwealth by ensuring that health care facilities and providers comply with Massachusetts law. The Amended Complaint fails to state a claim upon which relief can be granted because the Department of Public Health's public education campaign is government speech to which the First Amendment does not apply, and the State Defendants have neither burdened Your Options Medical's free exercise of its religious beliefs nor violated the Equal Protection Clause. Furthermore, qualified immunity bars Your Options Medical's claims against Governor Healey and Commissioner Goldstein personally. For these reasons, the Court should dismiss the Amended Complaint. *See* Fed. R. Civ. P. 12(b)(6).

## **FACTUAL BACKGROUND**

### A.    **Your Options Medical Centers**

Your Options Medical, a self-described "religious-based nonprofit organization," Am. Compl. ¶ 5, operates multiple health care facilities across Massachusetts, as well as a mobile clinic. *Id.* ¶¶ 20-22. Your Options Medical locations are health care facilities licensed by the Department of Public Health (the "Department"). *Id.* ¶ 20. Your Options Medical alleges that it is "a Christian organization" that wishes to "aid[] women and couples facing unexpected pregnancies." *Id.* ¶ 16. Your Options Medical clinics provides lab-quality pregnancy testing and limited ultrasounds. *Id.*

---

[1] For simplicity, the State Defendants will refer to A Woman's Concern and Your Options Medical collectively as "Your Options Medical."

1

¶¶ 19, 23. They provide information about "medication abortion reversal," but do not offer or provide this treatment. *Id.* ¶¶ 21, 179, 182.

Your Options Medical clinics do not perform abortions or refer for abortions, and the Amended Complaint's allegations suggest that they discourage it. *Id.* ¶¶ 16-17 (stating that Plaintiff attempts to "meet[] . . . needs that may otherwise cause [persons facing unexpected pregnancies] to consider abortion"). However, although the Amended Complaint alleges that Your Options Medical clinics do not advertise that they perform abortions, *id.* ¶ 17, a printed screenshot of their website attached to the Amended Complaint contradicts this allegation. Doc. 64-2 at 1-6.[2] It states that Your Options Medical Centers offer "holistic services and support during and after an unexpected pregnancy or abortion," and the largest text on the page states, "The Pregnancy and Abortion Answers you Need" and "Considering Abortion?" *Id.* at 2, 4. The website offers patients the option to click on "I Want to Talk About My Abortion." *Id.* at 3. The disclaimer, "our center does not perform nor refer for abortion services" is buried in small font at the very bottom of the website. *Id.* at 6. A visitor to this website would reasonably be confused as to whether Your Options Medical Center provides abortion care.

### B.    The June 2023 Fiscal Year 2023 Supplemental Budget Providing for a Public Awareness Campaign About Anti-Abortion Centers

On March 22, 2023, the Massachusetts Legislature enacted its FY2023 supplemental budget, signed by Governor Healey on March 29, 2023, which provided that "not less than $1,000,000 shall be expended for a public awareness campaign to educate providers and the public about crisis pregnancy centers and pregnancy resource centers and the centers' lack of medical

---

[2] "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Clorox Co. P. R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted).

services; provided further, that the campaign shall include information on the availability of providers across the commonwealth that provide legitimate medical and family planning services." Am. Compl. ¶ 90.[3]

### C.    REN's October 2023 Letter About Potential Deceptive Advertising and Out-of-Scope Practice at the Your Options Medical Mobile Unit

On October 17, 2023, Reproductive Equity Now ("REN") submitted a letter to the Executive Office of Health and Human Services ("EOHHS") and the Department, which is within EOHHS, expressing concern about potential deceptive practices and out-of-scope practice by nurses at Your Options Medical's mobile unit, which Your Options Medical planned to operate on Cape Cod in September 2023. Am. Compl. ¶¶ 44-45; Doc. 64-2 at 16-18. According to the letter, which was based on reporting in the *Provincetown Independent*, Your Options Medical's mobile unit advertised ultrasounds with "immediate results," but Your Options Medical's Executive Director had told a reporter that "when we say immediate results, we usually mean preliminary findings," explaining that there would not be a physician at the mobile unit, and that ultrasounds would be reviewed by a physician within 24 to 48 hours. Doc. 64-2 at 16-17.[4]

In its letter, REN notified EOHHS that this discrepancy between the mobile unit's advertising and the Executive Director's statements suggested either that the mobile unit was engaging in misleading advertising by promising "immediate results"; or that the nurses who

---

[3] *See also* An Act making appropriations for the Fiscal Year 2023 to provide for supplementing certain existing appropriations and for certain other activities and projects, 2023 Mass. Acts. ch. 2, § 2, at 4513-1006.

[4] The Complaint alleges that "YOM performs pregnancy tests and ultrasounds with immediate results, but the *final* results are confirmed by a physician, then provided to the patients no more than twenty-four to forty-eight hours later." Am. Compl. ¶ 47. Thus, it appears that the mobile unit indeed either misleads patients into believing they will receive immediate ultrasound results; or that the nurses conducting the ultrasounds do diagnose ultrasounds on site before the ultrasound images are reviewed by a physician.

would conduct the ultrasounds at the mobile unit would provide ultrasound diagnoses, which is outside nurses' designated scope of practice. REN reported to EOHHS that if nurses provide ultrasound results or diagnoses that have not been reviewed by a physician, it "may result in a misdiagnosis," leading to "delayed care and life-threatening complications." Doc. 64-2 at 18.

### D.    The Department's Inspection of Your Options Medical Centers

As a health care facility licensed by the Department, Your Options Medical clinics must renew their licenses with the Department every two years. Am. Compl. ¶ 24. The Complaint alleges that because of REN's October 2023 complaint, the Department reviewed Your Options Medical's advertising but did not request or require that the mobile unit make any changes to the language on the mobile unit. *Id.* ¶ 48. The Department did require that the Your Options Medical clinics remove language in their Policies and Procedures Manual that impermissibly gave staff conducting ultrasounds discretion on when to perform an ultrasound. *Id.* ¶ 49. In a letter dated February 29, 2024, the Department's Division of Health Care Facility Licensure and Certification informed the administrator of the Your Options Medical clinic in Revere, Massachusetts, that the Department had verified that the clinic "had achieved and maintained compliance," and that "all deficiencies ha[d] been corrected." *Id.* ¶ 50; Doc. 64-3 at 1.

### E.    The Board of Registration in Medicine's December 2023 Investigation into the Medical Director of Your Options Medical Center

Separately, the Board of Registration in Medicine ("Board")[5] initiated an investigation into the allegations in REN's complaint that implicated the operation of the clinics by the physician

---

[5] The Board of Registration in Medicine is a professional licensure board consisting of five physicians and two non-physicians appointed by the Governor. Mass. Gen. Laws ch. 13 §§ 9-11. The Board has "primary responsibility in the regulation of the practice of medicine in the Commonwealth in order to promote the public health, welfare, and safety." *Levy v. Bd. of Registration and Discipline in Med.*, 392 N.E.2d 1036, 1039 (Mass. 1979) (internal quotation marks omitted). By statute, the Board "shall investigate all complaints relating to the proper
(footnote continued)

serving as the clinics' medical director. Compl. ¶ 52.[6] Pursuant to its subpoena authority under Mass. Gen. Laws c. 112, § 5,[7] on December 21, 2023, as part of its investigation into the physician, the Board issued an investigative subpoena to Your Options Medical. Am. Compl. ¶ 53. The documents sought by the subpoena were not limited to the mobile unit or the period of time that the mobile unit was in service. *Id.* ¶¶ 54, 56.

After the Board filed an application for an order compelling compliance with its subpoena in Suffolk Superior Court on February 21, 2024,[8] Your Options Medical complied with the subpoena. Compl. ¶ 54. The Board issued a second investigatory subpoena to Your Options Medical on June 5, 2024. *Id.*[9]

---

practice of medicine by any" licensed physician, Mass. Gen. Laws ch. 112, § 5. *See also id.* (requiring the creation of a disciplinary unit within the Board, charged with "investigating complaints and prosecuting disciplinary actions against licensees").

[6] *See also* 243 Code Mass. Regs. § 2.07(4) (prohibiting physicians from delegating medical services to individuals unlicensed to perform those services); § 2.07(11) (prohibiting misleading advertisements by physicians).

[7] "Upon request of the board's complaint counsel for the production of evidence at any stage of an investigation, pursuant to this chapter and regulations of the board promulgated thereunder, witnesses may be summoned and document production may be compelled by subpoenas or subpoenas duces tecum issued at the direction of the chairman of the board or his designee." Mass. Gen. Laws ch. 112, § 5.

[8] *See Commonwealth of Mass. v. A Woman's Concern, Inc.*, Suffolk Superior Court No. 2484CV00502. In deciding a motion to dismiss, the Court may consider "official public records," such as state court dockets. *See Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).

[9] Your Options Medical filed a complaint and motion for preliminary injunction in Middlesex Superior Court to enjoin the Board from enforcing this second subpoena. *See A Woman's Concern, Inc. v. Commonwealth of Mass. Bd. of Registration in Med.*, Middlesex Superior Court No. 2481CV01789. The Superior Court ordered Your Options Medical to comply with the Board's subpoena, concluding that the documents the Board sought were relevant to their investigation into the medical director, were not overbroad or overly burdensome, and did not exceed the scope of the Board's authority. *See id.*, Dkt. No. 11.

**F.      REN's December 2023 Letter About Potential Deceptive Advertising and Out-of-Scope Practice at Anti-Abortion Center Clearway Clinic**

On December 4, 2023, REN submitted a second letter to EOHHS and the Department, again expressing concern about potential deceptive practices, out-of-scope practice by nurses, and improper delegation of medical services at the Clearway Clinic, an anti-abortion center in Worcester, that resulted in life- and fertility-threatening complications for a pregnant woman who sought care at the clinic. Am. Compl. ¶ 172; Doc. 64-8 at 13. According to REN's letter, which detailed allegations against Clearway in the woman's recently-filed lawsuit, in October 2022, a nurse at the center performed an ultrasound on the woman and diagnosed her pregnancy as viable, and in utero, providing her with paperwork indicating that she had been treated by a physician. Doc. 64-8 at 14. A month later, the woman experienced "sharp and shooting pain and was rushed to the hospital," where she was quickly diagnosed with an ectopic pregnancy, a life-threatening condition where a non-viable fetus grows outside the uterus. The woman underwent emergency surgery, including removal of a fallopian tube. *Id.* As REN explained, these allegations suggested that Clearway deceptively advertises that it provides pregnancy diagnostic services by board certified doctors, and that it permits ultrasound diagnosis by providers who are not licensed to diagnose ultrasounds. *Id.* at 15.

**G.      The Department's January 2024 Guidance to Licensed Clinics and Health Care Providers Regarding Licensure Obligations and Standard of Care**

On January 3, 2024, the Department issued a press release, titled "Maintaining Integrity, Accessibility, and Transparency in Reproductive Care." Am. Compl. ¶ 59. "In the wake of recent complaints regarding several anti-abortion centers," the release stated, "DPH has initiated a review of its statutory and regulatory obligations. The purpose of this review is to make sure DPH professional licensees and facility licensees – including these centers – are adhering to their designated scope of practice and operating transparently and free from deceptive practices."

Doc. 64-3 at 10. The Department explained that "[m]any of these centers advertise themselves as full-service reproductive health care clinics, yet they do not provide abortion care or abortion referrals, contraception, or other important reproductive health care services. Many centers are affiliated with national advocacy or religious organizations that provide funding and support to advance an anti-abortion agenda." *Id.*

For those clinics licensed by the Department, "DPH maintains a responsibility to oversee the safe provision of medical services and health care in the state," the statement added. *Id.* at 10-11. "DPH may be involved in investigating complaints regarding allegations about provision of inappropriate medical services or staff members performing services without the required credentials. This work may be done in collaboration with the Attorney General's Office's Reproductive Justice Unit." *Id.* at 11. The press release also stated that the Department "actively seeks feedback and complaints from individuals who have had concerning experiences with anti-abortion centers as well as from other stakeholders who have information about questionable practices." *Id.* The press release noted that the Department "is also focused on educating the public about the differences between facilities that provide comprehensive reproductive care and those that practice deceptive tactics to limit people's choices and prevent abortions. DPH will increase its efforts to educate the public through a multi-faceted awareness campaign in 2024." *Id.*

Along with this press release, Commissioner Goldstein issued a guidance memorandum to Massachusetts licensed physicians, physician assistants, nurses, pharmacists, pharmacies, hospitals, and clinics titled "Reminder to Licensees Regarding Licensure Obligations and Providing Standard of Care." Am. Compl. ¶ 63; Doc. 64-3, at 13. The memorandum states that the Department was issuing the guidance "to outline and remind licensees of their obligations under state law and as a condition of licensure" and details the statutory and regulatory requirements for licensees. Doc. 64-3, at 13-18. The memorandum reminds all licensed entities and individuals of

the disciplinary consequences for failure to comply with state laws, regulations, and policies governing their license. Compl. ¶ 63; Doc. 64-3 at 14.

The guidance memorandum also reminds physicians and advanced practice registered nurses (APRN) who "practice in violation of good and accepted health care practices" that they "may be disciplined for conduct which places into question their competence to practice." Doc. 64-3 at 15. "For example," the guidance explains, "there is strong evidence that medication abortion reversal is unproven, unethical, and unsafe to provide to patients; such that a physician or APRN who offers or provides this treatment could be found to be practicing inconsistently with accepted practice and subject to discipline." *Id.* In a footnote, the memorandum cites to the American College of Obstetricians and Gynecologists' (ACOG) advocacy stance regarding medication abortion reversal titled "Facts are Important: Medication Abortion 'Reversal' Is Not Supported by Science." *Id.*

### H.    The Department's April 2024 Public Education Campaign

Six months later, on June 10, 2024, the Department launched its public education campaign pursuant to the legislative mandate. The public education campaign appears on social media, billboards, the radio, and public transit. Am. Compl. ¶¶ 79, 82-89; Doc. 64-3 at 19-28. A press release announcing the campaign noted that the campaign would "highlight[] the dangers and potential harm of anti-abortion centers," which "often look like medical facilities and purport to offer the full spectrum of reproductive health care while, in reality, they often mislead people about their options if they are pregnant and dissuade them from accessing abortions." Compl. ¶ 76; Doc. 64-2 at 23. The campaign would "amplify how anti-abortion centers provide misinformation about abortion services to prevent people from making an informed choice about their care," and "is designed to help people understand their full range of options, directing them to . . . information

about how to recognize anti-abortion centers and where to access unbiased, full-spectrum reproductive health care in Massachusetts." Doc. 64-2 at 24.

## ARGUMENT

By this lawsuit, Your Options Medical seeks to enjoin government speech with which it disagrees and to immunize itself from the Department's oversight of reproductive healthcare in the Commonwealth. Because the non-conclusory factual allegations in the Amended Complaint do not plausibly state a First Amendment claim under any of Your Options Medical's asserted theories, or an Equal Protection Clause claim, and because Governor Healey and Commissioner Goldstein are entitled to qualified immunity, the Court should dismiss the Amended Complaint, with prejudice.[10]

### I.    The Amended Complaint Fails to State a Claim for a Violation of the Free Speech Clause of the First Amendment.

#### A.    The Public Education Campaign is Government Speech.

The State Defendants' legislatively mandated public education campaign, which educates the public that anti-abortion centers do not offer comprehensive reproductive healthcare, but instead seek to prevent pregnant people from accessing abortion care, is government speech that does not implicate the First Amendment. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, UT v. Summum*, 555 U.S. 460, 467 (2009). "A government official can share her views freely . . . and she can do

---

[10] On a motion to dismiss under Rule 12(b)(6), the Court accepts "as true all well-pleaded facts set forth in the complaint," "draw[s] all reasonable inferences therefrom in the pleader's favor, and "may also review any documents attached to the complaint or incorporated by reference therein." *O'Brien v. Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31, 35 (1st Cir. 2020) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

so forcefully in her hopes of persuading others to follow her lead." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024). "That makes sense; the government could barely function otherwise." *Id.* at 187. Indeed, "[i]f every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed . . . the process of government as we know it [would be] radically transformed." *Summum*, 555 U.S. at 468 (internal quotation marks omitted); *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring) ("It is the very business of government to favor and disfavor points of view on (in modern times, at least) innumerable subjects—which is the main reason we have decided to elect those who run the government, rather than save money by making their posts hereditary. . . . None of this has anything to do with abridging anyone's speech.").

Your Options Medical's vehement disagreement with the State Defendants' viewpoint expressed in the public education campaign, and the State Defendants' statements related to the public education campaign, does not give rise to a First Amendment claim. "[C]orporations and other institutions are criticized by government officials for all sorts of conduct that might well be perfectly legal, including speech protected by the First Amendment." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991). Other circuits have, for example, recognized that the government has the "undoubted right under the First Amendment to mobilize public opinion on the subject of topless bars . . . to organize a rally against pornography, to call the topless bars a "black eye on the community' and a 'slimy business,' and to call for a boycott of the establishments." *Connell v. Signoracci*, 153 F.3d 74, 82 (2d Cir. 1998). They have rejected First Amendment challenges to government speech that condemned pornographic magazines, *Penthouse Int'l*, 939 F.2d at 1015-16; "exhort[ed]" department stores not to distribute a satirical board game, *Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33, 37 (2d Cir. 1983); and

portrayed, in an advertising campaign, the tobacco industry as "deceptive and an enemy of the public health," *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 912 (9th Cir. 2005).

Nor do "defamatory" or "disparaging" statements by public officials give rise to a First Amendment claim.[11] *See Pendleton v. City of Haverhill*, 156 F.3d 57, 62-63 (1st Cir. 1998) ("The Supreme Court has determined authoritatively that defamation, even from the lips of a government actor, does not in and of itself transgress constitutionally assured rights."); *see also Paul v. Davis*, 424 U.S. 693, 695, 712 (1976) (defamation by public officials in form of widely distributed "active shoplifter" flyer with plaintiff's name and photograph not actionable under § 1983 absent governmental action altering a right or status previously held under state law); *Aversa v. United States*, 99 F.3d 1200, 1216 (1st Cir. 1996) ("false, misleading, self-serving, unjust and unprofessional" statements by public official not actionable under § 1983). Allegations that allegedly defamatory statements were made "in retaliation for" the exercise of First Amendment rights are also insufficient to state a valid First Amendment claim. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (defamation by a public official not actionable even if it "occurred in retaliation for the exercise of a First Amendment right"). And, here, the public education campaign and the State Defendants' statements about anti-abortion centers do not specifically mention Your Options Medical at all. Indeed, most of the anti-abortion centers in the Commonwealth are unlicensed. The Department lacks jurisdiction to oversee the quality of the services these unlicensed anti-abortion centers provide to pregnant people, making it even less plausible that the State Defendants' statements about anti-abortion centers generally are "threats" of imminent adverse action against Your Options Medical specifically. *See* Doc. 64-3 at 10.

---

[11] One of six "threats" Your Options Medical's alleges in their Amended Complaint is "Defamation and Public Disparagement." Am. Compl. ¶ 235.

Because the services most anti-abortion centers provide are not subject to any state oversight, public education about the centers is especially important.

Thus, Your Options Medical has no First Amendment claim based on the public education campaign or related statements about anti-abortion centers because government speech—no matter how critical—does not violate the First Amendment so long as individuals are "free to disagree" and "make [their] own independent judgment." *O'Handley v. Weber*, 62 F.4th 1145, 1158 (9th Cir. 2023). Your Options Medical's remedy for its disagreement with the government's viewpoint on anti-abortion centers is through its own protected speech,[12] and at the ballot box.[13] *See Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022) ("The Constitution . . . relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks."); *Summum*, 555 U.S. at 468-69 ("If the citizenry objects, newly elected officials later could espouse some different or contrary position." (internal quotation marks omitted)).

**B.    The Amended Complaint Does Not Plausibly Allege that the State Defendants Have Threatened or Coerced Your Options Medical or its Providers.**

The Amended Complaint does not plausibly allege that the Commissioner, through his guidance to licensed facilities or providers, or the Department, through its regulatory oversight of Your Options Medical, have threatened or coerced Your Options Medical, or its providers, to suppress Your Options Medical's speech opposing abortion. "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse

---

[12] *See, e.g.*, Joe Bukuras, *Besieged Massachusetts pro-life pregnancy centers rally at state capital*, Catholic News Agency (June 27, 2024), https://tinyurl.com/ykb2kba5.

[13] *See* Am. Compl. ¶ 109 (noting that the public information campaign had been previously vetoed by then-Governor Baker).

government action in order to punish or suppress the plaintiff's speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024). This is an "objective inquiry of whether a reasonable person would perceive the official's communication as coercive." *Id.* "Considerations like who said what and how, and what reaction followed, are just helpful guideposts in answering the question whether an official seeks to persuade or, instead, to coerce." *Id.*

The allegations in the Amended Complaint are fundamentally different from the evidence and allegations of threatening or coercive government conduct in *Bantam Books, Inc. v. Sullivan* and *Vullo*. In *Bantam Books*, the "Rhode Island Commission to Encourage Morality in Youth" sent 35 notices to the exclusive Rhode Island distributor of books the Commission had deemed objectionable. 372 U.S. 58, 60-62 (1963). The "notices," which were "phrased virtually as orders," identified the titles the Commissioner had decided were objectionable; "thanked [the distributor], in advance, for his 'cooperation' with the Commission"; reminded the distributor of the Commission's duty to recommend purveyors of obscenity to the Attorney General for prosecution; and informed the distributor that the Commission had already sent the titles to local police departments. 372 U.S. at 62-63, 68. A "local police officer usually visited [the distributor] shortly after [his] receipt of a notice to learn what action he had taken." *Id.* at 63.[14]

In *Vullo*, it was alleged that the superintendent of the New York Department of Financial Services (DFS), which regulates insurance companies doing business in New York, held a meeting with senior executives from a specific insurance company that underwrote insurance policies for

---

[14] In reaction to the repeated notices and police visits, the distributor stopped circulating the books on the Commission's list. He filled no new orders from the publisher, and he ordered his staff to pick up unsold copies of the publisher's books from retailers, which he returned to the publisher; he would inform the officer that visited him after each notice of the specific number of copies that he had returned to the publisher. *Id.* He took these actions "'rather than face the possibility of some sort of a court action.'" *Id.*

the National Rifle Association (NRA) where she expressed her desire to weaken the NRA, and told the executives that DFS "was less interested in pursuing" the insurance company's infractions unrelated to any NRA business "so long as [the company] ceased providing insurance to gun groups, especially the NRA." 602 U.S. at 183 (internal quotation marks omitted). The superintendent and the executives "struck a deal" at the meeting: the insurance company would "instruct its syndicates to cease underwriting firearm-related policies and would scale back its NRA-related business," and "in exchange, DFS would focus its forthcoming . . . enforcement action solely on those syndicates which served the NRA, and ignore the syndicates writing similar policies." *Id.* (internal quotation marks omitted).

Here, the Commissioner's guidance memorandum was not a direct communication to Your Options Medical, nor does it mention Your Options Medical by name. It does not refer, directly or indirectly, to adverse consequences if Your Options Medical continues its anti-abortion speech, or offer a *quid pro quo* that Your Options Medical could avoid adverse action by stopping its anti-abortion speech. *Compare Bantam Books*, 372 U.S. at 68 (35 notices sent directly to distributors and followed by police visits were "phrased virtually as orders" to stop distributing listed titles or face criminal prosecution); *Vullo*, 602 U.S. at 192 (superintendent's communications with insurance company executives in private meeting were "loud and clear" that company could avoid liability if it "aided DFS's campaign against gun groups" by terminating their business relationships with them (internal quotation marks omitted)); *Backpage.com LLC v. Dart*, 807 F.3d 229, 231, 234 (7th Cir. 2015) (public official sent letter to credit card companies demanding they "immediately cease and desist from allowing your credit cards to be used to place ads on websites like Backpage.com"); *Am. Ass'n of Univ. Professors v. Rubio*, No. 25-10685-WGY, 2025 WL 1235084, at *19 (D. Mass. Apr. 29, 2025) (complaint stated government coercion claim based on Trump Administration's "policy against speech that could be construed as pro-Palestinian or anti-

Israel" that "may be enforced by arrest, detainment, and deportation, including arrests at one's home or on the street by masked officers"). The Department's guidance in the memorandum that physicians and advanced practice registered nurses may be subject to discipline for violation of good and accepted health care practices if they offer or provide medical abortion reversal treatment (because it is unproven and there is "strong evidence" that it is unsafe to provide to patients), is not plausibly a threat to Your Options Medical, which provides information about this treatment, but neither offers nor provides it. *See* Am. Compl. ¶¶ 19, 21, 71.  Nor is it plausibly a "threat" to any providers to inform them that the Department's view based on the scientific evidence is that a particular medical practice is unsafe for patients.

Informing certain types of regulated entities of their legal obligations under state law and agency regulations is a routine and critical state government function, especially where public health and time-sensitive reproductive health care decisions are involved.[15] "[R]ecognizing the distinction between government coercion and a First Amendment violation is important because our democracy can function only if the government can effectively enforce the rules embodied in legislation; by its nature, such enforcement often involves coercion in the form of legal sanctions." *Vullo*, 602 U.S. at 201 (Jackson, J., concurring); *see also Kennedy v. Warren*, 66 F.4th 1199, 1209 (9th Cir. 2023) (senator's letter warning to Amazon that its algorithm's highlighting of books

_____

[15] For instance, the Attorney General has issued an advisory to developers, suppliers, and users of artificial intelligence regarding their legal obligations under the Massachusetts Consumer Protection Act; the Attorney General and the Executive Office of Education and Department of Elementary and Secondary Education issued an advisory to public schools on their legal obligations to prevent and address hate and bias; and the Massachusetts Office on Disability issued a memorandum to towns about their legal obligations under the Americans with Disabilities Act. Office of the Attorney General, *Attorney General Advisory on the Application of the Commonwealth's Consumer Protection, Civil Rights, and Data Privacy Laws to Artificial Intelligence*, https://www.mass.gov/doc/ago-ai-advisory-41624/download; *Guidance on Schools' Legal Obligations Regarding Hate and Bias Incidents*, https://tinyurl.com/mrym78ed; *Memo: Reasonable accommodations at Town Meetings*, https://tinyurl.com/4e2jfx7j.

containing COVID-19 misinformation was "potentially unlawful" was not coercive because "referencing potential legal liability does not morph an effort to persuade into an attempt to coerce"); *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1165 (10th Cir. 2021) (public official's letter contained no plausible threat where it contained statements of Colorado law about hate speech).

Likewise, the solicitation of concerns from the public is a routine aspect of state government and not plausibly a threat to, or coercion of, Your Options Medical, to suppress its speech. Complaints are an important way that state agencies learn about potential harms to the public, and providing the public an opportunity to submit complaints is commonplace in government.[16] And, as Your Options Medical concedes, since the complaint filed by REN in October 2023, the Department has neither received nor pursued any complaints related to Your Options Medical. Am. Compl. ¶¶ 44-45, 184, 331.

Nor were the Department or the Board's regulatory responses to REN's complaint about Your Options Medical threatening or coercive. "Agencies are permitted to communicate in a non-threatening manner with the entities they oversee without creating a constitutional violation." *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023). Indeed, the Court was explicit in *Bantam Books* that "we do not mean to suggest" that law enforcement "must renounce all informal contacts with persons suspected of violating valid laws" where "such consultation is genuinely undertaken

---

[16] The Attorney General's website, for example, solicits complaints from the public about car dealerships, auto repair businesses, public works projects, mortgage lenders, employers, and e-cigarette and tobacco companies, among others. *See, e.g.*, Office of the Attorney General, *Your Car, Your Rights*, https://tinyurl.com/mr28ycvp; *Getting Your Car Repaired*, https://tinyurl.com/59zmjxtt; *Prevailing Wage Enforcement*, https://tinyurl.com/2c4mm8fn; *Mortgage Lending and Foreclosures*, https://tinyurl.com/4ck7yddr; *File a workplace complaint*, https://tinyurl.com/2ctftacf; *E-cigarette and tobacco consumer protection regulations*, https://tinyurl.com/7vsed4fw. *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions.").

with the purpose of aiding [them] to comply with such laws and avoid prosecution under them."

*Bantam Books*, 372 U.S. at 71-72. And the Court reemphasized the same point in *Vullo*: the state was "free" to "criticize the NRA and pursue the conceded violations" of New York law. 602 U.S. at 187. As health care facilities licensed by the Department pursuant to Mass. Gen. Laws ch. 111, § 51, Your Options Medical is subject to licensing visits and inspections to determine its compliance with the regulations governing its clinics, and clinics must correct any regulatory deficiencies. *See* 105 Code Mass. Regs §§ 140.110 – 140.113. There are no allegations in the Amended Complaint that the Department's Division of Health Care Facility Licensure's investigation into Your Options Medical was motivated by anything other than REN's complaint identifying potential violations of the Department's regulations described in public reporting. *See* Am. Compl. ¶ 44-46. The Department's letter attached to the Amended Complaint, which Your Options Medical received a month after the Commissioner issued his guidance, informed Your Options Medical that it was in compliance with the Department's regulations. *Id.* ¶ 50 ("On February 19, 2024, we conducted a desk audit follow-up to verify that your facility had achieved and maintained compliance. The findings indicate that all deficiencies have been corrected."); Doc. 64-3. Your Options Medical continues to operate its licensed facilities and mobile unit today, and it alleges no additional regulatory scrutiny by the Department. Am. Compl. ¶¶ 20-24.

There are also no factual allegations in the Amended Complaint plausibly suggesting that the Board is investigating Your Options Medical's medical director to coerce Your Options Medical to stop expressing its anti-abortion viewpoint. By statute, the Board—which is neither a defendant in this case nor controlled by the State Defendants, *see* note 5, above—"*shall* investigate all complaints relating to the proper practice of medicine by any" licensed physician. Mass. Gen. Laws ch. 112, § 5 (emphasis added). Here, REN's letter cited reporting about the Your Options Medical mobile unit that, if true, would constitute a violation of the Board's regulations. *See* Mass.

Gen. Laws ch. 112, § 5 (physician may not knowingly permit, aid, or abet an unlicensed person to perform activities requiring a license for fraud, deception, or personal gain); 243 Code Mass. Regs. § 2.07(4) (physician may not delegate medical services to individual not licensed to perform those services); *id.* § 2.07(11) (physician may not advertise for patients by means that are false, misleading, or deceptive). There are no non-conclusory factual allegations in the Amended Complaint that the Board's issuance of subpoenas to Your Options Medical as part of its investigation into its medical director was plausibly a threat to Your Options Medical to stop its anti-abortion speech.

Thus, unlike the threatening notices and police visits to the distributor in *Bantam Books*, or the private meeting and "coercive threats in a private meeting behind closed doors" in *Vullo*, 602 U.S. at 198, the non-conclusory factual allegations in the Amended Complaint depict straightforward efforts by the Department to ensure that anti-abortion centers generally, and Your Options Medical specifically, are aware of and comply with state law. The Amended Complaint includes no factual allegations plausibly suggesting that the State Defendants have applied coercive state pressure to Your Options Medical, its medical director, or its physician, either directly or indirectly, to silence Your Options Medical's speech.[17] *Compare Bantam Books*, 372 U.S. at 68; *Vullo*, 602 U.S. at 193. Thus, the Amended Complaint does not plausibly allege

---

[17] Although Your Options Medical makes the conclusory and allegation that "Defendants' campaign of intimidation has directly contributed to the decision of one of YOM's doctors to stop practicing for YOM," Am. Compl. ¶ 3, Your Options Medical does not allege that the physician perceived that he was being threatened or coerced by the State Defendants to dissociate from Your Options Medical. But even if the Amended Complaint included such factual allegations, which it does not, "whether a reasonable person would perceive [an] official's communication as coercive" is an "objective inquiry." *Vullo*, 602 U.S. at 191. Where the state Defendant's speech and conduct is not coercive, the physician's decision to stop working at Your Options Medical was not reasonably based on any state coercion.

"coercive threats aimed at punishing or suppressing disfavored speech," and fails to state a First Amendment claim. *See Vullo*, 602 U.S. at 197.

### C.    Your Options Medical Has Not Stated a Claim for Retaliation.

Your Options Medical's allegations also fail to state a viable claim that the Commissioner's guidance was "retaliation" for Your Options Medical's anti-abortion speech, or that the Department has taken retaliatory adverse action against Your Options Medical because of Your Options Medical's speech. To state a First Amendment retaliation claim, a plaintiff "must plead that he engaged in First Amendment-protected conduct, that he suffered an adverse action, and that his protected conduct played a 'substantial or motivating' part in the adverse action." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 37 n.4 (1st Cir. 2024); *see also Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("but-for" causation required for First Amendment retaliation claim). "Courts have not been receptive to retaliation claims arising out of government speech." *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013). "This cautious approach to limiting government speech is warranted. Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." *Id.*; *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) ("where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory").

There are no factual allegations in the Amended Complaint plausibly suggesting that the Commissioner's guidance was an effort to retaliate against Your Options Medical because of its anti-abortion speech, as opposed to a reminder to all anti-abortion centers of their obligations under state law. *See* Am. Compl. ¶ 171 (describing Department's intent in issuing guidance is to "take a strong stance reflective of DPH's concern with the operation of [anti-abortion centers], particularly

given how unsafe they can be"); *id.* at ¶ 176 (guidance "meant to serve as a strong reminder of requirements under licensure"). Nor are there any factual allegations that the Department has taken any adverse action against Your Options Medical because of its anti-abortion speech, as opposed to credible reports of regulatory violations. Indeed, the Amended Complaint does not allege any adverse action by the Department at all. Only a month after the Commissioner issued the guidance, in February 2024, Your Options Medical's licensor wrote Your Options Medical to tell them that they were not in violation of any Department regulations. Doc. 64-3 at 1. There are no allegations that the Department has taken any regulatory action against Your Options Medical since. Thus, Your Options Medical fails to state a claim for retaliation under the First Amendment.

## II.    The Amended Complaint Fails to State a Claim for a Violation of the Free Exercise Clause of the First Amendment.

The Amended Complaint likewise fails to state a claim for a violation of the Free Exercise Clause of the First Amendment because it has not alleged that the public education campaign or the Department's regulatory oversight of Your Options Medical burdens or restricts Your Options Medical's religiously motivated conduct. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" and has been applied to the States through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). The Free Exercise Clause protects against laws that "'impose[ ] special disabilities on the basis of . . . religious status.'" *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 877 (1990)). "The Free Exercise Clause, importantly, is not a general protection of religion or religious belief. It has a more limited reach of protecting the *free exercise* of religion." *Parker v. Hurley*, 514 F.3d 87, 103 (1st Cir. 2008). The key threshold "question is whether the plaintiff's free exercise is interfered with at all." *Id.* at 99 (internal quotation marks omitted).

But here, Your Options Medical makes "no colorable argument" that any action by the State Defendants "prohibits any religious act or conduct." *See Wirzburger v. Galvin*, 412 F.3d 271, 281 (1st Cir. 2005). There are no allegations, for example, that Your Options Medical has been precluded from performing practices required by their religion as in *Church of the Lukumi Babalu Aye,* where the City of Hialeah, Florida, enacted an ordinance outlawing animal sacrifice that was central to the Santería religion. 508 U.S. at 527-28, 524-25. Your Options Medical's free exercise claim fails because Your Options Medical has not alleged any law, regulation, or policy that burdens its religiously motivated conduct, that requires or coerces Your Options Medical to violate its religious beliefs, or that punishes Your Options Medical because of its religious beliefs. *See Parker*, 514 F.3d at 99, 105-06 (rejecting free exercise claim where plaintiffs failed to allege constitutionally significant burden on rights because no allegations of direct interference in beliefs, punishment for beliefs, denial of benefits, or conditioning of benefits on violating religious beliefs); *Wirzburger*, 412 F.3d at 282 (rejecting free exercise claim where plaintiffs failed to show any restriction on their religious practices); *see also Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco*, 277 F.3d 1114, 1124 (9th Cir. 2002) ("when the challenged government action is neither regulatory, proscriptive or compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden").

Although Your Options Medical has now received the Department's internal communications about the public education campaign through its public records request, there remain no factual allegations in the Amended Complaint that the public education campaign was motivated by animus towards religion. *See Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 639 (2018) (concluding civil rights commission adjudicator's statements disparaging and expressing hostility to plaintiff's religion during plaintiff's formal public hearing were inconsistent with Free Exercise Clause). In fact, the Department explicitly avoided

emphasizing the religious ties of anti-abortion centers in the public education campaign because many pregnant people seeking comprehensive reproductive healthcare also have strong faith-based opposition to abortion. Doc. 64-7 at 11. Nor would any such animus be "itself sufficient to invalidate a government action, without the animus being tied to some resulting infringement on freedom of belief or on religious status, acts or conduct." *Wirzburger*, 412 F.3d at 282. Because Your Options Medical alleges no such burden or infringement, its free exercise claim fails.

## III.    The Complaint Fails to State a Claim for a Violation of the Equal Protection Clause.

Your Options Medical's claim under the Equal Protection Clause likewise fails because the Complaint does not plausibly allege that the Department has selectively enforced its regulations against Your Options Medical, much less that any of the Department's conduct as a licensor occurred because of Your Options Medical's religious viewpoint, as opposed to the healthcare it provides to patients. "To establish an equal protection claim, a plaintiff must show that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as his religion." *Perrier-Bilbo v. United States*, 954 F.3d 413, 432 (1st Cir. 2020) (citation omitted). Your Options Medical's equal protection claim appears to be principally based upon a theory that the Department has "selectively enforced" its regulations against Your Options Medical, but the Amended Complaint makes no more than a cursory assertion that similarly situated clinics have been treated differently by the Department as a licensor and thus fails to state a claim based on any alleged selective enforcement. *See, e.g.*, Am. Compl. ¶¶ 328, 333.

To the extent Your Options Medical's equal protection claim is based upon the public education campaign, rational-basis review applies. *See Wirzburger*, 412 F.3d at 282-83. The materials attached to the Amended Complaint detailing the state's interest in protecting those seeking comprehensive reproductive health care from deceptive practices, and state concerns about

the quality of care at licensed and non-licensed anti-abortion centers, easily supply a rational basis supporting the public education campaign. *See* Doc. 64-2 at 16-35, Doc. 64-6 at 6, 64-7 at 7, 64-8 at 13-16.

## IV.    Governor Healey and Commissioner Goldstein Enjoy Qualified Immunity Against Plaintiff's Individual-Capacity Claims.

Your Options Medical's claims against Governor Healey and Commissioner Goldstein in their individual capacities seeking damages must be dismissed because they are entitled to qualified immunity. Qualified immunity shields state officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011) (internal quotation marks and citation omitted).

Courts follow a two-step inquiry in assessing a claim of qualified immunity, considering: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 8 (1st Cir. 2013) (citation omitted). A plaintiff must satisfy "both prongs" of this test "to overcome a qualified immunity defense," *Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010), and courts need not address both prongs if plaintiff fails to satisfy one, *see Eves v. LePage*, 927 F.3d 575, 583-584 (1st Cir. 2019) (en banc). "Qualified immunity provides defendant public officials 'an immunity from suit rather than a mere defense to liability.'" *Penate v. Hanchett*, 944 F.3d 358, 365 (1st Cir. 2019) (citation omitted). As a result, qualified immunity should be resolved at the earliest possible stage in litigation. *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011). "When a defendant invokes

qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable." *Escalera-Salgado v. United States*, 911 F.3d 38, 41 (1st Cir. 2018).

Here, Governor Healey and Commissioner Goldstein are entitled to qualified immunity because Plaintiff has failed to plausibly allege that they violated a constitutional right under the first prong of the qualified immunity defense, *see* Sections I-III, above.

Governor Healey and Commissioner Goldstein are also shielded by qualified immunity because the law did not "clearly establish" that their conduct was unconstitutional under the second prong of the qualified immunity analysis. "The 'clearly established' inquiry itself has two elements. . . . The first focuses on the clarity of the law at the time of the violation. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Penate*, 944 F.3d at 366 (citations omitted). The first element of this prong requires case law identifying the protected right with more than "a high level of generality." *Eves*, 927 F.3d at 583 (citations omitted). Otherwise, courts would subject officials to liability that was too "broad[]," thus "disrupt[ing] the balance . . . between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Ziglar v. Abbasi*, 582 U.S. 120, 151-152 (2017) (citation omitted).

The allegations in the Amended Complaint against Governor Healey and Commissioner Goldstein and the actions that they themselves took are sparse. Your Options Medical alleges that at the time she was Attorney General, Governor Healey issued an advisory about anti-abortion centers, Am. Compl. ¶¶ 35, 36, 251; Commissioner Goldstein issued a guidance memorandum to licensees regarding licensure obligations and providing the standard of care, noting that off-label use of progesterone for medication abortion reversal is unsafe and inconsistent with standard practice, Am. Compl. ¶¶ 63, 65-68, 70, 71, 72, 175, 234, 280; Doc. 64-3, at 13-18; Commissioner

Goldstein encouraged people with concerns about healthcare providers to file formal complaints, Am. Compl. ¶ 203; and Governor Healey and Commissioner Goldstein made public statements related to the public education campaign, Am. Compl. ¶¶ 77, 80, 235, 251.

Your Options Medical attempts to rely on *Vullo*, 602 U.S. 175, and *Bantam Books*, 372 U.S. 58, Am. Compl. ¶¶ 254, 288, for the "clearly established" prong, but as previously explained, *see* Section I above, Your Options Medical has not plausibly alleged a First Amendment claim under those cases against any state Defendant, much less against Governor Healey or Commissioner Goldstein individually. There is no clearly established law that such actions—informing and protecting people seeking comprehensive reproductive healthcare in Massachusetts—are a violation of any constitutional right.

Public education is particularly essential in times of confusion, such as where and how pregnant people can seek abortion care after *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Removing the Governor's and Commissioner's ability to advise on timely, and time-sensitive, reproductive health issues, to criticize public health harms in the Commonwealth, or to provide guidance on off-label prescription of a medication that is against accepted health care practice, would impede the functioning of state government. Because it was not clearly established that statements related to a public education campaign and guidance regarding the provision of reproductive health care would violate Your Option's Medical's First or Fourteenth Amendment rights, the individual defendants are entitled to qualified immunity, and thus the individual-capacity claims against them must be dismissed.

## **CONCLUSION**

For these reasons, the Court should dismiss the Amended Complaint for failure to state a claim.

Respectfully submitted,

MAURA HEALEY, Governor of Massachusetts, and ROBERT GOLDSTSTEIN, Commissioner of the Massachusetts Department of Public Health,

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Phoebe Fischer-Groban*
Phoebe Fischer-Groban, BBO No. 687068
Deborah J. Frisch, BBO No. 693847
Meredith G. Fierro, BBO No. 696295
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2589
Phoebe.Fischer-Groban@mass.gov

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF, system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) on July 25, 2025.

/s/ Phoebe Fischer-Groban
Phoebe Fischer-Groban
Assistant Attorney General