UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

A Woman's Concern, Inc. d/b/a Your Options
Medical Centers,

       Plaintiff,

vs.

Maura Healey, Governor of Massachusetts,
sued in her individual and official capacities;
Robert Goldstein, Commissioner of the
Massachusetts Department of Public Health,
sued in his individual and official capacities;
Reproductive Equity Now Foundation, Inc.;
Rebecca Hart Holder, Executive Director of
Reproductive Equity Now Foundation,

       Defendants.

C.A. No. 1:24-cv-12131-LTS

**ORAL ARGUMENT REQUESTED**

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS REPRODUCTIVE EQUITY NOW FOUNDATION, INC. AND REBECCA HART HOLDER</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

A.  REN's and Holder's Viewpoint and Speech Concerning AACs ................................. 1

B.  REN's Complaint to the Massachusetts Department of Public Health ..................... 2

C.  REN and Holder Provide Support to a Massachusetts Public Education Campaign.................. 4

D.  YOM's Complaint Against REN and Holder ........................................................... 5

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................ 6

A.  YOM Lacks Standing to Pursue Claims Against REN and Holder........................... 7

B.  The DPH Complaint Was a Protected Exercise of REN's and Holder's First Amendment
    Rights to Petition Under the *Noerr-Pennington* Doctrine ........................................ 10

C.  REN and Holder Are Not State Actors Subject to Liability Under Section 1983 ................... 13

  1)  REN's and Holder's Filing of the DPH Complaint Was Not State Action ......................... 14

  2)  REN's and Holder's Involvement in the Public Education Campaign, Private Speech and
      Advocacy Are Not State Action.......................................................................... 15

    a.  REN's and Holder's Work as a Private Consultant to the State's Marketing Consultant
        Did Not Convert its Conduct Into State Action .............................................. 16

    b.  REN's Receipt of Funding and Other Assistance from the State Does Not Make REN's
        and Holder's Activities State Action ............................................................... 17

    c.  REN's and Holder's Advocacy Does Not Render Them State Actors........................... 18

D.  YOM's Allegations that REN and Holder Caused a Deprivation of YOM's Constitutional
    Rights are Not Plausible. ................................................................................... 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*,
    480 F. Supp. 2d 462 (D. Mass. 2007) .................................................................................. 12

*Andresen v. Diorio*,
    349 F.3d 8 (1st Cir. 2003) ................................................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 6

*Barrios-Velazquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*,
    F.3d 487 (1st Cir. 1982) ...................................................................................................... 18

*Bayou Fleet, Inc. v. Alexander*,
    234 F.3d 852 (5th Cir. 2000) .............................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 6

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ...................................................................................................... 14, 18

*Blythe v. Schlievert*,
    245 F. Supp. 3d 959 (N.D. Ohio 2017) .............................................................................. 16

*Bonollo Rubbish Removal, Inc. v. Town of Franklin*,
    886 F. Supp. 955 (D. Mass. 1995) ..................................................................................... 11

*Cabi v. Boston Children's Hosp.*,
    161 F. Supp. 3d 136 (D. Mass. 2016) ................................................................................ 18

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972) ............................................................................................................ 11

*Castro v. New Hampshire Secretary of State*,
    701 F. Supp. 3d 176 (D.N.H. 2023) ..................................................................................... 8

*Cheng v. Neumann*,
    51 F.4th 438 (1st Cir. 2022) ............................................................................................... 15

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) ............................................................................................. 19

*Collier v. Town of Harvard*,
    No. 95-11652-DPW, 1997 WL 33781338 (D. Mass. Mar. 28, 1997) ...................................... 11

*Conrad v. Perales*,
    818 F. Supp. 559 (W.D.N.Y. 1993) ................................................................................... 16

*Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020) .......................................................................................... 7, 8, 9

*Davric Maine Corp. v. Rancourt*,
    216 F.3d 143 (1st Cir. 2000) .............................................................................................. 13

*Estades-Negroni v. CPC Hosp. San Juan Capestrano*,
   412 F.3d 1 (1st Cir. 2005) ................................................................................. passim

*Fox v. Saginaw C*,
   67 F.4th 284 (6th Cir. 2023) .................................................................................... 8

*Giragosian v. Ryan*,
   547 F.3d 59 (1st Cir. 2008) ..................................................................................... 4

*Gleason v. County of Putnam*,
   No. 23-cv-04464, 2024 WL 3952147 (S.D.N.Y. Aug. 27, 2024) .......................... 17

*Gustavsen v. Alcon Labs., Inc.*,
   903 F.3d 1 (1st Cir. 2018) ................................................................................... 6, 8

*Huber v. Biden*,
   No. 21-cv-06580-EMC, 2022 WL 827248 (N.D. Cal. Mar. 18, 2022) .................. 19

*Jeep Eagle 17, Inc.*,
   No. 09-23708, 2010 WL 4864171 (Bankr. D.N.J. Nov. 23, 2010) ........................ 12

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) .................................................................................. 11

*Klunder v. Brown Univ.*,
   778 F.3d 24 (1st Cir. 2015) .................................................................................... 13

*Lender's Serv., Inc. v. Dayton Bar Ass'n*,
   758 F. Supp. 429 (S.D. Ohio 1991) ....................................................................... 11

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ......................................................................................... 13, 19

*McGuire v. Reilly*,
   386 F.3d 45 (1st Cir. 2004) ..................................................................................... 7

*McNaught v. Nolen*,
   76 F.4th 764 (8th Cir. 2023) .................................................................................. 10

*Meuse v. Stults*,
   421 F. Supp. 2d 358 (D. Mass. 2006) .................................................................... 15

*National Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2004) ............................................................................................... 20

*New W., L.P. v. City of Joliet*,
   491 F.3d 717 (7th Cir. 2007) .................................................................................. 11

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ................................................................. 16

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024) ..................... 16

*Pagan v. Calderon*,
   448 F.3d 16 (1st Cir. 2006) ..................................................................................... 8

*Perkins v. Londonderry Basketball Club*,
   196 F.3d 13 (1st Cir. 1999) ................................................................. 14

*Perrot v. Kelly*,
   No. 18-CV-10147-DPW, 2023 WL 2939277 (D. Mass. Feb. 15, 2023) ................................. 4

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   632 F.3d 762 (1st Cir. 2011) ................................................................. 8

*Ponce v. Basketball Fed'n of Com. of Puerto Rico*,
   760 F.2d 375 (1st Cir. 1985) ................................................................. 13

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ................................................................. 12

*Rae v. Woburn Public Schools*,
   113 F.4th 86 (1st Cir. 2024) ................................................................. 6, 14

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1996) ................................................................. 16

*Rockwell v. Cape Cod Hosp.*,
   26 F.3d 254 (1st Cir. 1994) ................................................................. 18

*Rodriguez-Cirilo v. Garcia*,
   115 F.3d 50 (1st Cir. 1997) ................................................................. 19

*Roman Catholic Diocese of Rockville Ctr. v. Incorporated Village of Old Westbury*,
   No. 09 CV 5195, 2011 WL 666252 (E.D.N.Y. Feb. 14, 2011) ................................. 17

*Sadallah v. City of Utica*,
   383 F.3d 34 (2d Cir. 2004) ................................................................. 10

*Sanderson v. Brugman*,
   No. IP00–459–C–H/G, 2001 WL 699876 (S.D. Ind. May 29, 2001) ................................. 11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................. 7

*Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*,
   8 F.4th 56 (1st Cir. 2021) ................................................................. 8

*Torres-Negron v. J&N Records, LLC*,
   504 F.3d 151 (1st Cir. 2007) ................................................................. 6, 8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................. 8

*Twitter, Inc. v. Paxton*,
   56 F.4th 1170 (9th Cir. 2022) ................................................................. 10

*VDARE Found. v. City of Colorado Springs*,
   11 F.4th 1151 (10th Cir. 2021) ................................................................. 16, 18

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) ................................................................. 8

*Yeo v. Town of Lexington*,
    131 F.3d 241 (1st Cir. 1997) ........................................................................... 19

*Young v. Lepone*,
    305 F.3d 1 (1st Cir. 2002) ............................................................................... 5

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 1

G.L. c. 13, §10 .................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................... passim

## INTRODUCTION

This case is not about any wrongful deprivation of the First Amendment or other constitutional rights of Plaintiff A Women's Concern, Inc., d/b/a Your Options Medical Centers ("YOM"). Instead, it is a blatant attempt by YOM to enlist this Court's assistance in its effort to silence Reproductive Equity Now Foundation, Inc. ("REN") and its President, Rebecca Hart Holder ("Holder"), by preventing them from exercising *their* constitutional rights and advancing REN's charitable mission of making equitable access to the full spectrum of reproductive health care a reality for all people. As YOM has failed to satisfy its burden of demonstrating that it has sustained any legally cognizable injury under 42 U.S.C. § 1983 ("Section 1983") that is fairly traceable to the alleged unlawful conduct of REN and Holder, all of the claims alleged against them in the Amended Complaint ("Amd. Compl.") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. The claims alleged against REN and Holder should also be dismissed under Fed. R. Civ. P. 12(b)(6) because liability under Section 1983 cannot, as a matter of law, be predicated on private parties' exercise of their First Amendment rights of petition, and because YOM, for the second time, has utterly failed to allege facts that plausibly demonstrate this is one of the rare instances in which the conduct of private parties constitutes state action.

## BACKGROUND

REN is a nonprofit organization dedicated to furthering access for all people to the full spectrum of reproductive health care. Advancing reproductive justice and eliminating barriers to safe, legal abortion care are central to that mission. Amd. Compl. ¶ 8. Holder leads the organization and participates in that mission. *Id.* ¶ 9; Ex Q at 2.

### A.    REN's and Holder's Viewpoint and Speech Concerning AACs

REN and Holder have publicly advocated that anti-abortion centers ("AACs"), many of which are not licensed health care facilities, "pose a serious threat to pregnant people seeking

unbiased reproductive healthcare in Massachusetts."[1] *Id*. ¶ 106. REN and Holder have also publicly contended that AACs often withhold information about abortion care and use deceptive tactics to attract people and then dissuade them from accessing abortion care. *Id*. ¶ 96.

To further REN's mission, REN and Holder have developed and published materials expressing their views regarding AACs generally, and about those operating in New England, one of which is YOM. *See* Amd. Compl. ¶ 91, Ex. P; *id*. ¶¶ 93-99; Ex. Q. REN's website includes a page expressing its position that AACs "are facilities that present themselves as resources for people facing unplanned pregnancies, but in reality, exist to dissuade people from accessing abortion care." *Id*., Ex. P. REN's website also includes a link to a guidebook reflecting its research and views about AACs. *Id*. ¶ 93, Ex. Q. Among other things, REN's website expresses the concern that AACs can delay care. *Id.*, Ex. P. REN's website and its guidebook provide individuals with information about how to access legal representation or file a complaint if they believe they have been "harmed by deceptive practices, harassment, or medical malpractice" at an AAC. *Id*., Ex. P; *see also id.*, Ex. Q. One option outlined by REN and Holder is a "free and confidential Abortion Legal Hotline" (the "Hotline") (*id*. ¶ 99), a service managed and staffed by REN, which received financial support from Massachusetts in a supplement to the fiscal year 2023 budget that was signed by Governor Maura Healey on March 29, 2023. *Id*. ¶¶ 90, 101, 109-110.

## B.    REN's Complaint to the Massachusetts Department of Public Health

In August 2023, the *Provincetown Independent* reported that YOM was planning to operate a mobile clinic on Cape Cod, which YOM was promoting as offering free pregnancy testing and ultrasounds with "immediate results." *Id*. ¶ 45, Ex. F. The same article quoted YOM's Executive

---

[1] YOM refers to AACs as "pro-life pregnancy centers" (Amd. Compl. ¶¶ 39, 46, 51, 58, 74, 84, 91, 94, 112-113, 134, 205, 233, 235, 237) and "pro-life centers" (*id*. ¶¶ 38, 73, 86, 100, 193, 234-236, 238).

Director, Teresa Larkin, as saying, "when we say immediate results, we usually mean preliminary findings." *Id*., Ex. F. Larkin added that YOM did not plan for a "registered" obstetrician or radiologist to be present in the mobile clinic and that ultrasound images taken in the mobile unit would be sent digitally to a physician, with results to be reviewed within 24-48 hours. *Id*. REN and Holder were concerned about the inconsistency between YOM's advertisement that the results would be "immediate" and Larkin's statements that the results would in fact be "preliminary findings" that needed to be reviewed and confirmed by an offsite physician within 24-48 hours.

As a consequence, on October 17, 2023, REN and Holder submitted a complaint to the Massachusetts Department of Public Health ("DPH") and copied several other government and licensing entities (the "DPH Complaint"). *Id.*, Ex. F. The DPH Complaint states in relevant part:

> The advertisement on the mobile unit and Ms. Larkin's statements raise two important issues. First, Ms. Larkin's statements suggest that [YOM's] mobile unit may be falsely advertising "immediate results." Second, if [YOM's] mobile unit is offering "immediate results" following an ultrasound, we have serious concerns that clinicians may be operating beyond their scope of practice…
>
> Without a physician available to immediately interpret an ultrasound and provide "immediate results," we are concerned that registered nurses could be operating outside of their scope of practice by diagnosing ultrasounds immediately…
>
> [W]e are alarmed by reporting indicating their plan to make only registered nurses and volunteers available at appointments, while simultaneously advertising "immediate results," which could set up a scenario for out-of-scope practice and patient endangerment.

*Id*. REN and Holder urged DPH to investigate whether YOM "*may be engaging* in deceptive practices and *potentially endorsing* out-of-scope diagnoses by registered nurses in order to provide the advertised immediate results." *Id*. (emphasis added). YOM admits that after it received the DPH Complaint, DPH required YOM to amend its "Policies and Procedures Manual concerning the criteria for ultrasound exams[,] eliminating any language that allowed for sonographer discretion," which YOM did. Amd. Compl. ¶¶ 49-50. YOM also alleges that DPH subsequently

found YOM in compliance with its state licensing requirements as of February 29, 2024. *Id*. ¶ 48.

Separately, the Massachusetts Board of Registration in Medicine ("BORIM"),[2] which was copied on the DPH Complaint, began an investigation of YOM's medical director in response to the DPH Complaint, serving two subpoenas on YOM on December 21, 2023, and June 5, 2024. *Id*. ¶ 53. On July 9, 2024, YOM filed an action in Middlesex Superior Court seeking to enjoin BORIM's investigation and claiming (as it does in this case, *see id*. ¶ 58) that the DPH Complaint lacked merit and was initiated "to conduct a vast fishing expedition and to pry into the business of" YOM. *See* Declaration of Mariana Korsunsky, Esq. dated July 25, 2025 ("Korsunsky Decl."), Ex. 1.[3] The Superior Court denied YOM's request for a preliminary injunction, holding that BORIM has authority to conduct the investigation. *Id.*, Ex. 2.

## C.    REN and Holder Provide Support to a Massachusetts Public Education Campaign

More recently, the Healey-Driscoll Administration and DPH developed and launched a public education campaign (the "Public Education Campaign") regarding the public health risks posed by AACs' practices. Amd. Compl. ¶¶ 74, 76-81. REN participated in the Public Education Campaign as an independent consultant to Causemedia, Inc. d/b/a MORE Advertising ("MORE"), the marketing agency engaged by DPH to assist with the Public Education Campaign.[4] Korsunsky

---

[2]    BORIM, an independent board whose members are appointed by the governor, regulates and oversees individual physicians. *See generally* Amd. Compl., Ex. L; G.L. c. 13, §10.

[3]    *See Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (a court may consider matters of public record such as "documents from prior state court adjudications" in resolving a motion to dismiss) (citation omitted); *Perrot v. Kelly*, No. 18-CV-10147-DPW, 2023 WL 2939277, at *7 (D. Mass. Feb. 15, 2023) (courts may "take judicial notice of […] prior decisions of Massachusetts courts," where they are "part of the public record and have relevance to the matters at hand") (citation omitted).

[4]    YOM's allegations that REN was a "first-time government contractor" in a "formaliz[ed] public-private partnership" with DPH (Amd. Compl. ¶ 116) and had "decision-making" or "approval" over the Public Education Campaign (*id.* ¶¶ 156, 162, 164, 212) are contradicted by REN's contract with MORE and the documents appended to the Amended Complaint. Korsunsky Decl., Ex. 3; Amd. Compl. Exs. T (email communication from Holder stating that DPH would use

Decl., Ex. 3; *Id*. ¶ 107. The Public Education Campaign launched on June 10, 2024 (*id*. ¶ 74) and was funded through a $1 million appropriation by the Massachusetts legislature in its fiscal year 2023 budget. *Id*. ¶ 79; ¶¶ 114-115, Ex. S. The Public Education Campaign, which does not mention YOM by name, includes factsheets, public postcards, billboards, and advertisements on social media, transit, and radio platforms (*id*. ¶¶ 79, 82-83, 86, 160-161, Exs. M-O, BB) with messages such as "Avoid Anti-Abortion Centers," with a link and QR code telling readers they can "find out why" by clicking the links. *Id*., Ex. M. DPH's website provides more information and includes a link to a website maintained exclusively by REN. *Id*. ¶ 89. YOM does not allege that it is named on DPH's website or in the advertisements that are part of the Public Education Campaign.

**D.     YOM's Complaint Against REN and Holder**

On August 19, 2024, YOM filed its initial Complaint against Governor Healey and DPH Commissioner Goldstein, each in their official and individual capacities, along with REN and Holder, in her capacity as President of REN. All Defendants moved to dismiss the Complaint. In accordance with the Court's Order dated May 9, 2025, YOM filed its Amended Complaint on June 20, 2025. All three of the counts in YOM's Amended Complaint remain based upon claims that its Constitutional rights under the First Amendment (Counts I and II) and Fourteenth Amendment (Count III) have been violated. YOM alleges that REN and Holder acted under "color of state law" with respect to each count, such that YOM's constitutional claims can be maintained against them pursuant to Section 1983. *Id*. ¶¶ 243, 246, 291, 294, 323. REN and Holder now move again to

---

"subject matter experts" to assist with the Public Education Campaign); X (MORE seeking approval from DPH), DD (MORE circulating concepts for "commissioner office review"); EE (seeking approval from State officials). Accordingly, these conclusory allegations should be disregarded by the Court. *See Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) ("When the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

dismiss all claims against them.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[N]aked assertions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive dismissal. *Id.*; *Rae v. Woburn Public Schools*, 113 F.4th 86, 98 (1st Cir. 2024) (only "well-pleaded" facts must be accepted as true; unsupported conclusions or legal interpretations need not be accepted as true). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 679. A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) that is based on a facial challenge to standing is evaluated under the same plausibility standard applied to motions to dismiss under Rule 12(b)(6). *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 7 (1st Cir. 2018); *Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007).

## ARGUMENT

The claims asserted by YOM against REN and Holder in the Amended Complaint continue to be predicated entirely on the DPH Complaint filed on October 17, 2023, work REN performed as a consultant to a private marketing agency for the Public Education Campaign, and information REN maintains on its own website. Although the Amended Complaint adds 163 new paragraphs, these paragraphs fail to cure the deficiencies of YOM's original Complaint. As with the original Complaint, YOM's claims in the Amended Complaint against REN and Holder must be dismissed

for at least four reasons. First, YOM has failed to plausibly establish it has sustained any injury protected under Section 1983 that is fairly traceable to the conduct of REN and Holder and, therefore, YOM lacks standing to maintain its claims against them. Second, the filing of the DPH Complaint constitutes protected petitioning activity for which REN and Holder cannot, as a matter of law, be held liable under Section 1983. Third, none of the activities in which REN and Holder are alleged to have engaged constitute actions taken "under color of law." Finally, neither REN nor Holder caused a deprivation of YOM's constitutional rights.

Stripped of its conclusory allegations, mischaracterizations and unsupported speculation, the Amended Complaint improperly seeks to silence the speech of REN and Holder, two private actors with which YOM disagrees. Section 1983 and the First and Fourteenth Amendments cannot be twisted to achieve such a perverse result. *See McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir. 2004) ("[M]uch of what plaintiffs complain about here is purely private action jousting with the ideas plaintiffs espouse. The First Amendment is concerned with government interference, not private jousting in the speech marketplace.").

## A.     YOM Lacks Standing to Pursue Claims Against REN and Holder

Article III of the Constitution limits this Court's subject matter jurisdiction to actual cases and controversies involving plaintiffs who have standing to sue. *Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020); *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). As the plaintiff, YOM has the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet its burden, YOM must allege facts plausibly demonstrating that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [REN and Holder], and (3) that is likely to be redressed by a favorable judicial decision." *Id*. at 338. To establish injury in fact, YOM must show that it has suffered an invasion of an interest legally protected by Section 1983, which must be both "concrete and particularized,"

and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citations omitted). YOM must satisfy this three-part test as to *each* of the claims for which it seeks relief, *see Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372 (1st Cir. 2023), and as to *each* defendant. *See Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023) (citing Second, Fourth, Fifth and Eighth Circuit cases); *Castro v. New Hampshire Secretary of State*, 701 F. Supp. 3d 176, 182 (D.N.H. 2023); *see also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 n.6 (1st Cir. 2011).

In a facial challenge to standing such as this, YOM's allegations at the pleading stage must satisfy the same plausibility standard used to evaluate a motion under Rule 12(b)(6). *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021); *Gustavsen*, 903 F.3d at 7; *Torres-Negron*, 504 F.3d at 162. While standing may be predicated on either tangible or intangible injuries, *see Webb*, 72 F.4th at 372, those injuries must be concrete, particularized *and* fairly traceable to the challenged conduct of REN and Holder in order for YOM to have standing to maintain its Section 1983 claims against them. *See Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006) ("To meet this requirement, the plaintiff must adequately allege that the asserted injury is causally connected to the challenged conduct."). To do so, YOM must allege a sufficiently direct causal connection between the challenged action of REN and Holder and the alleged harm. *Dantzler*, 958 F.3d at 47 (recognizing that causation cannot be "overly attenuated" and "is absent if the injury stems from the independent action of a third party"). A risk of future harm is only sufficient to create standing if "the risk of harm is sufficiently imminent and substantial." *Webb*, 72 F.4th at 375 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)).

Here, YOM's standing is predicated on conclusory allegations that it has suffered tangible harm because one of its doctors quit providing services "[a]s a direct result of Defendants'

intimidation campaign," which purportedly caused it to turn patients away and "incur significant operational costs" (although YOM declines to further articulate or substantiate those alleged costs, *see* Amd. Compl. ¶ 240).[5] YOM also makes the conclusory allegation that "Defendants' campaign represents a systematic, coordinated effort to silence Plaintiff's pro-life message *through government* coercion, threats, and intimidation," *id.* ¶ 241 (emphasis added), and that "these threats will continue to cause irreparable harm to Plaintiff's constitutional rights and ability to fulfill its religious mission." *Id.*[6]

YOM continues in its Amended Complaint to attribute these alleged "threats" and acts of coercion to the "Defendants" collectively, without identifying any "threats" or coercive acts made by REN or Holder, and without plausibly alleging how REN and Holder could possibly "threaten" or "coerce" YOM to forego its First Amendment rights. *See id.* ¶¶ 233-241. Instead, YOM alleges the claimed deprivation of First and Fourteenth Amendment rights arises from alleged "discriminatory *government retaliation.*" *Id.* ¶ 233 (emphasis added). Although YOM's alleged injuries are predicated on alleged threats of *government enforcement*, YOM continues to fail to demonstrate how these injuries can be fairly traceable to private actors like REN and Holder, who lack any such enforcement powers. *See Dantzler*, 958 F.3d at 47 (recognizing that causation "is absent if the injury stems from the independent action of a third party") (citation omitted). Accordingly, YOM has still not satisfied its burden to plausibly demonstrate that its alleged injuries are "fairly traceable" to any allegedly wrongful conduct of REN and Holder. *Id.* at 47-48.

Apart from these alleged injuries, YOM also summarily alleges it has suffered reputational

---

[5] YOM does not allege that the doctor who left is the medical director who is being investigated by BORIM.

[6] While YOM alleges that it has experienced acts of vandalism, it does not and cannot plausibly assert that these acts were caused by REN or Holder. *See id.* ¶¶ 28-32.

harm. Amd. Compl. ¶¶ 235, 240, 286. However, a mere allegation of "reputational harm," without more, is insufficient to satisfy YOM's burden as to standing. *See McNaught v. Nolen*, 76 F.4th 764, 771-72 (8th Cir. 2023); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."). Similarly, while YOM alleges in a conclusory fashion that its speech and free exercise of religion have been "unconstitutionally chilled" (*see* Amd. Compl. ¶¶ 73, 205, 235, 240, 260, 309), YOM never alleges that it has, in fact, refrained from exercising its First Amendment rights due to feared harms or injuries that could befall it due to the allegedly wrongful conduct of REN or Holder. *Cf. Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (affirming dismissal of claims that government attempted to chill plaintiff's First Amendment rights because allegations of the government action's effect on speech and assertions that speech was chilled were insufficient to demonstrate an injury in fact). Accordingly, YOM's claims against REN and Holder should be dismissed for lack of standing.

**B.     The DPH Complaint Was a Protected Exercise of REN's and Holder's First Amendment Rights to Petition Under the *Noerr-Pennington* Doctrine**

As it concerns the filing of the DPH Complaint[7], YOM pleads nothing more than classic *Noerr-Pennington* activity that cannot, as a matter of law, subject REN or Holder to liability. Originally adopted in the context of antitrust claims, the *Noerr-Pennington* doctrine immunizes parties who exercise their right to petition the government from liability for that activity. Federal courts have consistently recognized that this doctrine, which is grounded in First Amendment guarantees, is applicable to Section 1983 claims. *See, e.g.*, *Kearney v. Foley & Lardner, LLP*, 590

---

[7]     YOM also lacks standing to assert claims against REN or Holder on the basis of the complaint they filed about Clearway Clinic (Amd. Compl. ¶ 172, Ex. FF). Clearway is not a party to this case and the complaint filed against it is protected activity under the *Noerr-Pennington* doctrine.

F.3d 638, 644–45 (9th Cir. 2009); *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007);

*Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). This Court has also recognized

that the First Amendment considerations that gave rise to the doctrine "have as much force in the

… action under § 1983 as they do in the context of an antitrust suit." *See Bonollo Rubbish Removal,

Inc. v. Town of Franklin*, 886 F. Supp. 955, 966 (D. Mass. 1995); *Collier v. Town of Harvard*, No.

95-11652-DPW, 1997 WL 33781338, at *8 (D. Mass. Mar. 28, 1997).

 The claims asserted against REN and Holder in this action, to the extent they are predicated

on the DPH Complaint, fall squarely within the ambit of the *Noerr-Pennington* doctrine and must

therefore be dismissed. As YOM's allegations and exhibits appended to the Amended Complaint

make clear, the DPH Complaint raised a "concern about potentially deceptive practices [YOM's]

anti-abortion mobile unit appears to engage in and the resulting impact on pregnant people seeking

care." Amd. Compl. ¶¶ 44-58, Ex. F. The DPH Complaint is precisely the type of petitioning

activity protected by the *Noerr-Pennington* doctrine. *See California Motor Transp. Co. v. Trucking

Unlimited*, 404 U.S. 508, 510 (1972) (*Noerr-Pennington* doctrine immunizes petitions made to

any branch of government); *Sanderson v. Brugman*, No. IP00–459–C–H/G, 2001 WL 699876, at

*6 (S.D. Ind. May 29, 2001) ("Asking government officials to investigate a competitor for possible

violations of the law—i.e., asking the executive branch to execute the laws—falls well within the

scope of the *Noerr–Pennington* doctrine."); *Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F. Supp.

429, 439 (S.D. Ohio 1991) (filing a complaint with the Ohio Supreme Court's Board of

Commissioners regarding unauthorized practice of law was protected petitioning activity).

 YOM cannot avoid dismissal of its claims against REN and Holder by invoking a narrow

"sham" exception to the *Noerr-Pennington* doctrine. In order for the sham exception to apply,

YOM must establish that the DPH complaint was "objectively baseless"—here, an insurmountable

burden. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *In re Jeep Eagle 17, Inc.*, No. 09-23708, 2010 WL 4864171, at *6 (Bankr. D.N.J. Nov. 23, 2010) (the "objectively baseless" standard represents a "high threshold"). YOM has not alleged any facts in the Amended Complaint sufficient to make that showing. Nor could it.

As the DPH Complaint makes clear, REN reported an inconsistency between YOM's advertisement of offering ultrasounds with "immediate" pregnancy results and the statement of YOM's Executive Director that the results were only "preliminary findings" that needed to be reviewed and confirmed by an offsite physician within 24-48 hours. *See* Amd. Compl., Ex. F. YOM does not dispute the fact or substance of its Executive Director's statement—which inevitably indicates either that the results of ultrasounds offered by YOM are not actually immediate or that the results are being conveyed to patients by nurses prior to their being reviewed by a physician.[8] As a result, it was reasonable for REN to ask DPH, as the appropriate licensing authority, to investigate whether YOM "*may* be engaging in deceptive practices and *potentially* endorsing out-of-scope diagnoses by registered nurses in order to provide the advertised immediate results." *Id.* (emphasis added). The sham exception to the *Noerr-Pennington* doctrine does not apply under these circumstances. *See Prof'l Real Estate Investors*, 508 U.S. at 62 (existence of probable cause to institute legal proceedings, which requires no more than a chance that a claim may be held valid upon adjudication, precludes a finding of sham litigation); *Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 480 F. Supp. 2d 462, 469 (D. Mass. 2007) (if complainant "reasonably believed" the other party transgressed or would imminently transgress, the petition to the International Trade Commission was not a sham—irrespective of the ultimate outcome).

---

[8]    In fact, YOM acknowledges in its Amended Complaint that the final results of the ultrasounds it performs "are confirmed by a physician, then provided to the patients no more than twenty-four to forty-eight hours later." *Id.* ¶ 47.

YOM's Amended Complaint *confirms* that DPH required YOM to amend its Policies and Procedures Manual to eliminate "any language that allowed for sonographer discretion," underscoring that REN's concerns about out-of-scope practices by YOM had merit. *See Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 148 (1st Cir. 2000) (holding that a successful effort to influence governmental action cannot be characterized as a sham). The investigation undertaken by BORIM of YOM's Medical Director in response to the DPH Complaint, which a Massachusetts state court held was within BORIM's authority to conduct and declined to enjoin (*see* Korsunsky Decl., Ex. 2) further confirms the legitimacy of REN's concerns.

**C.     REN and Holder Are Not State Actors Subject to Liability Under Section 1983**

To withstand dismissal, YOM must plausibly allege that REN and Holder were each acting under color of state law and caused a deprivation of YOM's constitutional rights through those acts. As REN and Holder are indisputably private parties, YOM's allegations must establish that any action taken by them in violation of its secured rights are "'fairly attributable to the State.'" *See Klunder v. Brown Univ.*, 778 F.3d 24, 30-34 (1st Cir. 2015) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *Ponce v. Basketball Fed'n of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). "It is '[o]nly in rare circumstances' that private parties can be viewed as state actors." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4-5 (1st Cir. 2005).

REN and Holder cannot be subject to liability under Section 1983 unless (1) the conduct in which they are alleged to have engaged was "a public function that was 'traditionally the exclusive prerogative of the State'"; (2) the state coerced REN or Holder or provided such significant encouragement to them that their alleged conduct must be deemed to be that of the state; or (3) the state "'so far insinuated itself into a position of interdependence" with REN and Holder that it was a joint participant in the challenged activity. *See Estades-Negroni*, 412 F.3d at

13

4-8; *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1999). YOM has not plausibly alleged facts to justify application of any of these tests.

YOM does not allege that REN and Holder exercised powers exclusively reserved to the state. YOM also does not allege that the state coerced REN or Holder or provided such significant encouragement to them with respect to the conduct of which YOM complains that the conduct must be legally considered the state's. *See Blum v. Yaretsky*, 457 U.S. 991, 1004-1005 (1982) (state approval of or acquiescence in a private party's initiatives is not enough). Finally, while YOM alleges that REN and Holder were engaged "in explicit partnership as a joint action with Massachusetts officials" (Amd. Compl. ¶¶ 246, 294, 323) and that "REN and state actors" carried out "a mutual symbiotic relationship" (*id.* ¶ 249), these labels and conclusory assertions are not entitled to any presumption of truth and are insufficient to establish the level of joint participation and mutual interdependence necessary to support the application of Section 1983 to REN and Holder. *See Rae*, 113 F.4th at 98 (unsupported conclusions need not be accepted as true).

### 1)    REN's and Holder's Filing of the DPH Complaint Was Not State Action

In addition to constituting protected petitioning activity, REN's and Holder's filing of the DPH Complaint is purely private conduct. There are no allegations in the Amended Complaint that REN and Holder were performing a public function in filing the DPH Complaint, or that the state coerced or induced them to file the DPH Complaint. (Amd. Compl. ¶¶ 44-58, 157).[9] Nor has YOM plausibly alleged that the state has "so far insinuated itself into a position of interdependence with [REN and Holder] that it was a joint participant" in the filing. *Estades-Negroni*, 412 F.3d at

---

[9]    The alleged general solicitation of feedback and complaints from individuals by DPH (Amd. Compl. ¶¶ 61, 84), all of which post-dated the filing of the DPH Complaint, cannot serve as a lynchpin between REN and the state here. *See Perkins*, 196 F.3d at 19-20 ("the focal point is the connection between the State and the challenged conduct").

4 (internal quotation marks omitted); *see Meuse v. Stults*, 421 F. Supp. 2d 358, 362-64 (D. Mass. 2006) (defendant cannot be liable under Section 1983 for encouraging police to initiate an investigation where plaintiff adduced no evidence of an interdependent relationship between defendant and police in the course of the investigation, police encouragement or conspiracy).

Instead, YOM claims that the DPH Complaint was "concocted" by REN and used by DPH as a "pretext" to justify the launch of its Public Education Campaign (Amd. Compl. ¶¶ 58, 105, 187, 199, 200, 239). These conclusory allegations are contradicted by documents YOM attached to the Amended Complaint (such as *id*., Ex. LL), which make clear that the campaign was initiated *seven months* before the DPH Complaint was filed, and months before Larkin's statements.[10] *See Cheng v. Neumann*, 51 F.4th 438, 445 (1st Cir. 2022) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citations omitted). Consequently, YOM's effort to use the DPH Complaint as a basis for extending Section 1983 liability to REN and Holder must be rejected. *See Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir. 2003) ("it is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors").

### 2)    REN's and Holder's Involvement in the Public Education Campaign, Private Speech and Advocacy Are Not State Action

YOM's allegations in the Amended Complaint have grown in number but not in substance. The Amended Complaint seeks to establish state action by haphazardly referring to the DPH Complaint, the services REN performed as a consultant to a private marketing agency engaged by

---

[10]    *See* Amd. Compl., Ex. LL at 4 ("The effort to ensure that these centers were operating appropriately has been a priority for this administration (and DPH) even before the complaints were filed."), at 11 ("[DPH] would be – and should be – doing this in the absence of any complaints. . . ."); Ex. F.

DPH to work on the Public Education Campaign, REN's receipt of state funding from the state, and REN's and Holder's private speech and advocacy efforts on its website. However, none of YOM's allegations supports a plausible claim that this case involves one of the "rare circumstances" in which private parties can be deemed to have acted under color of state law. *See Estades-Negroni*, 412 F.3d at 4-5. YOM's repeated references to REN and Holder as "the trusted partner of the State" (Amd. Comp. ¶¶ 239, 246, 294, 323) in a manner divorced from relevant context, does not change this fact.[11]

### a.  REN's and Holder's Work as a Private Consultant to the State's Marketing Consultant Did Not Convert its Conduct Into State Action

In an effort to bolster its theory of joint action between REN/Holder and the state, YOM references REN's involvement in working with a "PR firm in shaping and creating the [Public Education Campaign] alongside DPH," and the fact that REN and "government officials" met regularly to coordinate and perform work on the campaign. (Amd. Compl. ¶¶ 120, 122, 206). However, merely providing services to the government pursuant to a contract does not transform conduct of a private actor into state action. *Rendell-Baker v. Kohn,* 457 U.S. 830, 840-41 (1996) ("Acts of…private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *accord VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1161 (10th Cir. 2021); *Roman Catholic Diocese of Rockville*

---

[11]  The characterization of a state actor and a private party's relationship as a "partnership" is not sufficient to establish state action, particularly where it is unsupported by plausible allegations of mutual interdependence. *See, e.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1182 (N.D. Cal. 2022), *aff'd sub nom*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024) ("Generalized statements about working together do not demonstrate state action."); *Blythe v. Schlievert*, 245 F. Supp. 3d 959, 968-69 (N.D. Ohio 2017) (a conclusory characterization of a hospital as a "partner" of a state agency was insufficient to adequately plead state action); *Conrad v. Perales*, 818 F. Supp. 559, 564-65 (W.D.N.Y. 1993) (private trade associations' partnership with the State on a joint industry-state task force did not render them state actors).

*Ctr. v. Incorporated Village of Old Westbury*, No. 09 CV 5195, 2011 WL 666252, at *9 n.14 (E.D.N.Y. Feb. 14, 2011). In addition, the fact that a private party is contracted to provide input and make recommendations for the government does not create the nexus necessary to convert private action to state action. *See, e.g.*, *Gleason v. County of Putnam*, No. 23-cv-04464, 2024 WL 3952147, at *5-6 (S.D.N.Y. Aug. 27, 2024) (private design engineer's engagement as a project consultant did not transform the engineer into a state actor).

Here, REN was engaged by MORE, a private consultant to the state, as "an independent consultant…in the areas of strategic consulting and education services." Korsunsky Decl., Ex. 3. In this capacity, REN worked on the Public Education Campaign and communicated with representatives of the state about its work. While YOM asserts that REN had decision-making authority over campaign materials (Amd. Compl. ¶¶ 162, 164), the documents on which YOM purports to rely make clear that REN offered input and suggestions consistent with its role as a private consultant, while the state retained ultimate decision-making authority. *See id.*, Ex. DD (November 15, 2023 email "sending along…concepts *for commissioner office review*" and requesting confirmation of whether "this is all set *to go to commissioner for sign-off*") (emphasis added); *Id.* ¶ 212 (acknowledging that decision-making authority remained with the state). Accordingly, YOM's allegations concerning REN's work as a private consultant to MORE are insufficient to support a claim of state action.

### b.  REN's Receipt of Funding and Other Assistance from the State Does Not Make REN's and Holder's Activities State Action

In its Amended Complaint, YOM alleges that the state provided funding for its Public Education Campaign, funding for REN's Hotline, and "support" for REN. *Id.* ¶¶ 90, 237, 239, 246, 294, 323. These allegations add nothing to YOM's conclusory allegations of joint action and a mutual symbiotic relationship between REN and Holder and the state.

It is well-established that a private actor's receipt of funding and other assistance from the government does not transform that private actor into a state actor for purposes of Section 1983 liability. *See Blum*, 457 U.S. at 1011 ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business."); *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) (extensive government regulation and receipt of federal funds…are insufficient to establish state action); *Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 146 (D. Mass. 2016) (receipt of funding does not render a private entity a state actor); *see also VDARE*, 11 F.4th at 1161 (receipt of state funds or assistance, state contracts with private entities, private use of state procedures, and involvement of state officials in administration of private processes do not, alone, satisfy the nexus test).

The mere fact that the Hotline REN operates—independently from the state—received funding from the state, and that REN was engaged as a subconsultant to MORE, does not render REN and Holder state actors for purposes of that work. *See, e.g.*, *Rendell–Baker*, 457 U.S. at 843 (1982) (a school's receipt of 90 to 99 percent of its funds from the state did not make it a state actor). To find otherwise in the absence of plausible allegations would expose countless recipients of government funding to claims pursued by parties seeking to silence their speech and advocacy.

### c. REN's and Holder's Advocacy Does Not Render Them State Actors

The remaining allegations against REN and Holder are directed at REN's and Holder's own speech, research, and advocacy on expanding equitable access to reproductive healthcare. *See* Amd. Compl. ¶¶ 89-108. REN's website that references AACs, its guidebook containing information about the public's reporting options, and its (and Holder's) statements about its work are private actions which cannot form the basis of Section 1983 liability. *See Barrios-Velazquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 492 (1st Cir.

1982) ("A private entity's conduct is not actionable under section 1983 if the challenged action results from the exercise of private choice and not from state influence or coercion."); *Huber v. Biden*, No. 21-cv-06580-EMC, 2022 WL 827248, at *7 (N.D. Cal. Mar. 18, 2022) ("statements about working together with the government to prevent the spread of misinformation do not equate to working in concert to violate constitutional rights"). Significantly, REN and Holder have *their own constitutional right* to engage in free speech. *See Lugar*, 457 U.S. at 936 ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power."). They do not lose that right simply because their view aligns with one held by state actors. *See Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 756, 759 (9th Cir. 2024) ("Statements that government officials 'engaged' with social media companies to ensure they 'understand the importance of misinformation and disinformation and how they can get rid of it quickly'" were consistent with parallel objectives and not evidence of a specific agreement for purposes of the joint-action analysis.) (internal quotation marks omitted).

**D.    YOM's Allegations that REN and Holder Caused a Deprivation of YOM's Constitutional Rights are Not Plausible.**

As YOM has failed to allege sufficient facts to show that REN and Holder engaged in state action, the Court's inquiry into liability on the part of REN and Holder must end. *Yeo v. Town of Lexington*, 131 F.3d 241, 248–49 (1st Cir. 1997) ("If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."). However, even if YOM had alleged sufficient facts to show that REN and Holder are state actors, YOM's claims against them must nonetheless be dismissed because YOM failed to plausibly allege REN or Holder deprived YOM of its constitutional rights. *See Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) ("To satisfy the second element [of a Section 1983 claim], plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation.").

YOM has not articulated how REN's and Holder's actions have deprived YOM of its ability to exercise its constitutional rights—an omission that is fatal to its claims.[12] Neither REN nor Holder has any regulatory or enforcement authority. Moreover, by YOM's own account, it continues to operate multiple locations and a mobile clinic and maintains a website promoting its services and views on reproductive health issues. Amd. Compl. ¶¶ 22, 26.[13] The public has not been prevented from seeking out and receiving YOM's services, and YOM has not been prevented from expressing its views or fulfilling its mission consistent with those views. As YOM has already conceded, criticism—even if "aggressive" and "scalding"—is not enough. *See* Transcript of May 8, 2025 Hearing on Defendants' Motions to Dismiss at 33:25-35:2, 56:9-25. Because YOM has not plausibly alleged a deprivation that is fairly traceable to REN and Holder, the claims against them must be dismissed. *See Estades-Negroni*, 412 F.3d at 4 ("If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal.").

## CONCLUSION

For the foregoing reasons, Defendants Reproductive Equity Now Foundation, Inc. and Rebecca Hart Holder respectfully request that the Court GRANT their Motion to Dismiss and DISMISS all counts against them with prejudice.

---

[12]    *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2004) does not support YOM's claims in this case. In *Vullo*, the Court held that the NRA plausibly alleged that Vullo, a superintendent of the New York Department of Financial Services with regulatory and enforcement authority over all entities doing business in New York, violated the First Amendment by using the power of her office to coerce entities to end their business relationships with the NRA through threats of sanctions against them. 602 U.S. at 187-194. No such facts are alleged against REN and Holder here because they cannot be. REN and Holder are private parties with no enforcement powers.

[13]    YOM makes cursory allegations that one of its doctors quit providing services and that it has incurred additional costs for security because of "threats" by "Defendants," but these naked assertions are insufficient to survive a motion to dismiss. Moreover, YOM does not identify any "threats" made by REN or Holder.

Respectfully submitted,

REPRODUCTIVE EQUITY NOW
FOUNDATION, INC. AND REBECCA HART
HOLDER,

By their attorneys,

/s/ *Martin M. Fantozzi*
Martin M. Fantozzi (BBO #554651)
Mariana Korsunsky (BBO #675626)
Carla A. Reeves (BBO #681849)
Sarah M. Eberspacher (BBO #707133)
Kathleen M. Ritter (BBO #716086)
Kiman Kaur (BBO #709943)
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
Tel: (617) 482-1776
mfantozzi@goulstonstorrs.com
mkorsunsky@goulstonstorrs.com
creeves@goulstonstorrs.com
seberspacher@goulstonstorrs.com
kritter@goulstonstorrs.com
kkaur@goulstonstorrs.com

Dated: July 25, 202

21

## <u>CERTIFICATE OF SERVICE</u>

  I, Kiman Kaur, hereby certify that on July 25, 2025, I caused the foregoing document to be filed electronically using the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants. Paper copies will be sent to those indicated as non-registered participants.

       /s/ *Kiman Kaur*
       Kiman Kaur