UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A Woman's Concern, Inc. d/b/a Your Options Medical Centers, <br><br>      Plaintiff, <br><br> vs. <br><br> Maura Healey, Governor of Massachusetts, sued in her individual and official capacities; Robert Goldstein, Commissioner of the Massachusetts Department of Public Health, sued in his individual and official capacities; Reproductive Equity Now Foundation, Inc.; Rebecca Hart Holder, Executive Director of Reproductive Equity Now Foundation, <br><br>      Defendants. | C.A. No. 1:24-cv-12131-LTS <br><br> **ORAL ARGUMENT REQUESTED** |

**<u>DEFENDANTS REPRODUCTIVE EQUITY NOW FOUNDATION, INC. AND REBECCA HART HOLDER'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>INTRODUCTION</u>

Rather than addressing the deficiencies in its Section 1983 claims against REN[1] and Holder, YOM's Opposition (the "Opposition" or "Opp.") attempts to mask those deficiencies with a slew of conclusory assertions, mischaracterizations, and distortions. YOM cannot, however, meet its burden on the basis of this improper rhetoric. As YOM has failed to identify well-pleaded facts in the Amended Complaint that would support the imposition of Section 1983 liability upon REN and Holder, their Motion to Dismiss (the "Motion" or "Mot.") should be granted.

## I.    THE OPPOSITION IMPROPERLY RELIES ON DISTORTIONS AND MISCHARACTERIZATIONS RATHER THAN WELL-PLEADED FACTS

It is incontrovertible that YOM may not defeat the Motion by relying on conclusory assertions, mischaracterizations, or problematic suppositions. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). Yet, the Opposition attempts to do just that. Instead of relying on well-pleaded facts and accurate descriptions of the exhibits to its Amended Complaint, YOM improperly relies on a multitude of conclusory assertions and distortions, and decontextualizes and mischaracterizes the exhibits, which in fact contradict its claims.

For example, YOM asserts that REN and Holder exercised "decision-making" and "approval authority" over the Public Education Campaign (the "Campaign"). *See* Opp. at 3. To support this allegation, YOM characterizes a November 7, 2023 email between REN, MORE, and DPH as "request[ing] planning and budget approval" from both DPH and REN. *Id*. (citing Amd. Compl. ¶ 156, Ex. Z). In fact, that email expressly states that MORE was only seeking DPH's[2]

---

[1]    Except where otherwise stated, capitalized terms are defined in the Motion to Dismiss of Defendants Reproductive Equity Now Foundation, Inc. and Rebecca Hart Holder and the supporting Memorandum of Law (ECF Nos. 72-73).

[2]    The redacted names in Exhibit Z are those of DPH employees, which DPH redacted pursuant to G.L. c. 66, § 10B.

"approval to move forward." *See* Amd. Compl., Ex. Z. Similarly, YOM cites a November 2023 email thread between REN, MORE, and DPH regarding a presentation titled "AAC Creative Concepts Commissioner." *Id.*, Ex. DD. YOM mischaracterizes these emails as illustrating that REN's input on the Campaign "carr[ied] the same weight and authority of DPH employees." Opp. at 3. A plain reading of the emails in Exhibit DD—with the subject "AAC Creative Concepts for Commissioner/testing approval"—makes clear that the presentation was for the "*commissioner office['s]*" at DPH, not REN's, "review" and "sign-off." Amd. Compl., Ex. DD (emphasis added).

YOM's repeated assertions that REN and Holder made "threats" against YOM are equally unsupported. YOM alleges, for instance, that REN and Holder "branded YOM as engaging in criminal conduct," citing to REN's guidebook on AACs. *See* Opp. at 4 (citing Amd. Compl. ¶¶ 95, 238, Ex. Q). But nowhere in the guidebook does REN accuse AACs, including YOM, of criminal conduct. Likewise, YOM's allegation that REN's complaints to DPH were pretext for the Campaign relies on one sentence from a 23-page email thread between REN, MORE, and DPH. *See* Opp. at 15 (citing Amd. Compl. ¶ 199, Ex. LL). Read in full, that thread shows DPH *expressly disclaiming* that the Campaign was launched due to REN's Complaints. Amd. Compl., Ex. LL.

These are merely a few examples of the many mischaracterizations in YOM's Opposition and Amended Complaint, which are plainly contradicted by the very documents on which YOM purports to rely. YOM cannot withstand dismissal by relying on such factual distortions or conclusory allegations. *See Cheng v. Neumann*, 51 F.4th 438, 445 (1st Cir. 2022) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citation omitted); *Davis v. Northeast Ctr. for Youth & Fams., Inc.*, 662 F. Supp. 3d 151, 154 (D. Mass. 2023) (noting the pleading standard requires factual rather than conclusory allegations) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)).

## II.    THE OPPOSITION CONFIRMS THAT YOM LACKS STANDING

The Opposition also underscores YOM's utter failure to demonstrate, as it must, that its alleged injuries are fairly traceable to the challenged conduct of REN and Holder. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). It is YOM's burden to establish its standing for *each* of its claims, *see Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 372 (1st Cir. 2023) (citation omitted), and as to *each* Defendant. *See Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023) (citing Second, Fourth, Fifth, and Eighth Circuit cases). The Amended Complaint makes no plausible allegations that are sufficient to connect REN or Holder's conduct to its alleged injuries.

YOM contends that its alleged injuries are predicated on "threats" of enforcement made by the "Defendants" collectively in the course of the Campaign, ranging "from explicit warnings of license revocation . . . , official webpages soliciting complaints . . . , to Commissioner Goldstein's direct threat to physicians working with PRCs . . . ." Opp. at 4. YOM fails, however, to identify any threats of enforcement made specifically by REN or Holder. Nor could it, as REN and Holder clearly lack any enforcement powers. Instead, YOM argues that "REN cannot deny enforcement power" because REN used DPH's "enforcement authority . . . to back up its enforcement claims." *Id.* at 12. This allegation mischaracterizes the facts. YOM effectively concedes that any enforcement authority belongs to DPH, not REN; filing a complaint *with* DPH asking DPH to use *its* enforcement authority to investigate did not imbue REN or Holder with enforcement powers, and YOM has cited no case law or other authority suggesting otherwise.

In sum, YOM's failure to disaggregate its allegations against "Defendants" with any specificity as to REN or Holder is fatal to its claims against them, as "standing is not dispensed in gross." *Town of Chester. v. Laroe Ests., Inc*., 581 U.S. 433, 439 (2017) (citation omitted). Because YOM has failed to fairly trace any of its alleged injuries to REN or Holder's conduct, YOM's claims against them must be dismissed for lack of standing.

### III.    REN AND HOLDER DID NOT ACT UNDER COLOR OF LAW

YOM contends that REN and Holder were state actors because of their assistance on the Campaign, REN's receipt of state funding, and their "structural interdependence" with DPH. *See* Opp. at 16-17. None of these allegations establish that REN or Holder were acting under color of law in REN's role as a subconsultant to MORE for the Campaign or more broadly.

As cited in REN's and Holder's opening brief, *see* Mot. at 16-17, providing services to the government as a contractor does not transform private conduct into state action, even where that conduct involves "significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982).[3] A finding of state action under a joint action or nexus theory instead requires that the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." *See Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005) (citation omitted). Contrary to YOM's conclusory assertion, there was no interdependence between REN and the State. As REN and Holder have shown, REN was a subconsultant of MORE, the primary contractor on the Campaign, *see* Ex. 3 to Korsunsky Decl. (ECF No. 74-3), and the exhibits to the Amended Complaint demonstrate that REN did not exercise any decision-making authority over any part of the Campaign. *See* Mot. at 4-5 n.4. Notably, YOM cites to no authority to support its argument that REN's assistance in drafting media advisory and op-eds, coordinating of press conferences, and planning launch events for the campaign, rose to the level of the interdependence

---

[3]    YOM's attempt to distinguish this case from *Rendell-Baker* is unpersuasive. YOM asserts that the relationship between the private school and the state at issue in *Rendell-Baker* is categorically different from REN's relationship with the State. Opp. at 18. YOM misreads *Rendell-Baker*, which considered the state-contractor relationship as only one factor in determining the status of a private school, which unlike REN was predominantly funded by the government and fulfilled a traditionally public function. 457 U.S. at 840-43. As to private government contractors, like REN, *Rendell-Baker* is clear that their acts do not become acts of the government simply by reason of engagement in performance of public contracts or receipt of funding.

required to make a private party's consulting services fairly attributable to the Commonwealth as state action.

YOM's repeated allegations that REN is a "trusted partner" of the State (*see* Opp. at 1, 5, 13-14, 16, 18-20) is yet another mischaracterization of a single DPH statement, which reads in parentheses: "This map is maintained by Reproductive Equity Now Foundation, a trusted partner of the Massachusetts Department of Public Health." *See* Ex. A at 5 to Declaration of Carla A. Reeves, Esq. This is a simple statement of attribution of a resource made available by REN in its capacity as an advocate for reproductive rights. It does not transform REN and Holder into state actors. As stated in the Motion, the mere characterization of the relationship between a state actor and a private party cannot establish state action. Mot. at 16 n.11.

YOM attempts to bypass the infirmities of its joint action arguments by claiming that REN was used by the State as a "proxy" to circumvent limitations on government action. Opp. at 18. None of the factual allegations in the Amended Complaint substantiate this claim. Specifically, YOM contends that DPH linked to REN's website, which features logos of certain AACs, because displaying logos is not allowed on mass.gov (*see* Opp. at 17), and that this demonstrates coordination between REN and DPH to subvert governmental limitations on targeting specific organizations. Amd. Compl. ¶ 219 (citing Ex. OO). Nowhere in Exhibit OO does DPH state that it is subject to limitations on targeting specific organizations or that it was linking to REN's website to subvert any such limitations. Because YOM's Amended Complaint fails to show that REN and Holder were acting under the color of law, its claims against them must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants REN and Holder respectfully request that the Court GRANT their Motion to Dismiss.

Respectfully submitted,

REPRODUCTIVE EQUITY NOW
FOUNDATION, INC. AND REBECCA HART
HOLDER,

By their attorneys,

/s/ *Martin M. Fantozzi*
Martin M. Fantozzi (BBO #554651)
Mariana Korsunsky (BBO #675626)
Carla A. Reeves (BBO #681849)
Kathleen M. Ritter (BBO #716086)
Kiman Kaur (BBO #709943)
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
Tel: (617) 482-1776
mfantozzi@goulstonstorrs.com
mkorsunsky@goulstonstorrs.com
creeves@goulstonstorrs.com
kritter@goulstonstorrs.com
kkaur@goulstonstorrs.com

Dated: September 12, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Katie Ritter, hereby certify that on September 12, 2025, I caused the foregoing document to be filed electronically using the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants. Paper copies will be sent to those indicated as non-registered participants.

/s/ *Katie Ritter*
Katie Ritter

7